# EXHIBIT I

**CERTIFIED**
**COPY**

```
 1

 2    UNITED STATES DISTRICT COURT
      CENTRAL DISTRICT OF CALIFORNIA
 3    --------------------------x
      F.B.T. PRODUCTIONS, LLC,    )
 4    and EM2M, LLC,              )
                    Plaintiffs,)
 5          v.                    )Case No. CV 07-03314
      AFTERMATH RECORDS doing     )PSG (MANx)
 6    business as AFTERMATH       )
      ENTERTAINMENT; INTERSCOPE   )
 7    RECORDS; UMG RECORDINGS,    )
      INC., and ARY, INC.,        )
 8                  Defendants.)
      --------------------------x
 9    UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF MICHIGAN
10    SOUTHERN DIVISION
      --------------------------x
11    EIGHT MILE STYLE, LLC and   )
      MARTIN AFFILIATED, LLC,     )
12                  Plaintiffs,)
            vs.                   )Case No. 2:07-cv-13164
13    APPLE COMPUTER, INC. and    )Hon. Anna Diggs Taylor
      AFTERMATH RECORDS d/b/a     )
14    AFTERMATH ENTERTAINMENT,    )
                    Defendants.)
15    --------------------------x

16                    July 15, 2008

17                    10:31 a.m.

18

19            Deposition of MARK A. LEVINSOHN,

20    held at the law offices of Jenner & Block, 919

21    Third Avenue, New York, New York, pursuant to

22    subpoena, before Donald R. DePew, an RPR, CRR and

23    Notary Public within and for the State of

24    New York.

25
```

|          |    | Mark A. Levinsohn                                    |
|----------|----|-----------------------------------------------------|
| 10:40:37 | 2  | people I've deposed.                                |
| 10:40:39 | 3  | Q.   Did you do anything to help Mr. Martin         |
| 10:40:41 | 4  | prepare for his deposition?                         |
| 10:40:42 | 5  | MR. BUSCH:  And by the way one more                 |
| 10:40:44 | 6  | thing, I agree with you that not every              |
| 10:40:48 | 7  | conversation is privileged, but if it relates       |
| 10:40:50 | 8  | to the giving or receiving of legal advice, I       |
| 10:40:52 | 9  | believe it is, especially with outside              |
| 10:40:54 | 10 | counsel.                                            |
| 10:40:56 | 11 | A.   I was present during Mr. Martin's              |
| 10:41:03 | 12 | preparation for his deposition.                     |
| 10:41:05 | 13 | Q.   Did you speak during that meeting?             |
| 10:41:07 | 14 | A.   Yes.                                            |
| 10:41:09 | 15 | Q.   Did you give him any advice with               |
| 10:41:10 | 16 | respect to his deposition?                          |
| 10:41:13 | 17 | MR. BUSCH:  Objection, calls for                    |
| 10:41:14 | 18 | attorney-client privilege.                          |
| 10:41:15 | 19 | And I'm going to instruct you not to                |
| 10:41:17 | 20 | answer the question.                                |
| 10:41:23 | 21 | Q.   Do you currently represent Mr. Martin?         |
| 10:41:25 | 22 | A.   Yes.                                            |
| 10:41:28 | 23 | Q.   Do you currently represent F.B.T.?             |
| 10:41:31 | 24 | A.   Yes.                                            |
| 10:41:32 | 25 | Q.   Do you currently represent Eight Mile?         |

12

**Exhibit I, Page 261**

                              Mark A. Levinsohn

10:41:34   2        A.    Yes.

10:41:34   3        Q.    Do you currently represent the Bass

10:41:36   4    brothers?

10:41:37   5        A.    Yes.

10:41:39   6        Q.    What do you currently represent

10:41:40   7    Mr. Martin in?

10:41:44   8             MR. BUSCH:  Objection, vague and

10:41:48   9        ambiguous.

10:41:49   10            And you can answer the question just in

10:41:51   11       general, if you can answer that type of

10:41:53   12       question, but do not disclose attorney-client

10:41:55   13       privileged communications in connection with

10:41:58   14       that.

10:41:58   15       A.    I represent Mr. Martin in connection

10:42:00   16   with various of his interests in the music field.

10:42:09   17       Q.    And what interests are you referring

10:42:10   18   to?

10:42:13   19       A.    Music publishing interests, personal

10:42:22   20   management interests, recording services, and

10:42:33   21   rights interests.

10:42:36   22       Q.    What matters do you represent F.B.T. in

10:42:39   23   currently?

