GLENN D. POMERANTZ (State Bar No. 112503)
Glenn.Pomerantz@mto.com
KELLY M. KLAUS (State Bar No. 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (State Bar No. 235670)
Melinda.Lemoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| F.B.T. PRODUCTIONS, LLC, and Em2M, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>AFTERMATH RECORDS doing business as AFTERMATH ENTERTAINMENT; INTERSCOPE RECORDS; UMG RECORDINGS, INC.; and ARY, INC.,<br><br>Defendants. | CASE NO.  CV 07-03314 PSG (MANx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 3 TO EXCLUDE OPINION OF PUTATIVE EXPERT GARY COHEN**<br><br>**[DECLARATION OF MELINDA LEMOINE IN SUPPORT OF THIS MOTION FILED CONCURRENTLY]**<br><br>Judge:   Hon. Phillip S. Gutierrez<br>Date:    February 3, 2009<br>Time:    9:00 A.M.<br>Ctrm:    Roybal 790<br><br>Final Pretrial Conference: January 12, 2009<br><br>JURY TRIAL: FEBRUARY 3, 2009 |

1  TO ALL PLAINTIFFS AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on February 3, 2009, at 9:00 a..m., in the
3  above-referenced Court, Defendants Aftermath Records (doing business as
4  Aftermath Entertainment), Interscope Records, UMG Recordings, Inc., and ARY,
5  Inc. will and hereby do move this Court *in limine* for an order prohibiting Plaintiffs
6  from eliciting, offering, or arguing at any phase of a trial on this matter the report or
7  testimony of putative expert Gary Cohen.

8  This Motion is made on the grounds that Cohen's opinion does not meet the
9  reliability requirement of Federal Rule of Evidence 702.

10  This Motion is based upon this Notice of Motion and Motion, the Declaration
11  of Melinda LeMoine filed herewith, the [Proposed] Order lodged concurrently
12  herewith, the Court's file in this matter, and upon such other and further evidence
13  and argument as may be presented prior to, after, or at the time of the hearing on this
14  matter.

15  Defendants certify that this Motion is made following the conference of
16  counsel pursuant to Local Rule 7-3 that took place telephonically on December 16,
17  2008.

19  DATED:   December 19, 2008                    MUNGER, TOLLES & OLSON LLP

21                                               By:  */s/ Glenn D. Pomerantz*
                                                      Glenn D. Pomerantz
22                                               Attorneys for Defendants

- 1 -   **DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE OPINION OF PUTATIVE EXPERT GARY COHEN**

6631359.2

## I. INTRODUCTION

Plaintiffs proffer the expert report and testimony of Gary Cohen, an accountant, in support of their damages claim. Cohen's testimony and report should be excluded, however, because they do not meet the reliability requirement of Federal Rule of Evidence 702.

Cohen admits that even though the formula by which he was to calculate Plaintiffs' damages called on him to determine Defendants' "net receipts" in his calculations, he instead used Defendants' *gross* revenue numbers—their "gross receipts"—to calculate damages. Cohen also admits that he did not ignore the term "net" because there was nothing to deduct from gross receipts, but rather because the term "net receipts" was not expressly defined in the agreement. In other words, contrary to well-established principles of contract construction, Cohen assumed that the contracting parties intended the term "net" to have no meaning simply because they did not expressly define it in the contract. There is no legal or factual support for this assumption.

Because of this fatal error, Cohen's damages calculation is necessarily overstated, inasmuch as "net receipts" are commonly understood—with or without an express definition in the contract—to constitute "gross receipts" *minus* some other amount. And it is impossible for Cohen to tell us how much his estimates are inflated, because he testified that he never even bothered to investigate what costs and expenses might be deducted in a "net receipts" calculation.

## II. ARGUMENT

Cohen's expert report is intended to establish the "damages due [P]laintiffs"; specifically, "the amount of additional royalties due [Plaintiff F.B.T. Productions, LLC ("F.B.T.")] from the sales of permanent digital downloads and mobile mastertones for the period January 1, 2002 through 2008." Declaration of Melinda LeMoine Ex. R ("Cohen Exp. Rep.") at 351. To arrive at this calculation, Cohen "[t]otaled revenue by category . . . by master recording" and then "[d]ivided [that]

revenue in half." *Id.* at 353, §§ C.1.-2. According to Cohen, "[t]he result represents the total amount due F.B.T. and Marshall Mathers on each master recording." *Id.*

The source for Cohen's computational methodology is Section 5(c)(v) of a July 3, 2003 recording agreement (the "2003 Agreement") between Defendant Aftermath and Eminem (with Plaintiff F.B.T. and its Co-Plaintiff Em2M LLC being passive income participants only). (LeMoine Decl. Ex. S ("Cohen Depo.") at 373:14-374:16.) Section 5(c)(v) of this Agreement provides in relevant portion:

> On masters licensed by us or our Licensees to others for their manufacture and sale of records or for any other uses, your royalty shall be an amount equal to fifty percent (50%) of our *net receipts* from the sale of those records or from those other uses of the masters.

