1  GLENN D. POMERANTZ (State Bar No. 112503)
   Glenn.Pomerantz@mto.com
2  KELLY M. KLAUS (State Bar No. 161091)
   Kelly.Klaus@mto.com
3  MELINDA E. LEMOINE (State Bar No. 235670)
   Melinda.Lemoine@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
5  Thirty-Fifth Floor
   Los Ángeles, CA  90071-1560
6  Telephone:  (213) 683-9100
   Facsimile:   (213) 687-3702
7
8  Attorneys for Defendants

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12

13 | F.B.T. PRODUCTIONS, LLC, and       | CASE NO.  CV 07-03314 PSG (MANx)
   | Em2M, LLC,                          |
14 |                                     | **DEFENDANTS' NOTICE OF
   |             Plaintiffs,             | MOTION AND MOTION *IN LIMINE*
15 |                                     | NO. 2 TO EXCLUDE OPINION OF
   |        vs.                          | PUTATIVE EXPERT DAVID
16 |                                     | BERMAN**
   | AFTERMATH RECORDS doing             |
17 | business as AFTERMATH               | **[DECLARATIONS OF MELINDA
   | ENTERTAINMENT; INTERSCOPE          | LEMOINE AND MICHAEL
18 | RECORDS; UMG RECORDINGS,            | OSTROFF IN SUPPORT OF THIS
   | INC.; and ARY, INC.,                | MOTION FILED
19 |                                     | CONCURRENTLY]**
   |             Defendants.            |
20 |                                     | Judge:    Hon. Phillip S. Gutierrez
   |                                     | Date:     February 3, 2009
21 |                                     | Time:     9 a.m.
   |                                     | Dept:     Roybal 790
22 |
23 |                                     | Discovery Cut-Off:  November 3, 2008
   |                                     | Final Pretrial Conference:  January 12,
24 |                                     |                             2009
25 |                                     | JURY TRIAL:  FEBRUARY 3, 2009
26 |
27 |
28 |

1    TO ALL PLAINTIFFS AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that on February 3, 2009, at 9 a.m., in the above-

3    referenced Court, Defendants Aftermath Records (doing business as Aftermath

4    Entertainment), Interscope Records, UMG Recordings, Inc., and ARY, Inc. will and

5    hereby do move this Court *in limine* for an order prohibiting Plaintiffs from offering

6    the testimony of putative expert David Berman at trial.

7    This Motion is made on the grounds that Berman's opinion does not meet the

8    requirements of Federal Rule of Evidence 702.  In addition, Berman's expert report

9    and testimony are barred by Berman's contractual obligations to his former

10    employer and client, Geffen Records, Inc., which was subsequently merged into

11    defendant UMG Recordings, Inc., and by his ethical and professional obligations to

12    that company.

13    This Motion is based upon this Notice of Motion and Motion, the Declaration

14    of Melinda LeMoine filed herewith, the Declaration of Michael Ostroff filed

15    herewith, the [Proposed] Order lodged concurrently herewith, the Court's file in this

16    matter, and upon such other and further evidence and argument as may be presented

17    prior to, after, or at the time of the hearing on this matter.

18    Defendants certify that this Motion is made following the conference of

19    counsel pursuant to Local Rule 7-3 that took place telephonically on December 16,

20    2008.

21
22    DATED:   December 19, 2008                    MUNGER, TOLLES & OLSON LLP

23
24                                                By:__*/s/ Glenn D. Pomerantz*_____
                                                      Glenn D. Pomerantz
25                                                   Attorneys for Defendants

26
27
28

DEFENDANTS' NOTICE OF MOTION *IN
LIMINE* NO. 2 TO EXCLUDE OPINION OF
PUTATIVE EXPERT DAVID BERMAN

# I.    **INTRODUCTION**

In support of their claims, Plaintiffs offer the expert report and testimony of David Berman, a former record company executive and attorney.  Berman retired from the record industry in 2001, before permanent downloads became a prevalent format for selling music.  Berman admits he has no experience drafting, interpreting, or implementing contract provisions that deal with music downloads.  Nor does he have any experience determining how royalty provisions drafted *before* the popularity of digital downloading have been applied to downloads.  Yet these are the precise issues on which Berman now purports to be an "expert."  Berman's lack of experience in the subject matter on which he seeks to opine means he cannot satisfy the requirements of Federal Rule of Evidence 702, and, therefore, his testimony and report should be excluded.