10:42:43   24       A.    I represent F.B.T. currently in

10:42:45   25   connection with recording agreement matters.

                                                                    13

|          |    |                                                      |
|----------|----|------------------------------------------------------|
|          | 1  | Mark A. Levinsohn                                    |
| 10:42:53 | 2  | Q.    What recording agreement matters are          |
| 10:42:55 | 3  | you referring to?                                    |
| 10:42:58 | 4  | MR. BUSCH:  Again, you know, the                     |
| 10:43:00 | 5  | substance of your representation, if you             |
| 10:43:02 | 6  | believe it's privileged, I will instruct you         |
| 10:43:05 | 7  | not to answer.                                       |
| 10:43:06 | 8  | You can answer in a general way.                     |
| 10:43:11 | 9  | A.    They would be the interests in relation        |
| 10:43:15 | 10 | to Aftermath, Interscope, and Universal Records.     |
| 10:43:27 | 11 | Q.    You said that you represent him in             |
| 10:43:29 | 12 | connection -- I'm sorry, you said you represented    |
| 10:43:31 | 13 | F.B.T. in connection with recording agreements,      |
| 10:43:33 | 14 | correct?                                             |
| 10:43:35 | 15 | A.    Correct.                                       |
| 10:43:35 | 16 | Q.    Which recording agreements are you             |
| 10:43:37 | 17 | referring to?                                        |
| 10:43:39 | 18 | A.    I am referring to the body of                  |
| 10:43:42 | 19 | agreements that reflect the contractual              |
| 10:43:49 | 20 | relationships between F.B.T. and Aftermath,          |
| 10:43:58 | 21 | Interscope, and Universal.                           |
| 10:44:00 | 22 | Q.    And do you believe that those                  |
| 10:44:02 | 23 | agreements are commonly what's referred to as a      |
| 10:44:05 | 24 | recording agreement?                                 |
| 10:44:06 | 25 | A.    I was using the term recording                 |

14

**Exhibit I, Page 263**

                                    Mark A. Levinsohn

10:44:08    2    agreement loosely.  I believe that certain of

10:44:10    3    those agreements would reflect what are commonly

10:44:17    4    known as recording agreements.

10:44:19    5            (Mr. Joel Martin entered the room.)

10:44:22    6        Q.    Are you currently representing F.B.T.

10:44:24    7    in any matters in which F.B.T. is negotiating a

10:44:27    8    recording agreement with an artist?

10:44:29    9        A.    No.

10:44:29   10        Q.    Have you ever represented F.B.T. in

10:44:32   11    connection with the negotiation or drafting of a

10:44:35   12    recording agreement with any artist?

10:44:42   13        A.    I believe that I have.

10:44:44   14        Q.    Which artists?

10:44:46   15        A.    I believe in connection with the artist

10:44:50   16    professionally known as King Gordy, and in

10:44:57   17    connection with an artist professionally known as

10:45:03   18    Buddha Full of Rhymes, and in connection with the

10:45:17   19    artist professionally known as Eminem.

10:45:27   20        Q.    When did you work on the King Gordy

10:45:31   21    negotiation and agreement?

10:45:36   22        A.    I don't recall exactly, but to my best

10:45:43   23    recollection it would have been in or about 2005.

10:45:50   24        Q.    When did you work on the Buddha full of

10:45:53   25    rhymes agreement?

                                                              15

Mark A. Levinsohn

12:53:02  2    Q.    Do you recall who?

12:53:03  3    A.    Yes, Mr. Arnay.

12:53:06  4    Q.    Can you spell his last name.

12:53:07  5    A.    A-r-n-a-y.

12:53:12  6    Q.    And do you recall which recording

12:53:14  7  agreements he worked on for Universal Records?

12:53:16  8    A.    I don't.

12:53:19  9    Q.    Did you and Mr. Arnay discuss any of

12:53:22  10  the work that he was doing for Universal Records?

12:53:31  11    A.    Not specifically.

12:53:36  12    Q.    Okay.  Now, going back to the recording

12:53:38  13  agreements you've worked on for your record

12:53:41  14  company clients.  And again, I want to focus on

12:53:43  15  those that had royalty provisions dealing with

12:53:46  16  sale of records and a different royalty provision

12:53:48  17  dealing with the licensing of masters, okay?

12:53:51  18    A.    Understood.

12:53:54  19    Q.    In any of the negotiations of any of

12:53:58  20  those contracts did the artist or his or her

12:54:02  21  representative ever bring up how permanent

12:54:06  22  downloads would be accounted for under those

12:54:09  23  royalty provisions?