(LeMoine Decl., Ex. N, ¶ 5(c)(v) at 207 (the "2003 Agreement") (emphasis added).)[1]

By his own admission, however, Cohen simply ignored the word "net" in "net receipts." Instead, Cohen treated "net receipts" as identical to "*gross* receipts"; that is, in arriving at his damages estimate Cohen did not "deduct any amount from the gross receipts that [Defendant] Aftermath received on permanent downloads before dividing those proceeds 50/50." (LeMoine Decl., Ex. S (Cohen Depo.) at 379:22-378:23.) This means that Cohen's damages estimate is necessarily overstated, since—as a matter of ordinary English usage—"net receipts" are equal to "gross receipts" *minus some deduction* (*e.g.*, for costs and expenses of production). *Compare* Merriam-Webster's Collegiate Dictionary at 780 (10th ed. 2001) (defining "net" as "free from all charges or deductions: a: as remaining after the deduction of all charges, outlay or loss"), *with id.* at 514 (defining "gross" as "overall total exclusive of deductions"). *See Alford v. City of Cannon Beach*, No. CV-00-303-HU, 2002 WL 31439173, at *9 (D. Or. Jan. 15, 2002) ("In a general sense, the

---

[1] A virtually identical provision appears as Section 4(c)(v) in the March 9, 1998 recording agreement whereby F.B.T., to whom Eminem had been signed, agreed to furnish Eminem's exclusive recording services to Aftermath. (LeMoine Decl. Ex. M ¶ 4(c)(v) at 190.)

difference between . . . gross profits and . . . net profits is the cost of doing business."). Cohen does not know by how much his estimates are inflated, because he admits that he never investigated what deductions he should make from Defendants' gross receipt numbers in order to arrive at net receipts. (Cohen Depo. at 378:13-23.)

As significantly, Cohen's conflation of "gross receipts" with "net receipts" violates a cardinal rule of contract interpretation, codified in California law: "An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable. A court will interpret a contract in a manner that gives reasonable meaning to all of its provisions, if possible." 11 WILLISTON ON CONTRACTS § 32:5 (4th ed. 2008). *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). If "net receipts" and "gross receipts" mean the same thing, the modifier "net" is stripped of any contractual meaning. Yet this is precisely what Cohen has testified he did. Cohen equated "net receipts" with "gross receipts" *not* because he concluded there were no costs or expenses to deduct from gross revenue (an issue he never looked into), but merely because there was no "specific definition" of that term in the Agreements (LeMoine Decl., Ex. S (Cohen Depo.) at 374:11-375:15).[2] The lack of a specific definition is obviously no reason to completely ignore a term in an agreement.

In any event, Cohen had plenty of provisions within the 2003 Agreement to consider to form an opinion as to what might be a proper "net receipts" calculation. Cohen completely ignored the fact that the 2003 Agreement defined the term "net receipts" with respect to royalties for certain exploitations of Eminem "Videos".

---

[2] Cohen—a certified public account—even went so far as to claim at his deposition that it was impossible for him to explain the difference between "gross" and "net" without first "see[ing] a specific agreement" defining those terms. (LeMoine Decl., Ex. S (Cohen Depo.) at 369:7-370:17.)

That provision defined "net receipts" as "gross receipts solely attributable to Videos hereunder less (1) any and all direct costs and/or third party payments in connection with the creation, manufacture, exploitation or use of said Videos; and (2) an additional fee in lieu of any overhead of distribution fee of twelve percent (12%) of the gross receipts in connection therewith."  Moreover, the 2003 Agreement contained other definitions that incorporated the concept of "net" (e.g., paragraph 16(a) defined "Net Sales" as "gross sales, less returns, credits and reserves against anticipated returns and credits").  Consistent with common usage, then, the term "net" in the 2003 Agreement clearly refers to gross receipts *minus* some deductions, and provisions in the 2003 Agreement offer several insights into the kinds of costs that should be deducted from "gross receipts" to obtain that "net" figure.  Just as he ignored the word "net," Cohen ignored those provisions, rendering his damages estimate hopelessly overstated.