Berman's lack of experience in addressing how terms in artist royalty agreements have been applied to downloads is not just an incidental omission in his background.  For the past several years, artist and record company representatives have negotiated, drafted, and implemented hundreds of recording agreements that expressly address permanent downloads and apply customary contract provisions to downloads.  The evidence in this case has not identified a single recording agreement for any recording artist which mentions permanent downloads and provides that the artist will receive 50% of net receipts for such exploitation under a "masters licensed" provision.  Yet plaintiffs now seek to have Berman and endorse their view, even though Berman has never drafted, negotiated, or implemented a contract that expressly addressed how downloads fit into the customary provisions of a recording agreement.

Berman's testimony should also be excluded on another ground:  his testimony is barred by his contractual and ethical obligations.  Berman served for many years as an executive and general counsel of Geffen Records.  At the time he joined Geffen, and to the present day, Geffen Records was part of defendant UMG

1  Recordings, Inc., or one of its affiliated predecessors.  In the course of his job at

2  Geffen, Berman signed three separate contracts in which he agreed not to use—

3  "directly or indirectly"—any of the confidential information he acquired at the

4  company for his own benefit, or for the benefit of others.  Yet Berman's

5  qualification as an expert is expressly premised on the expertise he gained at Geffen

6  through the review of confidential information, such as the royalty provisions

7  contained in Geffen's artist contracts.  Indeed, one of the opinions that Berman

8  expressed at his deposition—that record companies have occasionally granted artists

9  greater than 50% of net receipts obtained from licensing—was grounded expressly

10  on his experience drafting contracts at Geffen Records, the terms of which Berman

11  admits remain highly confidential and proprietary.

12      Even apart from his contractual duties, Berman also owes his former client

13  Geffen Records a continuing duty of confidentiality from which he has not been

14  excused.  That duty is currently owed to the company into which Geffen Records

15  was merged, defendant UMG Recordings, Inc.  It is a clear breach of his duty for

16  Berman to use that confidential information against the client to whom he owes the

17  duty.

18      For all these reasons, explained more fully below, Defendants respectfully

19  request that Berman's report and testimony be excluded at trial.

20  **II.    ARGUMENT**

21      Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

22  *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),[1] expert testimony is admissible only if

23  _____

[1] Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

1    it is both relevant and reliable.  Because Plaintiffs offer Berman's expert testimony,

2    they have the burden of demonstrating by a preponderance of the evidence that the

3    requirements of *Daubert* and Rule 702 have been satisfied.  *See Lust v. Merrell Dow*

4    *Pharmaceuticals, Inc.,* 89 F.3d 594, 598 (9th Cir. 1996); *Grant v. Bristol-Myers*

5    *Squibb*, 97 F. Supp. 2d 986, 988 (D. Ariz. 2000).

6          **A.    Plaintiffs Cannot Meet Their Burden of Demonstrating That**

7                 **Berman's Testimony Satisfies the Requirements Of FRE 702**

8          If a witness is relying solely or primarily on his practical experience, as

9    Berman is, then he must explain how that experience leads to the conclusion

10   reached, why it is a sufficient basis for his opinion, and how it is reliably applied to

11   the facts.  *See* Fed. R. Evid. 702, adv. committee note (2000) (stating that the trial

12   court's gate-keeping function requires more than simply "taking the expert's word

13   for it").  *See also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th

14   Cir. 1995) ("We've been presented with only the experts' qualifications, their

15   conclusions and their assurances of reliability.  Under *Daubert*, that's not enough.").