12:54:10  24    A.    I don't believe so.

12:54:17  25    Q.    And as you sit here today you don't

88

**Exhibit I, Page 265**

Mark A. Levinsohn

| | | |
|---|---|---|
| 12:54:19 | 2 | know how your record company clients are |
| 12:54:21 | 3 | accounting for permanent downloads under any of |
| 12:54:23 | 4 | those agreements, other than based on privileged |
| 12:54:26 | 5 | conversations? |
| 12:54:27 | 6 | A.    Correct. |
| 12:54:30 | 7 | Q.    Have you provided advice to your record |
| 12:54:33 | 8 | company clients on how they should be accounting |
| 12:54:36 | 9 | for permanent downloads? |
| 12:54:37 | 10 | MR. BUSCH:  I believe that in and of |
| 12:54:38 | 11 | itself is privileged, so I would instruct you |
| 12:54:41 | 12 | not to answer the question. |
| 12:54:56 | 13 | Q.    In any of your -- strike that. |
| 12:54:58 | 14 | When you have been representing record |
| 12:55:00 | 15 | companies in connection with the negotiation and |
| 12:55:02 | 16 | drafting of a recording agreement has the artist |
| 12:55:05 | 17 | or his or her representative ever raised the |
| 12:55:07 | 18 | subject of how permanent downloads would be |
| 12:55:09 | 19 | accounted for? |
| 12:55:10 | 20 | A.    I don't believe so. |
| 12:55:21 | 21 | MR. BUSCH:  Glenn, I don't want to cut |
| 12:55:23 | 22 | you off, and I want you to finish this line |
| 12:55:25 | 23 | of questioning if you want to. |
| 12:55:27 | 24 | It's about 1 o'clock, I'm just |
| 12:55:30 | 25 | wondering if it's a good time for a break.  I |

89

**Exhibit I, Page 266**

|            | 1  | Mark A. Levinsohn |
|------------|----|-------------------|
| 13:48:53   | 2  | to permanent downloads, do you understand that |
| 13:48:55   | 3  | that's Universal's position? |
| 13:48:58   | 4  | A.    I do. |
| 13:48:58   | 5  | Q.    And if you turn to the next page, do |
| 13:49:00   | 6  | you see on the bottom of page 5 a provision |
| 13:49:04   | 7  | 5(c)(v) or 5(c)(v)? |
| 13:49:07   | 8  | Do you see that? |
| 13:49:08   | 9  | A.    Yes. |
| 13:49:09   | 10 | Q.    And that's a provision that applies to |
| 13:49:11   | 11 | masters that are licensed; is that correct? |
| 13:49:14   | 12 | MR. BUSCH:  Just note my objection. |
| 13:49:16   | 13 | You're not reading the entire language, so I |
| 13:49:18   | 14 | object to form. |
| 13:49:19   | 15 | Q.    Do you see that provision? |
| 13:49:20   | 16 | A.    Yes. |
| 13:49:21   | 17 | Q.    And you understand that it's F.B.T.'s |
| 13:49:24   | 18 | position that permanent downloads should be |
| 13:49:26   | 19 | accounted for under that provision, correct? |
| 13:49:28   | 20 | A.    Yes. |
| 13:49:30   | 21 | Q.    Let me ask you now, if Universal were |
| 13:49:33   | 22 | to provide an Eminem compact disc to Best Buy and |
| 13:49:38   | 23 | Best Buy were to sell that compact disc to a |
| 13:49:42   | 24 | consumer, which of these two royalty provisions do |
| 13:49:45   | 25 | you think applies to that particular transaction? |

93

Exhibit I, Page 267

|          |    |                                                  |
|----------|----|--------------------------------------------------|
|          | 1  | Mark A. Levinsohn                                |
| 13:49:48 | 2  | MR. BUSCH:  Note my objection.  First,           |
| 13:49:50 | 3  | you used the phrase if Universal were to         |
| 13:49:53 | 4  | "provide," so it's vague and ambiguous           |
| 13:49:57 | 5  | whether Universal is selling that to             |
| 13:49:59 | 6  | Best Buy.                                        |
| 13:50:00 | 7  | And it calls for a legal conclusion as           |
| 13:50:02 | 8  | well, so it's vague and ambiguous and it also    |
| 13:50:04 | 9  | calls for a legal conclusion.  I object to       |
| 13:50:07 | 10 | form, and lack of foundation.                    |
| 13:50:11 | 11 | A.    To the extent that Universal sells that    |
| 13:50:15 | 12 | compact disc to Best Buy, then I believe that    |
| 13:50:21 | 13 | paragraph 5(a) would apply.                      |
| 13:50:25 | 14 | Q.    And why do you believe that paragraph      |
| 13:50:27 | 15 | 5(a) applies to that particular transaction?     |
| 13:50:32 | 16 | A.    For a variety of reasons, including --     |
| 13:50:35 | 17 | MR. BUSCH:  Hold on.  Can I -- I just            |
| 13:50:36 | 18 | want to get my --                                |
| 13:50:37 | 19 | Note my objection, it calls for a legal          |
| 13:50:40 | 20 | conclusion, lack of foundation.                  |
| 13:50:42 | 21 | You may answer the question.                     |
| 13:50:44 | 22 | A.    For a variety of reasons, including        |
| 13:50:47 | 23 | that 5(a) covers instances in which Universal is |
| 13:50:56 | 24 | itself selling its own product, compact discs, to|
| 13:51:09 | 25 | Best Buy and is not licensing the master         |