Because it is (1) certain that Cohen's damages calculation is exaggerated but (2) impossible to determine by how much, the deficiencies in Cohen's expert report and testimony go well beyond the weight they are to be accorded at trial, and directly to their admissibility.  Expert testimony is admissible under Federal Rule of Evidence 702[3] only if it is reliable.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 579 (1993).  To satisfy the reliability requirement, Rule 702 requires (i) a qualified expert; (ii) testimony based upon sufficient facts or data and (iii) reliable principles and methods; and (iv) the expert's reliable application of these principles

---

[3] Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

and methods to the facts of the case. *E.g.*, *Good v. Fluor Daniel Corp.*, 222 F. Supp. 2d 1236, 1240 (E.D. Wash. 2002). It is Plaintiffs' burden to demonstrate by a preponderance of the evidence that the requirements of *Daubert* and Rule 702 have been satisfied. *See Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d 594, 598 (9th Cir. 1996); *Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 988 (D. Ariz. 2000); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1395 (D. Or. 1996). Plaintiffs cannot do so with respect to Cohen's testimony.

To meet Rule 702's reliability requirement, an expert must show he "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Applying this standard, courts have dismissed as unreliable expert reports and testimony that, for example, contained a flawed statistical analysis that failed to take account of relevant variables (*see Sheehan*, 104 F.3d at 942), or that failed to consider obvious alternative causes for an alleged injury (*see Claar v. Burlington N.R.R. Co.*, 29 F.3d 499 (9th Cir. 1994)).

*Sugar Association, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DSF (RZx), 2007 WL 5674021 (C.D. Cal. Dec. 10, 2007), is on point. Plaintiff in that case sought to introduce the expert testimony of a damages expert whose calculations depended on a series of assumptions for which the expert could provide no factual basis. *See id.* at *1 (assuming without factual support that "(i) the percentage of people who purchased Splenda due to consumer confusion in the tabletop sectors is the same in the ingredient and foodservice sectors, and (ii) the brand-switching percentages in the tabletop sector are also applicable in the ingredient and foodservice sectors"). Without factual support for the assumptions underpinning the conclusions in his report, the district court held that plaintiff's expert could not

satisfy the requirements of Rule 702 because his testimony would not be "based on sufficient facts or data and [would] not [be] the product of reliable principles and methods." *Id.* at *2.

The unjustified assumption made in Cohen's damages calculation—that "gross receipts" and "net receipts" are the same thing—parallels the unsupported assumption that rendered the expert's testimony inadmissible in *Sugar Association*. Like the expert in that case, Cohen provides no factual explanation for why he calculated "net receipts" using gross revenue numbers, and there is certainly no support for applying such a methodology in the words of the Agreements themselves. Because Cohen's methodology is intrinsically flawed and produces a damages calculation that is necessarily overstated, his report and testimony cannot be admitted under Rule 702. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 806-07 (9th Cir. 1988) (upholding exclusion of two damages experts whose testimony rested on "unsound extrapolation" and "unsupported assumptions and ignore[d] distinctions crucial to arriving at a valid conclusion"); *Muffley v. Gem County*, No. CV-05-466-S-BLW, 2007 WL 5323603, at *10 (D. Idaho July 17, 2007) (testimony of damages expert inadmissible under Rule 702 where report was based on "inaccurate and/or faulty assumptions, misapplied data, and assumptions without valid factual foundation"); *Sebastian Int'l., Inc. v. Russolillo*, No. CV 00-3476 SVW JWJX , 2005 WL 1323127, at *7-*8  (C.D. Cal. Feb. 22, 2005) (excluding testimony of expert who conceded his "estimation of damages from lost sales does not distinguish between" lost sales caused by counterfeit goods and lost sales caused by diversion of genuine goods, even though plaintiff's cause of action concerned only diversion of genuine goods, not counterfeit goods).

### III. CONCLUSION

For the reasons stated above, Defendants respectfully request that Cohen's expert report and testimony concerning damages be excluded from any further proceedings on this matter.

DATED: December 19, 2008           MUNGER, TOLLES & OLSON LLP

By: */s/ Glenn D. Pomerantz*
     Glenn D. Pomerantz

Attorneys for Defendants