16         Berman's report does none of these things.  To the contrary, Berman's

17   deposition testimony shows he has no professional experience in the very areas on

18   which he now professes expertise:

19         •    Berman could not recall "ever negotiating a provision in an artist's

20              recording agreement that expressly mentioned permanent downloads."

21              (Declaration of Melinda LeMoine Ex. V ("Berman Depo.") at 520:1-5.)

22         •    Berman has never drafted an agreement "between a record company

23              and any provider of digital downloads."  Indeed, he cannot recall ever

24              having "*read* an agreement between a record company and a provider

25              of digital downloads, other than agreements that [he] ha[s] read in

26              connection with this matter."  (*Id.* at 526:20-527:13 (emphasis added).)

27

28

- Berman cannot recall ever "reviewing a draft of an agreement that expressly mentioned permanent downloads while [he was employed] at any record company." (*Id.* at 520:6-10.)

- Berman cannot say definitively whether he had ever "*see*[*n*] an agreement that expressly referenced permanent downloads[,] prior to the time that [he] retired" in 2001. (*Id.* at 520:15-521:7 (emphasis added).)

- Berman could "not recall" participating in "*a single negotiation . . . relating to an artist agreement in which [Berman] or the artist representative brought up how to pay royalties on permanent downloads.*" (*Id.* at 522:17-22 (emphasis added).)

- Berman could "not recall" "ever seeing an agreement that expressly addressed ringtones or master tones prior to [his] retirement in 2001." (*Id.* at 520:15-19.) He never "negotiated or drafted an agreement pertaining to master tones," before *or* after his retirement. Nor has Berman ever "read an agreement pertaining to master tones[,] other than those" at issue here. (*Id.* at 527:14-20.)

- Berman has never been qualified as an expert in a lawsuit, like this one, "involv[ing] payment of royalties on downloads." (*Id.* at 527:24-528:4.)

Expert testimony may be admissible if it is aimed at determining the meaning of a disputed contract term by reference to a common understanding among members of a particular trade—what is commonly referred to as "custom and usage" or "custom and practice" evidence. *See Energy Oils, Inc. v. Montana Power Co.*, 626 F.2d 731, 737 (9th Cir. 1980).[2] But Berman can hardly provide "custom and

---

[2] Defendants understand that Berman's testimony is being offered as industry "custom and usage" evidence. Nevertheless, Berman's expert report is replete with inadmissible legal conclusions. (*E.g.*, LeMoine Decl., Ex. P (Berman Exp. Rep.) ¶¶ 1-2, 4-8 at 330-31; 333-35.) Defendants assume that Plaintiffs will not seek to admit these legal opinions as testimony at trial. Doing so would be improper and

1  practice" testimony on how customary contract terms used in the record industry in

2  *pre*-digital download contracts should be applied to the *post*-digital download

3  business environment; he has never so applied those terms, or even been *asked* to

4  apply those terms.  Indeed, Berman was not even employed in the record industry

5  when digital downloads became a prevalent form of delivering music.[3]  (LeMoine

6  Decl., Ex. V (Berman Depo.) at 519:12-18.)

7        While Berman may have considerable experience in music law prior to 2001,

8  he has no experience reviewing, drafting, or interpreting the type of contract

9  provision on which he now purports to have special knowledge in the context of

10 permanent downloads.  Berman has *never* done what Plaintiffs ask him to do here:

11 determine how the royalty provisions of a contract written in 1998 would be applied

12 to permanent downloads, which now happens regularly since Berman's retirement

13 in 2001.  He cannot provide testimony on an industry "custom and practice" that he

14 has never participated in or observed.[4]

15

16 contrary to law.  *See GPF Waikiki Galleria, LLC v. DFS Group, L.P.*, No. 07-00293 DAE-LEK, 2007 WL 3195089, at *6 (D. Hawai'i Oct. 30, 2007); *Marx & Co., Inc.*

17 *v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977); *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359-60 (D. Mass. 2008); *Highland Capital Mgmt., L.P. v. Schneider*,

18 379 F. Supp. 2d 461, 472 (S.D.N.Y. 2005).