94

|          | 1  | Mark A. Levinsohn |
|----------|----|-------------------|
| 13:51:14 | 2  | recordings to Best Buy. |
| 13:51:17 | 3  | Q.    What about the transaction between |
| 13:51:19 | 4  | Universal and Best Buy makes it a sale rather than |
| 13:51:23 | 5  | a license in your view? |
| 13:51:25 | 6  | MR. BUSCH:  Just note my objection, |
| 13:51:26 | 7  | that calls for a legal conclusion.  There are |
| 13:51:28 | 8  | legal principles involved in determining |
| 13:51:30 | 9  | whether something is a sale or a license, and |
| 13:51:32 | 10 | this is pure -- this is pure legal -- the |
| 13:51:37 | 11 | question is purely asking for a legal |
| 13:51:39 | 12 | conclusion.  And it's vague and ambiguous, |
| 13:51:40 | 13 | and there's a lack of foundation. |
| 13:51:46 | 14 | A.    Because there are no elements of a |
| 13:51:57 | 15 | license involved in that transaction, that |
| 13:52:03 | 16 | Best Buy is paying for a piece of physical product |
| 13:52:13 | 17 | and it -- on the basis that they are purchasing |
| 13:52:18 | 18 | that product, putting themselves in a position |
| 13:52:23 | 19 | where they would be -- where they would have a |
| 13:52:30 | 20 | defense of first sale in terms of what they could |
| 13:52:37 | 21 | or could not do with the CD once they've purchased |
| 13:52:43 | 22 | it. |
| 13:52:45 | 23 | Q.    Any other reasons? |
| 13:52:46 | 24 | MR. BUSCH:  The same objections. |
| 13:52:57 | 25 | A.    Before -- because they are purchasing |

95

Exhibit I, Page 269

1        Mark A. Levinsohn

14:17:42   2   have acquired or accumulated, whether from law

14:17:48   3   school or from other readings or discussions over

14:17:57   4   the years.

14:17:58   5        Q.    Do any of the words in paragraph 5(a)

14:18:04   6   inform you that a sale requires a transfer of

14:18:07   7   title?

14:18:12   8             MR. BUSCH:  Objection to form.  The

14:18:13   9        same objections I've made before.

14:18:15  10             There is -- as I said, there is an

14:18:16  11        entire body of case law on this area.  And

14:18:20  12        Mr. Levinsohn's opinion is not relevant, he's

14:18:24  13        also not being offered as an expert.

14:18:26  14        A.    Just the word sale itself.

14:18:31  15        Q.    Let's suppose that Universal provided

14:18:34  16   Best Buy with a compact disc on consignment and no

14:18:39  17   title transferred and then Best Buy sold that

14:18:44  18   compact disc to a consumer and accounted to

14:18:49  19   Universal.

14:18:50  20             In that situation should Universal

14:18:54  21   account to the artist pursuant to 5(a) or pursuant

14:18:58  22   to 5(c)(v) of the 2003 agreement?

14:19:02  23             MR. BUSCH:  Object to form, improper

14:19:03  24        hypothetical, lack of foundation, calls for

14:19:07  25        speculation.  All my prior objections.