[3] Ironically, Berman testified that the former vice chairman of Warner Bros.
19 Records, whom he telephoned to discuss certain issues in this case (LeMoine Decl., Ex. V (Berman Depo.) at 506:10-25)—*i.e.*, "what Warner Bros. Records was doing
20 with respect to digital downloads" (*id.* at 507:4-5), and especially "what record companies were doing in the context of renegotiating artist contracts" in light of the
21 growth in digital downloads (*id.* at 509:24-510:1)—had not been "helpful" to him, because (like Berman himself) he was "gone from Warners by the time [digital
22 downloads] became a significant issue" (*id.* at 507:6-7).  (*See also id.* at 507:22-508:3, 509:11-510:6 (both reiterating that conversation was not helpful because the
23 executive in question had left Warner Brothers by the time digital downloads became prevalent).)  But this is exactly Berman's own situation.

24 [4] Put another way, an expert qualified on grounds of experience must have more than minimal exposure to the specific subject matter on which he intends to opine,
25 even if his general knowledge is substantial.  *See Adams v. Teck Cominco Alaska, Inc.*, 399 F. Supp. 2d 1031, 1036-37 (D. Alaska 2005) (even though engineer had 17
26 years' experience in performing engineering cost estimates, testimony held inadmissible because expert lacked previous experience with the technology at
27 issue, the cost of which he was purporting to estimate); *Montefiore Medical Center v. American Protection Ins. Co.*, No. 00Civ.3235LTSMHD, 2003 WL 21108232, at
28 *2 (S.D.N.Y. May 14, 2003) (holding inadmissible testimony of expert whose "curriculum vitae [was] indicative of extensive general experience in the

1    *In re International Rectifier Securities Litigation*, No. CV91-3357-RMT

2    (BQRX), 1997 WL 529600, (C.D. Cal. March 31, 1997), is instructive.  The

3    plaintiffs in that case offered expert testimony from a finance professor, claiming

4    that the defendant-underwriters had failed to conduct adequate due diligence before

5    their securities offering.  *Id.* at *8.  Though couched as "custom and practice"

6    evidence, the court rejected that designation (and the expert's testimony), noting the

7    following "troubling" facts:

8        •    "nothing in [the proffered expert's] background indicat[es] that he has

9             any first-hand knowledge of industry custom and practice pertaining to

10            underwriters' due diligence, or that he has personally participated in the

11            due diligence for a public offering"; and

12       •    the proposed expert "has never appeared as an expert on underwriters'

13            due diligence."

14   *Id.* at *9.  "[W]hile Dr. Smith may be an erudite individual in matters of finance and

15   economics," the court concluded, "he is not an expert on the subject of underwriter

16   due diligence."  *Id.*  The same reasoning makes Berman's expert report and

17   testimony inadmissible.

18       **B.    Berman Is Prohibited From Offering Expert Testimony In This**

19               **Matter Because Of His Contractual And Ethical Duties**

20           **1.    Berman's Employment and Termination Agreements With**

21                   **Geffen Bar Him From Giving Expert Testimony Here**

22   From 1991 to 1998, Berman served as a Senior Executive of The Geffen

23   Company (which became Geffen Records, Inc. in 1992) and, later, as Geffen

24   Records' General Counsel.  During his years at Geffen Records, according to

25

26

---

27   construction industry and knowledge of a number of general construction and
     business areas," because "nothing . . . indicate[d] that [the expert] ha[d] any

28   expertise in the building deterioration, construction or causation matters that are at
     issue in *this* case" (emphasis added)).