114

Exhibit I, Page 270

```
              1            Mark A. Levinsohn
14:19:14      2      A.    I'm afraid I don't really know a great
14:19:16      3  deal about the law of consignment and so I
14:19:20      4  don't -- I don't know is my answer to that
14:19:22      5  question.
14:19:22      6      Q.    Well, I'm giving you the one fact that
14:19:24      7  I think you need to know, which is that title did
14:19:27      8  not transfer because it was a consignment.  So
14:19:30      9  Universal held title the entire time until the
14:19:32     10  consumer purchased it.
14:19:34     11            Under that scenario does Universal
14:19:38     12  account to the artist under paragraph 5(a) or
14:19:40     13  5(c)(v)?
14:19:44     14            MR. BUSCH:  Objection, completely
14:19:45     15       argumentative.  Object to form, the same
14:19:50     16       legal objections.
14:19:51     17      A.    And in that hypothetical does Best Buy
14:19:55     18  reproduce or have the right to reproduce that
14:19:58     19  recording?
14:19:59     20      Q.    No.
14:20:00     21      A.    So we're talking about a single
14:20:03     22  physical CD that Best Buy is holding, as you say,
14:20:08     23  on consignment and that title is not passing until
14:20:14     24  such time as Best Buy sells that CD to the
14:20:17     25  consumer; is that correct?
```

115

Exhibit I, Page 271

1          Mark A. Levinsohn

14:53:27    2          MR. BUSCH:  All of my previous

14:53:28    3      objections I articulated.  It calls for

14:53:31    4      complete speculation, and lack of foundation,

14:53:33    5      vague and ambiguous.

14:53:34    6          A.    In the hypothetical that you've just

14:53:36    7    laid out, assuming that the record company

14:53:41    8    controls the master recordings and the master

14:53:45    9    recording rights and is affiliated with the

14:53:50   10    manufacturer, and then once the physical products

14:53:57   11    are manufactured and sent by the label -- the

14:54:07   12    label's affiliated manufacturer to the retailer

14:54:10   13    and sold by the label to the retailer, that is not

14:54:15   14    in that set of facts a license, as I understand

14:54:22   15    it.

14:54:26   16          Q.    When you were representing one of your

14:54:28   17    record company clients did you ever negotiate a

14:54:32   18    deal with any on line distributor of music?

14:54:40   19          A.    I don't believe so.

14:54:46   20          Q.    Could you get Exhibit 5 in front of

14:54:49   21    you.  It's the 1998 agreement.  And turn to

14:55:00   22    page 5.  And, again, I want you to focus on

14:55:05   23    4(c)(v), which is the provision dealing with a

14:55:09   24    master's license.

14:55:11   25          Do you see that?

134

Exhibit I, Page 272

| | | |
|---|---|---|
| | 1 | Mark A. Levinsohn |
| 14:55:12 | 2 | A.    Yes. |
| 14:55:12 | 3 | Q.    Back in 1998 what kinds of licenses did |
| 14:55:16 | 4 | you understand were covered by this provision? |
| 14:55:20 | 5 | MR. BUSCH:  Objection, complete lack of |
| 14:55:22 | 6 | foundation and speculation. |
| 14:55:24 | 7 | You're not to speculate or guess. |
| 14:55:28 | 8 | And all of my previous objections that |
| 14:55:29 | 9 | I've articulated I incorporate. |
| 14:55:34 | 10 | MR. POMERANTZ:  Let me withdraw the |
| 14:55:35 | 11 | question. |
| 14:55:36 | 12 | Q.    In 1998 you had -- strike that. |
| 14:55:42 | 13 | By 1998 you had already negotiated many |
| 14:55:46 | 14 | recording agreements, correct? |
| 14:55:47 | 15 | A.    Yes. |
| 14:55:48 | 16 | Q.    And you had negotiated and drafted |
| 14:55:51 | 17 | recording agreements that had provisions in it |
| 14:55:53 | 18 | that were similar to provision 4(c)(v) of the 1998 |
| 14:55:59 | 19 | agreement, correct? |
| 14:56:00 | 20 | MR. BUSCH:  Objection. |
| 14:56:01 | 21 | I don't know what you mean by the word |
| 14:56:02 | 22 | "similar." |
| 14:56:03 | 23 | It's vague and ambiguous, and lack of |
| 14:56:06 | 24 | foundation. |
| 14:56:07 | 25 | A.    Yes. |

135

Exhibit I, Page 273

                    1              Mark A. Levinsohn

14:56:08    2        Q.      You had negotiated and drafted many

14:56:11    3    agreements that provided that there would be a

14:56:14    4    50/50 split of net receipts when masters were

14:56:20    5    licensed, correct?

14:56:22    6        A.      Correct.

14:56:24    7        Q.      Back in 1998 what kinds of licenses

14:56:26    8    were you aware of that were covered by such

14:56:31    9    provisions?

14:56:31    10            MR. BUSCH:   Just note my objection.