**DEFENDANTS' MOTION *IN LIMINE*
NO. 2 TO EXCLUDE OPINION OF
EXPERT DAVID BERMAN**

1  Berman, he "[s]upervised all [of Geffen Records'] legal . . . affairs." (LeMoine

2  Decl. Ex. P, (Berman Exp. Rep.) at 338.)

3      The David Geffen Company merged into a wholly owned subsidiary of MCA

4  Inc., on April 17, 1990. (*See* Declaration of Michael Ostroff, ¶2 at 2.) In 1999,

5  MCA Inc. merged The David Geffen Company (by then known as Geffen Records,

6  Inc.) into UMG Recordings, Inc. (*Id.* at ¶ 4 at 2.) UMG Recordings, Inc. assumed

7  all of Geffen Records, Inc.' rights—including the rights granted to it by Berman's

8  employment and termination agreements. (*Id.* at ¶ 5 at 2.)

9      At the time Geffen Records hired him, Berman executed an employment

10  agreement that provides in relevant part:

11      You shall hold in a fiduciary capacity, for the benefit of the Company,
        all confidential or proprietary information, knowledge and data of the
12      Company which you may acquire, learn, obtain or develop during your
        employment by the Company. Further, you shall not, during the term
13      of your employment by the Company or after the termination of such
        employment, directly or indirectly use, communicate or divulge for
14      your own benefit or for the benefit of another any such information,
        knowledge or data.
15

16  (Ostroff Decl. Ex. 1, § 12(a) at 8.) In 1995, after he had worked for Geffen for

17  approximately four years, Berman executed a second employment agreement

18  containing a provision identical to the one quoted above. (Ostroff Decl. Ex. 2,

19  § 11(a) at 15.)

20      When Berman left Geffen Records in 1998, he executed a termination

21  agreement affirming for a *third* time his commitment to keep confidential the

22  knowledge he had acquired at the company, and not to "directly or indirectly" use it

23  for his own "benefit or for the benefit of another." Berman's termination agreement

24  with Geffen Records states:

25      By entering into this Agreement, you also confirm the commitment
        made by you in the Employment Agreement that all confidential or
26      proprietary information, knowledge, and data of Geffen and its
        affiliates which you have acquired, learned, obtained or developed
27      during your employment with Geffen will not, after the termination of
        your employment, directly or indirectly be used, communicated or
28      divulged by you for your own benefit or for the benefit of another.

**DEFENDANTS' MOTION *IN LIMINE*
NO. 2 TO EXCLUDE OPINION OF
EXPERT DAVID BERMAN**

(Ostroff Decl. Ex. 3, § 8 at 26.)  Berman's expert report, deposition testimony, and expected trial testimony violate these contractual provisions.

Berman conceded during his deposition that his work experience at Geffen Records formed a significant part of his qualifications as an expert.  (LeMoine Decl., Ex. V (Berman Depo.) at 515:17-20, 518:9-16.)  While at Geffen Records, Berman "[w]as involved in artist producer's contracts, various provisions of contracts, royalty provisions and licensing provisions in contracts, as well as licensing in general." (*Id.* at 515:17-516:18.)  Berman negotiated artist agreements, reviewed drafts of artist agreements that others at Geffen Records had drafted, negotiated and reviewed royalty provisions in artist agreements, and determined the terms of provisions in artist agreements that related to the licensing of masters.  (*Id.* at 517:5-518:8.)

Much of the information Berman obtained while performing these functions was necessarily of a confidential character.  Berman admitted, for instance, that when he "provide[d] advice within [Geffen] regarding what [the] particular terms of a recording agreement were intended to mean," it was confidential.  (LeMoine Decl., Ex. V (Berman Depo.) at 525:7-526:4.)  Berman likewise admitted that the terms, including the royalty percentages, of the artist agreements he negotiated at Geffen Records were confidential.  (*Id.* at 523:8-524:24, 534:13-17.)  Yet Berman proposes to use this *concededly confidential* information to support one of the opinions in his report, *i.e.*:

> It is and has been for many years common practice in the record industry for recording agreements to provide for the payment to the artist or production entity of 50% of the record companies net receipts on licensed income which is not otherwise specifically provided for.