14:56:35    11       When you say "such provisions" I object

14:56:40    12       because you have not put in front of him the

14:56:42    13       exact language that these other provisions

14:56:44    14       had for him to be able to compare.  And

14:56:47    15       therefore I object on the grounds that it's

14:56:49    16       vague and ambiguous, lack of foundation, it

14:56:50    17       calls for complete speculation, as well as a

14:56:53    18       legal conclusion.

14:57:00    19       A.      All cases where the record company was

14:57:02    20    not manufacturing and distributing its own product

14:57:15    21    without -- or I should say in the inverse.  In all

14:57:21    22    cases where the record company was licensing its

14:57:25    23    recordings to third parties for the reproduction

14:57:30    24    by those third parties of the master recordings

14:57:35    25    would have been licenses that would be covered by

                                                                    136

Exhibit I, Page 274

1                    Mark A. Levinsohn

14:57:40   2    provisions that were and are similar to this one.

14:57:46   3        Q.    Did you understand back in 1998 that

14:57:49   4    one of the types of licenses that would be covered

14:57:52   5    by this kind of a provision would be the license

14:57:55   6    of a master for use on a compilation record?

14:57:59   7        A.    If it was a compilation record being

14:58:06   8    manufactured and distributed by a third party,

14:58:12   9    yes.

14:58:13   10       Q.    And in that situation the third party

14:58:16   11   would license the master, combine it with other

14:58:22   12   masters, and then put it out on a compilation

14:58:25   13   record being offered by that third party, correct?

14:58:28   14       A.    The third party would license the

14:58:29   15   master, would reproduce the master, manufacture it

14:58:33   16   or reproduce it, and would generally make the

14:58:40   17   artwork, create the packaging, obtain the

14:58:49   18   corresponding mechanical licenses and distribute

14:58:55   19   the product to its customers.

14:59:00   20       Q.    And the master that was licensed would

14:59:03   21   just be part of the product that was being offered

14:59:06   22   by the third party to the consumer, correct?

14:59:09   23              MR. BUSCH:   Note my objection.

14:59:11   24              I don't understand the question.

14:59:13   25              It's vague and ambiguous, and I

                                                      137

Exhibit I, Page 275

1              Mark A. Levinsohn

14:59:14    2       articulate all my other objections.

14:59:17    3       A.    I mean, by definition a compilation is

14:59:22    4    a compilation of individual recordings.  And so to

14:59:25    5    the extent that the recording at issue in your

14:59:29    6    hypothetical is one of a number of them, yes,

14:59:35    7    there would be others on that compilation album as

14:59:38    8    well.

14:59:40    9       Q.    And another example of a license that

14:59:42    10   would be covered by provisions like 4(c)(v) of the

14:59:46    11   1998 agreement would be a synchronization license,

14:59:50    12   correct?

14:59:54    13              MR. BUSCH:   Note my objections.

14:59:55    14      A.    Yes.

14:59:56    15      Q.    And that would be a situation, for

14:59:58    16   example, where the record company would license

15:00:00    17   the particular master for use in a movie, correct?

15:00:04    18      A.    Correct.

15:00:05    19      Q.    And the master would be combined with a

15:00:07    20   lot of other elements to be part of the movie,

15:00:10    21   correct?

15:00:14    22      A.    Synchronized with other elements and

15:00:17    23   used within the movie, yes.

15:00:21    24      Q.    Now, besides compilation records and

15:00:26    25   synchronization licenses, can you think of any

138

Exhibit I, Page 276

|          | 1  | Mark A. Levinsohn |
| 15:00:30 | 2  | other licenses that you were aware of back in 1998 |
| 15:00:37 | 3  | that were covered by provisions like 4(c)(v) of |
| 15:00:41 | 4  | the 1998 agreement? |
| 15:00:42 | 5  | MR. BUSCH:  Objection, asked and |
| 15:00:43 | 6  | answered.  And objection, it calls for |
| 15:00:46 | 7  | speculation. |
| 15:00:46 | 8  | A.    Yes. |
| 15:00:47 | 9  | MR. BUSCH:  And a legal conclusion as |
| 15:00:49 | 10 | well. |
| 15:00:51 | 11 | A.    Licenses by a record company where |
| 15:00:56 | 12 | the record company would authorize or permit a |
| 15:01:01 | 13 | third party to manufacture, reproduce, and |
| 15:01:07 | 14 | distribute the recordings. |
| 15:01:11 | 15 | So, for example, there were instances |
| 15:01:16 | 16 | where the record company was not in itself |
| 15:01:22 | 17 | established in certain markets, territories, or |
| 15:01:28 | 18 | regions and would license the masters to a third |
| 15:01:36 | 19 | party and authorize that third party to |
| 15:01:46 | 20 | manufacture and reproduce the recordings and to |
| 15:01:50 | 21 | market and promote and distribute those recordings |
| 15:01:59 | 22 | themselves.  And in those cases those would be |
| 15:02:04 | 23 | licenses within the meaning of provisions such as |
| 15:02:09 | 24 | this in 1998. |
| 15:02:10 | 25 | Q.    Can you give me any examples of such |

139

**Exhibit I, Page 277**

1              Mark A. Levinsohn

15:02:14    2    licenses.