(LeMoine Decl., Ex. P (Berman Exp. Rep.) § 1 at 330-31.)  Berman has given as the basis for this opinion that he "kn[e]w for a fact that [record companies had] given 60, up to 75 percent" "of net receipts on licensing of masters" because he himself

**DEFENDANTS' MOTION *IN LIMINE*
NO. 2 TO EXCLUDE OPINION OF
EXPERT DAVID BERMAN**

1  did so on behalf of Geffen Records, *while he was negotiating agreements for the*

2  *company*.  (Id., Ex. V at 534:3-12.)

3       Berman's proposed expert testimony therefore both "directly" *and*

4  "indirectly" "use[s], communicate[s] [and] divulge[s]" "confidential or proprietary

5  information, knowledge and data of" Geffen Records that Berman "acquire[d],

6  learn[ed], obtain[ed] or develop[ed] during [his] employment."[5]  To the extent

7  Berman bases his opinion on specific contract terms he negotiated at Geffen

8  Records, his testimony is a *direct* use of Geffen Records' confidential information.

9  Berman's testimony is an *indirect* use of Geffen Records' confidential information,

10  meanwhile, to the extent that Berman's expert qualification is based on his

11  experience drafting, negotiating, and implementing agreements at Geffen Records.

12  Berman admitted to both at his deposition.

13       A related problem is that *refuting* Berman's claims would require UMG

14  Recordings to reveal, in a public trial, the very information that Berman's

15  employment and termination agreements are intended to keep private.  In effect,

16  Berman would leave Defendants with the Hobson's choice of either revealing the

17  proprietary terms of contracts with other artists not at issue in this lawsuit, to show

18  the falsity of certain testimony that Berman plans to offer, or keeping the

19  information confidential while hamstringing their legal defense.  "The rules

20  governing disqualification," however, "are designed to protect against the potential

21  breach of . . . confidences, even without any predicate showing of actual breach.

22  That is the case with respect to expert witnesses . . . just as it is the well-accepted

23  rule with respect to attorney disqualification. *The threat or potential threat that*

24  *confidences may be disclosed is enough*."  *Marvin Lumber & Cedar Co. v. Norton*

25

26

27  _____

[5] Because Berman has been paid $500 an hour for his expert witness services, and
28  because his testimony is intended to advance Plaintiffs' case, Berman has also
clearly acted for his "own benefit," as well as for the "benefit of another."

**DEFENDANTS' MOTION *IN LIMINE***
**NO. 2 TO EXCLUDE OPINION OF**
**EXPERT DAVID BERMAN**

1   *Co.*, 113 F.R.D. 588, 591 (D. Minn. 1986) (citing *Miles v. Farrell,* 549 F. Supp. 82,

2   84 (N.D. Ill. 1982)).[6]

3           **2.**    <u>**Berman's Expert Testimony Also Violates His Ethical Duties**</u>

4                 <u>**To Geffen (And Now UMG) As Its Attorney**</u>

5       Berman's proposed expert report and testimony is also inadmissible because

6   it violates his ethical duties to a former client.  An attorney is under an obligation to

7   preserve the secrets of his clients "at every peril to himself."  *Commercial Standard*

8   *Title Co., Inc. v. Superior Court*, 92 Cal. App. 3d 934, 945 (1979).  This duty is

9   owed to both present and former clients and only the client can release the

10  obligation.  *Id.*

11       *Grioli v. Delta International Machinery Corp.*, 395 F. Supp. 2d 11 (E.D.N.Y.

12  2005), is on all fours.  That case involved proposed testimony against a defendant by

13  an expert witness who had previously served as counsel for the defendant.  The

14  court initially noted:

15       [C]ourts that have encountered the issue of an expert who formerly had

16       a relationship with an adverse party have employed a three part test to
        determine whether the expert should be disqualified: (1) was it

17       objectively reasonable for the first party who retained the expert to
        conclude that a confidential relationship existed; (2) was any

18       confidential or privileged information disclosed by the first party to the
        expert; and (3) does the public have an interest in allowing or not

19       allowing the expert to testify.