15:02:20    3         A.    I'm not sure that I understand your

15:02:21    4    question.

15:02:22    5         Q.    Specific names of companies that

15:02:24    6    entered into specific transactions of the type you

15:02:27    7    just described that you believe were treated as

15:02:29    8    licenses under royalty provisions similar to

15:02:33    9    4(c)(v).

15:02:35   10         A.    Sure.  I mean, most of the record

15:02:37   11    labels that I've mentioned who I represent did not

15:02:42   12    have the global reach that a company like

15:02:48   13    Universal has and were not positioned themselves

15:02:52   14    to do a particular -- to release products in, for

15:03:03   15    example, overseas territories.

15:03:12   16              So in virtually all of those cases

15:03:14   17    those companies would enter into licenses with

15:03:17   18    companies all over the world who would undertake

15:03:21   19    to manufacture, reproduce, distribute, market, and

15:03:29   20    promote the recordings.  And there would be far

15:03:35   21    too many names of the licensees to give you.

15:03:43   22         Q.    Can you give me any other examples

15:03:47   23    other than situations in which a U.S. label enters

15:03:52   24    into an agreement with a foreign distributor?

15:03:56   25              Can you give me any other examples of

                                                              140

Exhibit I, Page 278

```
1              Mark A. Levinsohn
```
15:03:59   2   situations in which you believe that a record

15:04:03   3   company has entered into a license that would be

15:04:05   4   covered by provisions like 4(c)(v) of the 1998

15:04:10   5   agreement?

15:04:11   6        A.    In about 1998?

15:04:12   7        Q.    Yes.

15:04:14   8              MR. BUSCH:  Hold on.

15:04:14   9              And the other thing that's -- I just

15:04:16   10   want to note my objection is -- when you

15:04:18   11   began this line of questioning I believe the

15:04:19   12   witness's testimony was any license would be

15:04:23   13   covered by it, and then you asked him

15:04:26   14   specifics.

15:04:26   15             So are you now asking him just

15:04:28   16   specifically about the things that he was

15:04:30   17   aware of in 1998?

15:04:32   18             MR. POMERANTZ:  I'm asking him what I'm

15:04:33   19   asking him.  I'm actually looking for his

15:04:35   20   testimony.

15:04:36   21             MR. BUSCH:  Well, that was his

15:04:36   22   testimony.

15:04:37   23             MR. POMERANTZ:  Okay.  Well, then,

15:04:37   24   good.  Now I'm looking for his testimony, not

15:04:40   25   yours.

141

Exhibit I, Page 279

```
                    1              Mark A. Levinsohn
15:04:40            2          Go ahead.
15:04:42            3      A.    Is -- was your question whether I can
15:04:43            4    think of other examples from in and around 1998 of
15:04:51            5    transactions between record companies and third
15:04:53            6    parties that were licenses and not with respect to
15:05:00            7    geographic territory and not with respect to
15:05:03            8    compilations or synchronization?
15:05:07            9      Q.    Correct.
15:05:08           10      A.    And I can offhand think of another
15:05:10           11    example, which would be where record companies, as
15:05:15           12    I think I have testified, were not themselves
15:05:23           13    equipped to do -- to handle a particular type of
15:05:27           14    specialty.
15:05:28           15          For example, a number of the record
15:05:31           16    companies that I represented would license the
15:05:37           17    right to release singles in vinyl format to
15:05:45           18    third parties because they were not in a position
15:05:50           19    themselves to handle that specialized type of
15:05:57           20    product.
15:05:58           21      Q.    Any other examples that you can think
15:06:00           22    of?
15:06:17           23      A.    I suppose to the extent that
15:06:22           24    reproducing recordings was necessary in
15:06:29           25    conjunction with things like live performances,
```

                                                                    142

Exhibit I, Page 280

1                    Mark A. Levinsohn

15:06:35    2    whether it be -- you talked about movies earlier

15:06:40    3    and implicated a synchronization license.  But,

15:06:44    4    for example, if there was a Broadway show or if

15:06:47    5    there was a live concert performance and the

15:06:52    6    artist, or promoter, or a Broadway producer wanted

15:06:57    7    to make copies of the sound recording to either

15:07:03    8    play while during the performance, there would

15:07:07    9    have been a license involved in a transaction such

15:07:11    10   as that.