20  *Id.* at 13-14.  *Accord Stencel v. The Fairchild Corp.*, 174 F. Supp. 2d 1082, 1083

21  (C.D. Cal. 2001).

22       The court then concluded that all three prongs of this test were satisfied where

23  the expert's "prior representation of the Defendant as an attorney was extensive and

24  lengthy."  *Grioli*, 395 F. Supp. 2d at 14.  The first element of the test was met

25  because "there [was] no dispute that a confidential relationship existed when [the

26

27       [6] In analogous circumstances, where a party is unable to fairly cross-examine a
   witness, the "common" and "conventional" remedy is to exclude or strike the direct

28  testimony from the record. *Cf. Fost v. Superior Court*, 80 Cal. App. 4th 724, 735-36
   (2000).

**DEFENDANTS' MOTION *IN LIMINE***
**NO. 2 TO EXCLUDE OPINION OF**
**EXPERT DAVID BERMAN**

proposed expert] represented the Defendant as trial counsel." *Id.* There can be no

dispute here, similarly, that there was a confidential relationship between Berman

and Geffen Records during the years Berman served as Geffen's General Counsel.

The second factor was satisfied because "during the sixteen years that [the

proposed expert] represented [the defendant], he had access to confidential

information that is particularly relevant to the instant case." 395 F. Supp. 2d at 14.

Berman's expert report and testimony are also (directly and indirectly) based on

confidential information he obtained while serving as Geffen Records' attorney. As

in *Grioli*, moreover, the confidential information on which Berman bases his

opinion "involve[s] some of the very same issues as are present in this case" (e.g.,

the terms of "masters licensed" provisions). *Id.*

The court concluded that the third element was satisfied, because the

proposed expert was not a "testimonial expert who [was] being deprived of his

livelihood." *Id.* at 15. The same is true of Berman. (*See generally* LeMoine Decl.,

Ex. P (Berman Exp. Rep.) (Berman has outside consulting opportunities and can

continue to testify as an expert in other cases, that do not present a conflict of

interest).) For the reasons articulated in *Grioli*, therefore, Berman's expert report

and testimony are inadmissible.

It makes no difference that Berman's former client, Geffen Records, is not

itself a named defendant in this action. UMG Recordings succeeded to all of Geffen

Records' rights when Geffen was merged into UMG. (Ostroff Decl. ¶ 5 at 2.) As

Geffen Records' former top lawyer, Berman owes both Geffen Records *and* UMG

Recordings—the company into which Geffen Records has been merged—a

continuing duty of loyalty. *Cf. Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* 798

F. Supp. 612 (C.D. Cal. 1992) (disqualifying attorneys who had previously

represented parent corporation from representing plaintiffs against subsidiary);

*Teradyne, Inc. v. Hewlett-Packard Co.,* No. C-91-0344 MHP ENE, 1991 WL

239940 (N.D. Cal. June 6, 1991) (disqualifying from opposing parent corporation in

**DEFENDANTS' MOTION *IN LIMINE*
NO. 2 TO EXCLUDE OPINION OF
EXPERT DAVID BERMAN**

1  patent litigation firm that represented wholly owned subsidiary); *Gould, Inc. v.*

2  *Mitsui Min. & Smelting Co.,* 738 F. Supp. 1121 (N.D. Ohio 1990) (holding that

3  counsel for parent corporation had a conflict in action against defendant corporation

4  because counsel also represented a subsidiary of defendant corporation).

5  **III.    <u>CONCLUSION</u>**

6          For the reasons discussed above, Defendants respectfully request that the

7  Court exclude the expert report and testimony of David Berman at any trial on this

8  matter.