15:07:12    11        Q.    Any others?

15:07:13    12        A.    Not that I can think of as we sit here

15:07:15    13   today, but maybe in the next four or five hours,

15:07:20    14   though.

15:07:22    15        Q.    Have you ever seen an agreement that

15:07:24    16   makes reference to ancillary uses of master

15:07:27    17   recordings?

15:07:36    18        A.    I -- I would guess that I have, but I

15:07:41    19   don't have a particular agreement in mind that I

15:07:46    20   have seen that has the phrase ancillary uses.

15:07:51    21        Q.    Have you heard people refer to

15:07:57    22   ancillary uses of master recordings?

15:08:00    23        A.    Yes.

15:08:00    24        Q.    Do you have an understanding of what

15:08:02    25   the term ancillary uses of master recordings

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com

Exhibit I, Page 281

1                      Mark A. Levinsohn

15:08:05   2    means?

15:08:08   3         A.    My understanding is that ancillary uses

15:08:13   4    would include licenses and other uses of master

15:08:21   5    recordings, not -- not in cases where the record

15:08:31   6    company is itself manufacturing through -- and

15:08:37   7    distributing its product through its own --

15:08:44   8    sorry -- through normal retail channels.

15:08:49   9              MR. BUSCH:  Just note --

15:08:50   10             You answered the question before I had

15:08:52   11        a chance to object.

15:08:54   12             Just note my objection to form and the

15:08:57   13        incorporation of my prior legal objections

15:08:59   14        into my objection.

15:09:00   15        Q.    And when you heard the term ancillary

15:09:02   16   uses of master recordings referenced by someone in

15:09:05   17   the music industry, what do you understand the

15:09:09   18   word ancillary to be referring to?

15:09:11   19             MR. BUSCH:  Objection, complete lack of

15:09:12   20        foundation, speculation.

15:09:14   21             You're not here to speculate or guess.

15:09:17   22             And I incorporate all of my prior

15:09:19   23        objections.

15:09:29   24        A.    I would understand it, I believe, to

15:09:31   25   mean uses other than the primary use, being the

144

**Exhibit I, Page 282**

```
                    1              Mark A. Levinsohn
15:09:46            2   manufacture by the record company of its own
15:09:49            3   product, and the reproduction by the record
15:09:55            4   company of its own product, and the sale by the
15:09:57            5   record company of that product through normal
15:10:01            6   retail channels.
15:10:11            7        Q.    If you would look at paragraph 4(c)(v)
15:10:15            8   of the 1998 agreement, the masters license
15:10:20            9   provision.
15:10:20           10              Do you see that?
15:10:21           11        A.    Yes.
15:10:22           12        Q.    Do you understand that that provision
15:10:23           13   only applies to ancillary uses of master
15:10:26           14   recordings?
15:10:27           15              MR. BUSCH:  Objection, lack of
15:10:28           16        foundation, and calls for a legal conclusion,
15:10:33           17        expert testimony, and all of my other
15:10:36           18        previous articulated -- previously
15:10:39           19        articulated legal objections.
15:10:42           20        A.    I understand that this provision covers
15:10:47           21   the uses and exploitations that it says it covers.
15:10:52           22        Q.    I see that, but I really was focusing
15:10:54           23   on the term ancillary that you and I have just
15:10:57           24   been discussing.
15:10:58           25              MR. BUSCH:  Well, you've been asking
```

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com

Exhibit I, Page 283

Page 319

C E R T I F I C A T E

STATE OF NEW YORK  )

                   : ss.

COUNTY OF NEW YORK )


        I, DONALD R. DePEW, a Registered

Professional Reporter, Certified Realtime Reporter

and Notary Public within and for the State of

New York, do hereby certify:

        That MARK A. LEVINSOHN, the witness

whose deposition is hereinbefore set forth, was

duly sworn by me and that such deposition is a

true record of the testimony given by the witness.

        I further certify that I am not related

to any of the parties to this action by blood or

marriage, and that I am in no way interested in

the outcome of this matter.

        IN WITNESS WHEREOF, I have hereunto set

my hand this 28th day of July, 2008.


                    DONALD R. DePEW, RPR, CRR