9

10  DATED:   December 19, 2008              MUNGER, TOLLES & OLSON LLP

11

12                                      By:__*/s/ Glenn D. Pomerantz*_____
                                           Glenn D. Pomerantz

13                                      Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION *IN LIMINE*
NO. 2 TO EXCLUDE OPINION OF
EXPERT DAVID BERMAN**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................... 1

II.    ARGUMENT ......................................................................... 2

       A.    Plaintiffs Cannot Meet Their Burden of Demonstrating That
             Berman's Testimony Satisfies the Requirements Of FRE 702 ............. 3

       B.    Berman Is Prohibited From Offering Expert Testimony In This
             Matter Because Of His Contractual And Ethical Duties ...................... 6

             1.    Berman's Employment and Termination Agreements With
                   Geffen Bar Him From Giving Expert Testimony Here.............. 6

             2.    Berman's Expert Testimony Also Violates His Ethical
                   Duties To Geffen (And Now UMG) As Its Attorney............... 10

III.   CONCLUSION ........................................................................ 12

# TABLE OF AUTHORITIES

**Page**

<u>Federal Cases</u>

Adams v. Teck Cominco Alaska, Inc.,
   399 F. Supp. 2d 1031 (D. Alaska 2005)............................................5

Baxter Diagnostics, Inc. v. AVL Scientific Corp.,
   798 F. Supp. 612 (C.D. Cal. 1992)..................................................11

Daubert v. Merrell Dow Pharms., Inc.,
   43 F.3d 1311 (9th Cir. 1995)......................................................2, 3

Energy Oils, Inc. v. Montana Power Co.,
   626 F.2d 731 (9th Cir. 1980)........................................................4

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993) ...................................................................2

Gould, Inc. v. Mitsui Min. & Smelting Co.,
   738 F. Supp. 1121 (N.D. Ohio 1990)..............................................12

GPF Waikiki Galleria, LLC v. DFS Group, L.P.,
   No. 07-00293 DAE-LEK, 2007 WL 3195089 (D. Hawai'i Oct.
   30, 2007).................................................................................5

Grant v. Bristol-Myers Squibb,
   97 F. Supp. 2d 986 (D. Ariz. 2000)................................................3

Grioli v. Delta International Machinery Corp.,
   395 F. Supp. 2d 11 (E.D.N.Y. 2005)..........................................10, 11

Highland Capital Mgmt., L.P. v. Schneider,
   379 F. Supp. 2d 461..................................................................5

In re International Rectifier Securities Litigation,
   No. CV91-3357-RMT (BQRX), 1997 WL 529600 (C.D. Cal.
   March 31, 1997) .......................................................................6

Ji v. Bose Corp.,
   538 F. Supp. 2d 354 (D. Mass. 2008) .............................................5

Lust v. Merrell Dow Pharmaceuticals, Inc.,
   89 F.3d 594 (9th Cir. 1996).........................................................3

Marvin Lumber & Cedar Co. v. Norton Co.,
   113 F.R.D. 588 (D. Minn. 1986)................................................9, 10

Marx & Co., Inc. v. Diners' Club Inc.,
   550 F.2d 505 (2d Cir. 1977).........................................................5

DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO
EXCLUDE OPINION OF PUTATIVE EXPERT
DAVID BERMAN

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

Montefiore Medical Center v. American Protection Ins. Co., No.
    00Civ.3235LTSMHD, 2003 WL 21108232 (SDNY May 14,

4

    2003)............................................................................................................. 5

5

Accord Stencel v. The Fairchild Corp.,
    174 F. Supp. 2d 1082 (C.D. Cal. 2001)......................................................... 10

6

Teradyne, Inc. v. Hewlett-Packard Co.,

7

    No. C-91-0344 MHP ENE, 1991 WL 239940 (N.D. Cal. June 6,
    1991)............................................................................................................. 11

8

State Cases

9

Commercial Standard Title Co., Inc. v. Superior Court,

10

    92 Cal. App. 3d 934 (1979)............................................................................ 10

11

Fost v. Superior Court,
    80 Cal. App. 4th 724 (2000)........................................................................... 10

12

Federal Rules

13

Federal Rule of Evidence 702  ............................................................................. 2, 3

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28