1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3      HONORABLE PHILIP S. GUTIERREZ, JUDGE PRESIDING

4  F.B.T. PRODUCTIONS, LLC,        )
                                  )
5                             )
                                  )
6                 Plaintiffs,  )
                                  )
7                             )
                                  )
8        Vs.              )  No. CV 07-3314-PSG
                                  )
9                             )
                                  )
10  AFTERMATH RECORDS, ET AL.,     )
                                  )
11                            )
                                )
12                Defendant.  )
                                )
13  _____  )

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17          *FINAL PRETRIAL CONFERENCE*

18          LOS ANGELES, CALIFORNIA

19        MONDAY, JANUARY 26, 2009

20  _____

21

22        MIRIAM V. BAIRD, CSR 11893
       OFFICIAL U.S. DISTRICT COURT REPORTER
23      255 EAST TEMPLE STREET, # 181-K
        LOS ANGELES, CALIFORNIA 90012
24         (213) 894-2853
        MVB11893@aol.com
25

1          **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**        RICHARD BUSCH
     **F.B.T. PRODUCTIONS:**              315 UNION STREET
4                                        NASHVILLE, TN 37201
                                         - and -
5                                        GLASER, WEIL, FINK, JACOBS
                                         & SHAPIRO, LLP
6                                        BY:  MARK L. BLOCK
                                         10250 CONSTELLATION
7                                        BOULEVARD
                                         NINETEENTH FLOOR
8                                        LOS ANGELES, CALIFORNIA
                                         90067
9

10

11

12

13   **IN BEHALF OF THE DEFENDANT,**       MUNGER, TOLLES & OLSON, LLP
     **AFTERMATH RECORDS, ET AL.:**        BY:  GLENN D. POMERANTZ
14                                             KELLY KLAUS
                                               MELINDA LEMOINE
15                                       355 SOUTH GRAND AVENUE
                                         THIRTY-FIFTH FLOOR
16                                       LOS ANGELES, CALIFORNIA
                                         90071
17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 26, 2009; 1430

2                              ---

3

4          THE CLERK:  Calling CV 07-3314-PSG.  FBT

5   Productions, LLC vs. Aftermath Records.

6          Counsel, please state your appearance for the

7   record.

8          MR. BUSCH:  Richard Busch on behalf of plaintiffs,

9   Your Honor.

10         THE COURT:  Good afternoon.

11         MR. BLOCK:  Good afternoon, Your Honor, Mark Block

12  on behalf of plaintiffs.

13         MR. POMERANTZ:  Good afternoon, Your Honor,

14  Glenn Pomerantz on behalf of the defendants, with me is

15  Melinda LeMoine and Kelly Klaus.

16         THE COURT:  Good afternoon.  I reviewed the

17  documents that have been filed in preparation for the

18  pretrial conference.  I had several questions with regard to

19  getting the matter ready for trial.

20         First, with regard to the joint witness list that

21  was filed, I'm concerned about the number of witnesses and

22  the time allocations that were given to the witnesses.  For

23  example, the plaintiff just on direct identified basically

24  nine and a half days of testimony just on direct.  The

25  defense identified four and a half days.  Then in the -- I

```
 1    believe in the pretrial conference order or statements,

 2    plaintiff provided an estimate of ten days; the defendants'

 3    is six to eight days.

 4          From the plaintiffs' side, why are the estimates so

 5    high?  Talk to me about your time estimate.

 6          MR. BUSCH:  Your Honor, thank you.  The reason is

 7    because we have approximately 200 of these digital download

 8    agreements that are in evidence or that will be in evidence,

 9    which are at the crux of the case.  We are trying to work

10    with the defendants to reach some stipulations that would,

11    perhaps, avoid the need to question witnesses at length about

12    these various agreements, but absent agreements and

13    stipulations, we wanted to ensure that we had sufficient time

14    to be able to go through these agreements.

15          THE COURT:  How different are the 200 agreements?

16          MR. BUSCH:  They are not that different.  That's

17    the whole purpose of my attempt to obtain some agreement on

18    this.  We are continuing to have those discussions, but there

19    are some differences, but they are -- I've read every single

20    one of them.  They are not that different.

21          So if we're able to reach stipulations, that would

22    cut down significantly on examination times.

23          THE COURT:  Mr. Pomerantz?

24          MR. POMERANTZ:  Your Honor, I don't believe the

25    time estimates have anything to do with those agreements.
```

1    The agreements -- we've been waiting for a stipulation from

2    Mr. Busch.  He had told us he would give us one a few weeks

3    ago.  We have not even seen one, not even a draft.  When we

4    see it, we will look at it.  We don't want to waste the

5    Court's time or jurors' time on those agreements.  So we will

6    look at that.

7         I think what has happened is as we each have worked

8    on getting ready for trial, at least in our view, the time

9    really gets less and less.  As you really think through your

10   case, you think about what you need to put on to tell the

11   story that needs to be told.  Our estimate at the time of the

12   pretrial conference order was six to eight days.  I think

13   Your Honor has five days written down on the court calender

14   probably from something we filed at the beginning of the

15   case.  I think five or six days is the right amount of time

16   for this trial.

17        THE COURT:  For everything?

18        MR. POMERANTZ:  For everything.

19        I would urge the Court to follow the same approach

20   you followed in the Univision trial, which I had some

21   familiarity with, and just simply give us each a certain

22   number of hours, and let us put on our case within those

23   number of hours.

24        MR. BUSCH:  Your Honor, just one or two things in

25   response to what Mr. Pomerantz said.  First, we have had

| | |
|---|---|
| 1 | several discussions about the stipulation about trying to |
| 2 | work out an agreement on the scope of the examination in |
| 3 | light of the agreements, but every time we've had the |
| 4 | conversation, it became apparent to me that the defendants |
| 5 | would not so stipulate because they were saying there are |
| 6 | differences in the language in these various exhibits.  I |
| 7 | sent several e-mails going through that. |
| 8 | Be that as it may, I do think that the time |
| 9 | estimate of ten days, given the number of agreements -- |
| 10 | THE COURT:  I can tell you right now it ain't going |
| 11 | to happen.  You're not going to get ten days. |
| 12 | Tell me again -- I just ruled on the summary |
| 13 | judgement motions denying both summary judgement motions.  I |
| 14 | think I have a decent understanding about what the facts are |
| 15 | of this case.  You can't tell me, given what the facts are in |
| 16 | this case, it's going to take ten days to try the case.  You |
| 17 | can tell me the facts of this case in about a minute and a |
| 18 | half, couldn't you? |
| 19 | MR. BUSCH:  I can tell you the facts, in essence, |
| 20 | in a minute and a half; no question about it.  But if the |
| 21 | issue in this case revolves around the individual agreements |
| 22 | and whether the individual agreements are licenses, for |
| 23 | example, in Your Honor's summary judgement order, Your Honor |
| 24 | said -- mentioned that the Apple agreements, the few we |
| 25 | submitted, appeared to be licenses.  If we need to make that |

1    same showing with respect to the other agreements, I'm going

2    to want to question the witnesses about those agreements.

3          I have no problem -- I want to reach stipulations

4    or agreements with the defendant where we can get just a

5    subset of these agreements and call them as indicative of the

6    rest.  I think that's fine, which would cut down on this time

7    considerably.

8          THE COURT:  In addition to discussing the facts of

9    the case, outline very briefly for me your damages claim.

10         MR. BUSCH:  Our damages claim is based upon

11   50 percent --

12         THE COURT:  I understand that.  It's slightly over

13   a million dollars; right?

14         MR. BUSCH:  Yes, sir, about a million four.

15         That's only for the past breach.  Of course, if we

16   are successful in this case, we would ask for the declaratory

17   judgment moving forward, which is a very big part of our case

18   as well.

19         THE COURT:  Each contract has an attorney's fees

20   provision?

21         MR. BUSCH:  Yes, sir.

22         THE COURT:  I'm going to -- I'm not going to switch

23   topics, but given what this case is about and the direction

24   it's gone, I get the impression that there is something more

25   to this case than simply about $1.4 million?

1          MR. BUSCH:  Your Honor, it's about the future.

2    Eminem is a big star.  He's going to sell a lot of albums.

3    $1.4 million -- Your Honor has to understand permanent

4    downloads have only been in existence really for a few years.

5    This is about the future.  The moneys that are at issue here,

6    the breaches to these people, to the plaintiffs, this is

7    their pension.  This is the future.

8          THE COURT:  Isn't the future about what other

9    people will negotiate in terms of how they wish to treat

10   these mediums?  Isn't that the future?

11         MR. BUSCH:  The future is also how these defendants

12   have to live with the contracts they've negotiated with these

13   plaintiffs.

14         THE COURT:  With regard to these particular

15   plaintiffs, have there been any settlement discussions,

16   conferences?

17         MR. BUSCH:  We've had a mediation.  We made a

18   settlement offer in that mediation.  We never got a response

19   to it.

20         THE COURT:  Who did you have a mediation with?

21         MR. BUSCH:  Court appointed mediator.

22         THE COURT:  So on a case that involves the future,

23   your clients, their pension rights, that's all the effort

24   that was put into settlement about their futures?

25         MR. BUSCH:  We made a settlement demand.  The

```
 1    defendants never even bothered to respond.  At the

 2    mediation -- we made a demand at the mediation.  There was no

 3    response to the demand.  It wasn't until a day or so ago that

 4    the defendants did anything in response to our settlement

 5    demand.

 6              MR. POMERANTZ:  Your Honor, may I be heard on that

 7    subject?

 8              THE COURT:  You may.

 9              MR. POMERANTZ:  There is an important part of the

10    story that Mr. Busch didn't allude to.

11              Last week we made a settlement offer, which I won't

12    go into.  Mr. Busch and I have had discussions on almost a

13    daily basis since then about the offer that we made.  My

14    understanding is that Mr. Busch's clients who are both

15    sitting here -- two of his clients -- are prepared to discuss

16    the subject with us.  I don't know if it's a counter offer or

17    just the -- whatever, but I do envision there being

18    discussions this week.  I have no way of -- I don't think

19    Mr. Busch has any way of predicting whether they'll be

20    successful or not.

21              THE COURT:  Having just gone through this and

22    settling a case on the tenth day of trial, both of you know

23    this case better than I do.  In terms of the future, the

24    pension rights, and everybody else, you really want to let

25    eight jurors determine the future of these pension rights and
```

1    everything else.  Both of you know your business better than

2    I know it, better than any jurors will know it.  It is beyond

3    me why I'm going to have to rule on 14, 15 motions in limine

4    when you all know everything you need to know about your case

5    weeks ago.

6            It just baffles me why we're waiting until today to

7    get serious about this case in terms of settlement.

8            MR. POMERANTZ:  I don't think from either side's

9    perspective that they've not been seriously looking at the

10   case.  I don't think you said that, Your Honor.  I was -- I

11   do think that sometimes -- and it's unfortunate the way we do

12   things.  It's not until you are starting to put the case all

13   together that you really begin to get the feel for the

14   strengths and weaknesses and business issues that arise from

15   it.

16           That's probably not a good idea.  That's why you

17   have early mediations.  We did have one here, but the truth

18   is that we both learned about the strengths and weaknesses of

19   our cases over the last six months.  I think the parties are

20   trying to assess that and see if there's a deal to be struck.

21   I know that for the most part this will be between the

22   clients.  Mr. Busch and I will be spending the next week

23   getting ready for trial.

24           At the end of the day, at least the way the

25   negotiations are going right now, it's really a business

```
 1    matter, not a legal matter.

 2              THE COURT:  I understand that.  It's seems to me if

 3    it's a business matter, people who know the business -- why

 4    they can't get into a room and figure out how to work out

 5    what is essentially -- when I look at this case, it is a

 6    business deal.  It's not -- it's either a business deal --

 7    it's either a vendetta or a business deal.

 8              MR. POMERANTZ:  I don't think it's a vendetta going

 9    on from either direction here.  I don't think Mr. Busch would

10    think so either.  I do think it's a business matter,

11    Your Honor.  The parties may get in the same room this week.

12              THE COURT:  Then with regard to the witness list,

13    on the first day of trial, if the parties can produce to me a

14    joint witness list.  I can identify every person on the list.

15    If it's been pared down, you can provide me a new joint

16    witness list.  That witness list I'll identify for the jurors

17    to see if they have any relationships with those witnesses.

18              So as it stands now, I'll read the joint witness

19    list submitted.  I expect it will get pared down.  Once the

20    parties have really honed in as to who they're going to call

21    or depositions they're going to read, if you can provide an

22    additional joint witness list at trial that I could read to

23    the jurors.

24              I am going to make an allocation of time based on

25    my work on the summary judgement and review of the list.
```

1    Each side will be given ten hours to present their case.

2    Opening statements will be limited to one hour a side.

3              Moving on to the joint exhibit list.

4    Mr. Pomerantz, when I reviewed, this may be addressed in -- I

5    apologize for the delay on the motions in limine, but with

6    regard to 38 pages of objections to exhibits, are these

7    things that will be covered in the motions in limine and will

8    go away once the rulings have been made or --

9              MR. POMERANTZ:  No, Your Honor.  I actually think

10   that there's only probably a handful of the exhibits that are

11   really the subject of the in limine motions.  That is the bad

12   news.  The good news is we've been having a lot of

13   discussions about eliminating a lot of those objections.  I

14   would expect that later this week we would be submitting a

15   revised joint witness list that simply eliminates --

16   hopefully, two things.  Eliminates objections and eliminates

17   exhibits.  We would hope to do both before the trial.

18             THE COURT:  With regard to the amended exhibit list

19   that is going to be filed, if the parties can create an

20   additional column.  In that column, for example, if

21   the objection is relevance, if the non-objecting party can

22   briefly in a sentence or two tell me why that document is

23   relevant.  Sort of the short answer to the objecting party so

24   that I have a cheat sheet here as I go through the exhibits.

25             MR. POMERANTZ:  Can we submit that like -- when

 1   would you like that submitted?

 2          THE COURT:  At the very end we'll go through and

 3   come up with a -- I'll make a list and go through and sort

 4   out a reasonable time.

 5          MR. POMERANTZ:  Can I ask one clarifying question

 6   about what you said about the ten hours, is that for all

 7   examination, whether it is direct, cross, redirect?

 8          THE COURT:  That's all.

 9          MR. POMERANTZ:  Thank you.

10          THE COURT:  Pursuant to my court order, if they

11   haven't already, there were some filings today that I just

12   saw that I haven't had a chance to review.  The joint

13   statement of the case, is that in the works as well?

14          MR. POMERANTZ:  Yes, Your Honor.  We've been

15   working with Mr. Busch to try to come up with one that we can

16   both agree on.  Because there was a deadline, and we didn't

17   yet have an agreement, we sent Your Honor two versions of it.

18   That's another thing we intend to work on this week and

19   resolve hopefully between the two of us.

20          The other thing that got filed this week -- I'm

21   sorry, filed today was a 6th in limine motion by Mr. Busch.

22   We would like to have an opportunity to respond to that.  I

23   don't -- we were hoping that we could file our response this

24   Thursday with the Court's permission.

25          THE COURT:  When were the dual versions of the

1    joint statement of the case submitted?

2            MR. BUSCH:  Friday.

3            THE COURT:  Okay.  Friday.  I'll probably get it

4    this afternoon.

5            MS. LEMOINE:  You should get it by Friday morning.

6            THE COURT:  Okay.

7            With regard to the 6th motion in limine, it appears

8    the motion is not timely.  Mr. Busch, why is it being filed

9    on the 26th?

10           MR. BUSCH:  Your Honor, after the motion in limine

11   deadline was -- let me back up for one second if I could.  We

12   had received financial information from the defendants after

13   the -- I had been requesting updated financial information

14   for months.  After the close of discovery and after the

15   motion in limine deadline, they supplied us with updates

16   with -- which carved out several or two different albums from

17   the financial information that they previously supplied us.

18           We had gone back and forth with them about that.

19   Ultimately, were unable to resolve the issue, and we were

20   required to file this document.  We had discussed with

21   opposing counsel that the reason that this motion needed to

22   be filed was based upon this late production.  They agreed

23   that while we were trying to work this out, they would not

24   claim that the filing was late as a result.

25           The issues revolves around a position they took in

```
 1    litigation which they've now changed.  We believe they're

 2    estopped from making this argument at trial as a result of

 3    their change in positions, as well as positions they've taken

 4    with the Court in connection with motions to compel.

 5            THE COURT:  With regard to this new motion in

 6    limine, Mr. Pomerantz, why were the documents produced so

 7    late to require such a late filing of a motion in limine?

 8            MR. POMERANTZ:  That wasn't the issue.  That's not

 9    the way we would certainly describe it, Your Honor.  What --

10    the issue here is which recordings are covered by the

11    agreements that they expressly sued on.  We have a contract

12    that says you have to give notice before you can claim

13    breach.  They gave us a notice.  It said, you have breached

14    Paragraphs 4 and 5 of the agreements -- of these two

15    agreements.

16            They then filed a complaint in -- which says

17    exactly the same thing, these are their claims.  The issue

18    raised in this in limine motion is that they are seeking

19    damages in their damage study for recordings not covered by

20    these agreements and have no -- are not affected by the

21    royalty provisions that Your Honor knows we're now

22    interpreting.  Is it sold -- is it a record sold through

23    normal retail channels or a master's license.  Those are the

24    two royalty provisions.  They don't apply at all to the

25    recordings that they have added to their damage claims.
```

1      We haven't taken any inconsistent postion in this

2   case.  We'll spell that out in the opposition.  We have given

3   them revenue reports for what they asked for way beyond the

4   recordings that are covered by the two contracts, because

5   that is what they asked for.

6      THE COURT:  What is your position with regard to

7   the timeliness of the filing?

8      MR. POMERANTZ:  We think it's untimely, although I

9   want to be on the record clear, Mr. Busch and I have had

10   conversations over the course of the last week on this

11   subject.  They've been productive.  We haven't resolved it,

12   but they've been productive.  I was not claiming that he

13   should have filed it a week ago.  That's not it.

14      We've been trying to work it out to prevent this

15   motion from being filed.  That doesn't explain why they

16   didn't raise it four weeks ago or whenever the in limine

17   deadlines occurred.  I would not take them to task.  I do not

18   object to the fact they didn't file it a week ago, but it

19   would have been untimely a week ago, as well.

20      Your Honor, we would intend to put that in our

21   opposing papers.

22      MR. BUSCH:  Your Honor, we spell out -- without

23   getting into the substance, we spell out in the motion that

24   we filed precisely the chronology and precisely the attempts

25   we made to get this information and the fact that it was not

```
1    supplied until a certain date, as well as responding to what
2    Mr. Pomerantz said about the merits of the new claim or the
3    new defense they have raised.  So it's all in our papers,
4    Your Honor.  I need not belabor the point now, but it is all
5    in our papers.
6              THE COURT:  I'll address that opposition in a
7    moment.
8              The next category with regard to deposition
9    testimony to be used at trial.  Have the parties come close
10   to preparing a designation for the Court as to what will be
11   used?  Any objections to what is being used?
12             MR. BUSCH:  We have, Your Honor.  We have gone back
13   and forth and we have highlighted and prepared, I believe,
14   what the Court will receive as far as the Court's local rules
15   on the deposition testimony.
16             MR. POMERANTZ:  Your Honor, the one thing we
17   haven't done, as I'm sure Your Honor would like us to do, is
18   we've each objected to portions of the other party's
19   designations.  What we haven't had time to do is sit down
20   with each other and see if we can work out any of those
21   objections so that Your Honor doesn't have to work them out.
22             I assume Your Honor would like us to try to
23   eliminate some of those.  We haven't had a chance to sit down
24   with each other.  We've completed the process of the
25   designations, counter designations --
```

1          THE COURT:  I'm assuming it's going to be an

2    amended one right before trial.  Hopefully, you'll work out

3    your objections.

4          Either by joint document or joint letter, spell out

5    for me some type of timing so that I don't find out that

6    morning that you're going to introduce deposition testimony.

7    Just so I have looked at it a day or two or a week before to

8    figure out the rulings on the deposition so you're ready to

9    go on that particular day.

10          MR. POMERANTZ:  That would be fine, Your Honor.

11    Thank you.

12          THE COURT:  The parties both submitted proposed

13    voir dire questions.  I'm going to let you know which ones

14    I'm going to ask.  Some I didn't ask because I didn't think

15    they related to cause.  Others I'm not going to ask from your

16    list because they're covered in my standard voir dire.  The

17    third list they were just repetitive.  So I just picked one

18    side's.  Starting with defendant's proposed -- many of these

19    were duplicative in plaintiffs.  I think they satisfy both

20    parties.

21          The Court will ask the jurors questions one through

22    five.  Seven through 11, also 12 and 13.  From the

23    plaintiffs' list, I'm going to ask question number four.

24    Question number seven.  I'm going to ask the second portion

25    of that question and then follow up on that question.  23,

1   24, and then those will be the questions that I ask that the

2   parties have submitted.

3          With regard to the joint jury instructions that

4   were filed, I'm going to -- the preliminary instructions, I

5   will read them before opening statement.  Those were

6   identified in your joints as 1, 3, 4, 5, 6, 7, 8, 9, 10, 11,

7   12, 13, 14, 15, and 15-A.

8          With regard to opening statement, I don't want to

9   see any surprises.  If there's -- if you intend to use any

10  PowerPoints or charts or graphs, I expect that they'll be

11  exchanged before you arrive, and that the only thing that I

12  need to know about is if there's an objection to one the

13  PowerPoints, that needs to be brought to my attention sooner

14  rather than later.  I'm expecting that the parties exchange

15  at some point all of their items they intend to use at

16  opening.  The other side can notify me or -- if they can't

17  work them out, any objection.

18          MR. BUSCH:  We did on Saturday, Your Honor.

19          THE COURT:  All right.

20          MR. POMERANTZ:  Any graphs or demonstratives have

21  been exchanged.

22          One question I have, Your Honor, to the extent that

23  either side wants to use deposition testimony in the opening,

24  it would seem to me if there's been an objection to that

25  deposition testimony, well, maybe we should disclose to each

```
 1   other what deposition testimony we'll be using so that to the

 2   extent the party has an objection used in the opening, we can

 3   raise it with Your Honor before the opening.

 4            THE COURT:  I expect the party presenting it will

 5   have a good-faith belief that portion is coming in.

 6            MR. POMERANTZ:  Correct.

 7            THE COURT:  For whatever reason there's

 8   disagreement, then I can address that.

 9            MR. POMERANTZ:  Thank you.

10            THE COURT:  Taking a look at the proposed final

11   pretrial conference order, starting with the first footnote,

12   again, this relates to identification of the parties to the

13   jurors.  There's a reference in footnote one with regard to

14   the potential dismissal of some defendants and mentioning

15   Aftermath.  What is the status of that footnote?

16            MR. BUSCH:  Currently, Your Honor, we have not

17   agreed to dismiss those other defendants.  They are joint

18   venture partners of Aftermath.  We believe for various

19   reasons they belong in the case.  At this point we have not

20   agreed to dismiss those defendants.

21            MR. POMERANTZ:  Your Honor, as I explained to

22   Mr. Busch, I believe the contracts are clear that the royalty

23   payment obligation is Aftermath's.  They're the party to the

24   contract that has the obligation to pay the royalties.  The

25   fact that the other three defendants have ownership interest
```

1    in Aftermath, and that Aftermath is a joint venture among

2    those parties, doesn't mean they are the ones who have the

3    direct obligation to pay the royalties to the plaintiffs.

4            So I asked him if he would dismiss those three.  If

5    he was worried that Aftermath wouldn't pay up, I would

6    certainly commit that those three would stand behind the

7    obligations of Aftermath.

8            We have not yet resolved it.  I'm not sure we're

9    going to ask Your Honor at this point to dismiss them, but

10   I'm going to continue to try to cajole Mr. Busch to try to

11   reach the right answer.

12           THE COURT:  All right.

13           I do have, at least from my perspective, some bad

14   news for the parties.  In the short time that I've been doing

15   this here, I haven't had any problems in getting out a jury

16   trial because of a criminal case.  I've never had to continue

17   or trail or do anything on a case because I wasn't available.

18           Tomorrow, surprisingly, I'm starting a criminal

19   case that is scheduled to take four or five days.  Then on

20   February 3rd, I still have on my docket a criminal case that

21   is also scheduled to go four or five days.  The criminal

22   cases are quite different than the civil cases.  When the

23   lawyers at the final settlement conference tell me it will

24   go, they usually go.  They rarely ever -- to give you an

25   example, in the last two years, I have tried two or three

1    criminal cases.  So when they tell you they're going to go,

2    you're going to go.  In both cases I'm told they're going.

3         What I would like to do with your case, though,

4    I've looked at my calender and I think we can start on

5    February 17th.  We can work it in right there.

6         Mr. Busch?

7         MR. BUSCH:  That is fine with us, Your Honor.

8    Whatever works for Your Honor is fine with me.

9         MR. POMERANTZ:  That is also fine with us,

10   Your Honor.

11        THE COURT:  That gives me sometime to rule on the

12   motions in limine and giving you a little bit more time

13   before trial.  Then also based on that new date, we'll work

14   through the various items that we've talked about so far.

15   Then that gives the parties sometime to talk, but I hope with

16   the same urgency as if we were going to trial on the 3rd and

17   not the 17th.

18        MR. POMERANTZ:  Your Honor, I know you're keeping a

19   list of the items where you need to set dates for.  There's a

20   few other items I wanted to bring to Your Honor's attention

21   that you may decide to add to that list so that when you're

22   giving us dates, you can consider these as well.

23        THE COURT:  Okay.

24        MR. POMERANTZ:  There is an issue that is

25   separating us right now about whether a particular witness

1    can be compelled to testify live at the trial.

2           His name is Mark Bass.  He's a co-owner of FBT, the

3    plaintiff.  He's a 50 percent owner.  His brother owns the

4    other 50 percent.  We believe, under the rules, he can be

5    compelled to testify live.  We would like to have him testify

6    live.  We're happy to brief that issue if Your Honor wants it

7    briefed.  We can file simultaneous briefs in that we both

8    know the issue.

9           We believe, under Rule 45, he can be compelled to

10   attend trial here.

11          THE COURT:  Any other issues?

12          MR. POMERANTZ:  Yes.  The second issue is the

13   plaintiffs have said that they intend to offer evidence of

14   objections that we have made to discovery requests.  We

15   believe that our objections to discovery requests can't be

16   used in evidence for a bunch of reasons.  We end up with this

17   whole satellite dispute about why we objected.  If that comes

18   in, we'll do the same to them.  We think the whole thing

19   should be off limits.  That's another issue which we would

20   like to brief if Your Honor wants it briefed.

21          The third is that there was a jury instruction that

22   the plaintiffs just submitted in the last three days beyond

23   the time frame of the jury instructions exchange.  It goes to

24   the heart of the case, which is what is a license and what is

25   a sale.

1        We don't think it's a matter of law under the

2    copyright law.  We think it's a matter of contract;

3    therefore, the intent of the parties.  I think that is what

4    Your Honor basically said in your summary judgement ruling.

5    We think it's an entirely improper instruction both based on

6    the timing of it, as well as the substance of what is being

7    requested.  We've not yet submitted an opposition to that

8    instruction.  If Your Honor would like us to do so, we'd be

9    happy to submit an opposition to that instruction.

10        One other thing I was told we were supposed to

11   request by Wendy was the use of the rooms out here in -- just

12   to keep things clean in here.  If Your Honor wouldn't mind, I

13   think both sides would appreciate each of us using one of the

14   rooms out here to keep things orderly in the courtroom.

15   That's all I have on my list, Your Honor.

16        THE COURT:  Mr. Busch, anything to bring to my

17   attention?

18        MR. BUSCH:  First, Your Honor, I would ask that

19   Your Honor potentially reconsider or at least allow the

20   parties a few more hours than the ten hours per side.  It's

21   going to be very difficult given the number of issues and

22   witnesses and deposition testimony that we have to get it

23   done in ten hours.  It's going to be very difficult.

24        THE COURT:  I just finished a case where we gave

25   25 hours a side.  I'm convinced in the middle of the trial

1       the poor jurors -- that case could have been brought in 20.

2       By the 10th or 11th hour, we knew the case.  Everybody in the

3       room knew the case.  This was about $122 million.  It

4       involved a contract dispute over 20 years.

5              That experience convinced me more than ever with

6       regard to strict time limits that lawyers can present their

7       cases within the time limits, and do it in a way that doesn't

8       violate their due process rights.  I started off by eight

9       hours.  Those were my notes, and I went up to ten.  That's

10      where I'm ending.

11             MR. BUSCH:  Okay.

12             Your Honor, with respect to the digital download

13      agreements that are at the heart of this case, the defendants

14      have sent me an e-mail today saying they are withdrawing

15      their relevance objections to those, which will help.  But I

16      would just want to ask Your Honor about the procedure for

17      pre-admitting those exhibits into evidence so that we don't

18      have to spend time on doing that at trial.  If we can -- I

19      think we're going to resolve virtually all of the exhibit

20      issues, and, perhaps, we can pre-admit those into evidence.

21             THE COURT:  You can do it by stipulation.  They can

22      be deemed admitted from the moment that we start.  My court

23      order provides that if there's not an objection made, that

24      objection is waived.  Every once in a while there comes up an

25      issue with foundation as it relates to examining the witness

```
 1    as to a particular document.  I am assuming that if there is
 2    no objection, and everybody has a good faith that it is
 3    coming in, that there is no reason why there couldn't be a
 4    stipulation at the outset.  If the parties can agree that one
 5    through 100 are admitted, I'll admit them right there, and
 6    you'll be ready to go.
 7              MR. BUSCH:  On a couple points that Mr. Pomerantz
 8    raised.  I have one or two myself on top of that.
 9              On the jury instruction issue, Your Honor, there
10    are two issues -- primary issues in this case.  The
11    defendants' argument in this case is essentially that the
12    uses that are governed by the master license provision are a
13    certain type, and that, therefore, the issue of whether it is
14    a license or not is irrelevant because even if it's a
15    license, they're now saying, although this changed from the
16    beginning of their argument, that it doesn't apply.
17              The jurors are going to be required to answer two
18    questions, we believe, in order to resolve this case.  The
19    first question is going to be whether these agreements are
20    licenses or not.  Whether if they are licenses, whether the
21    master license provision does apply.  Therefore, based upon
22    Your Honor's summary judgement ruling, we felt like the
23    jurors need to have instruction in order to answer the
24    question -- in order to resolve the issue before them -- some
25    factors that they should consider in deciding whether or not
```

these licenses -- these agreements are licenses or not.

It seems to us to be a mixed question of fact and law.  The decisions that we've read, the Augusto case and others do resolve the case on summary judgement.  It may be at the close of the case, we'll ask Your Honor for a ruling that they are licenses so that issue doesn't have to go to the jury.

THE COURT:  I'm not as familiar as I want to be right now with the motions in limine.  Isn't this also addressed in one of the motions in limine, also depending on how I rule on that motion in limine whether or not what third parties call this license?  Doesn't that impact how I view the jury instruction, too?

MR. BUSCH:  I don't think whether the defendants or whether they made admissions that these are licenses or not affects the jury instruction.  Our view of it is that these are licenses; therefore, they fall within -- by the clear language, they fall within the master license provision.  The Court need go no further.

My only point is this:  If the Court doesn't rule as a matter of law that these are licenses, and the jury is asked to consider that question whether they are licenses or not, then the jury needs some facts to be able to make that determination.  We submitted to Your Honor, I believe, with our contentions of fact and law a proposed or -- our trial

 1    brief, one or the other, a proposed jury instruction on those

 2    lines.

 3              THE COURT:  Okay.

 4              MR. BUSCH:  The other thing, Your Honor, that we

 5    have -- if we need to submit that separately, we can, but it

 6    was, I believe, submitted in the e-mail that I sent to

 7    Mr. Pomerantz requesting the jury instruction, the text of it

 8    was submitted.  We can submit it separately, if Your Honor

 9    wants us to do it.

10              THE COURT:  All right.

11              MR. BUSCH:  The other thing, Your Honor, that I

12    wanted to ask is just a procedural question.  If we're

13    showing videotaped testimony of depositions and it gets to an

14    exhibit that is not pre-admitted into evidence, do we have to

15    stop the video?

16              THE COURT:  No.  What I expect the night before is

17    you'll tell me, we have a disagreement about one or two

18    exhibits that will be used during the deposition testimony.

19    I can make the ruling on the exhibits, but, hopefully, with

20    more time than that.  Your video people are going to need

21    some more time than that.

22              Depending on the ruling, the big screen will come

23    down.  If you would like, if the exhibit is going to be

24    admitted or we have it admitted before the depo starts, you

25    can have a separate screen showing the exhibit.  I expect

| | |
|---|---|
| 1 | those to be brought to my attention beforehand.  The sooner |
| 2 | the better because that helps your technical people working |
| 3 | out how to get it done. |
| 4 | MR. BUSCH:  The other question is a matter of |
| 5 | protocol.  I assume once the exhibit is in evidence, we don't |
| 6 | have to ask permission to publish, we can just put it on the |
| 7 | screen. |
| 8 | THE COURT:  Once it is admitted, you can publish. |
| 9 | MR. BUSCH:  Thank you, Your Honor. |
| 10 | MR. POMERANTZ:  Couple things, Your Honor.  First, |
| 11 | you mentioned, I think, your experience in the Univision |
| 12 | case.  I was talking to a some of the lawyers there.  I must |
| 13 | apologize for some of the deposition transcripts that |
| 14 | Your Honor had to read.  I was sitting across the table from |
| 15 | Mr. Grossman for many, many hours.  I'm sorry you had to read |
| 16 | those transcripts. |
| 17 | On the jury instruction, with respect to license |
| 18 | and sale, it is really, really wrong in this case to issue |
| 19 | that instruction.  We'd like the opportunity to brief it. |
| 20 | It's really important to the case.  The case they're relying |
| 21 | on has nothing to do with contract dispute like the one we're |
| 22 | dealing with here.  The word "license" doesn't appear in a |
| 23 | vacuum.  The word "license" doesn't say as defined by the |
| 24 | copyright law.  It's in a sentence of the contract that the |
| 25 | parties negotiated and signed. |

1          We think, like any other contract provision, you

2     don't tell the jurors what facts they're supposed to consider

3     to interpret that clause.  You simply give the basic

4     instructions regarding contract interpretation, and then let

5     the parties do their thing -- the jurors do their thing.

6          I think here they really are trying to get an

7     advantage on the issue by re-characterizing it in a way that

8     is just not right in a contract case.  Given that we now have

9     a little bit more time, we would appreciate the opportunity

10    to submit a short brief in response to that instruction.

11         THE COURT:  Okay.

12         Mr. Busch, just two questions on the two issues

13    that Mr. Pomerantz made the first go-around.

14         First, how, committed are you to the idea of

15    showing the jurors objections to discovery requests?  Is that

16    an issue?

17         MR. BUSCH:  There is a distinction between an

18    objection and an answer.  I think there's a real issue about

19    whether the statements that were made are, in fact, an

20    objection or an answer.

21         THE COURT:  Can you give me an example?

22         MR. BUSCH:  Yeah.  Within their objection they

23    might say, the one that comes to mind, I don't have it

24    verbatim, Your Honor, but we asked for cost information, for

25    example.  And the defendants said in response that they

1    object to providing the information.  There was a statement

2    that said the issue of cost is not relevant to this issue;

3    there's no dispute between the parties about what can or

4    cannot be deducted, something along those lines.  A statement

5    saying there's no dispute.

6          So to me, the question about whether that is an

7    objection or not, or whether they're making a statement that

8    they view the issue as being not relevant because there is no

9    dispute seems to me to be a mixed question about whether that

10   is, in fact, an objection.

11         THE COURT:  Are you predominantly talking about

12   written discovery?

13         MR. BUSCH:  Interrogatory response, Your Honor.

14         THE COURT:  Somebody from the company or

15   partnership signs off on a verification.

16         MR. BUSCH:  I'm not sure there was a verification.

17   It was an interrogatory response, though, to a document

18   request and to an interrogatory.

19         THE COURT:  If there's not a verification -- let's

20   say there's two requests and both are objected, no documents

21   furnished, clearly, in that case, how could that be -- it's

22   the lawyer's objections not an answer of a party.

23         MR. BUSCH:  There's a judicial admission issue

24   there.  If somebody makes a statement in a pleading in court

25   that is submitted as part of the case, the question is

1    whether that's a judicial admission or not.

2              THE COURT:  The second issue as to Mr. Bass as a

3    principal, what is your position on that?

4              MR. BUSCH:  If the defendants brief it, there's no

5    motion to compel Mr. Bass right now, but with respect to once

6    they file it --

7              THE COURT:  Has he been served?

8              MR. BUSCH:  He's not been served with a subpoena,

9    no, he's not.

10             THE COURT:  All right.

11             MR. BUSCH:  If they serve him with a subpoena, our

12   understanding is there has to be a personal service of a

13   subpoena for Rule 45 to even apply.  There has been no

14   personal service of a trial subpoena.  There are other

15   personal issues with Mr. Bass that we'd be happy to brief.

16   I'd rather not say in open court.  There are personal issues

17   of Mr. Bass as well.

18             THE COURT:  I'm not on top of the motion in limine

19   as I should be at this point, wasn't that motion in limine

20   number one?

21             MR. BUSCH:  Yes, sir.

22             THE COURT:  Okay.

23             MR. BUSCH:  It's a significant issue.  We will

24   respond to whatever they file explaining the significant

25   problems that are involved.

1              THE COURT:  Mr. Pomerantz, on Mr. Bass?

2              MR. POMERANTZ:  He's not an easy man to serve, but

3    we will do it between now and February 17th.  We have tried

4    to serve by serving Mr. Busch.  Mr. Busch has accepted

5    service for Mr. Martin and Mr. Jeff Bass, who are here, but

6    he has refused to accept service for Mr. Mark Bass even

7    though he is the other 50 percent owner.

8              So we are doing our best, and under the

9    circumstances, we will -- I do believe we will serve him.

10   That will tee up the issue then.  I think the law is pretty

11   clear that he, as the principal of the party, can be

12   compelled to show up.

13             MR. BUSCH:  May I say one thing about that,

14   Your Honor, to put this to bed.

15             The defendants know full well about Mr. Bass's

16   problems.  They deposed him.  They went out to Detroit.  They

17   conducted a deposition of him.  They have his testimony.

18   None of the testimony that they cite in their trial brief as

19   being relevant to his testimony.  They didn't ask him any

20   questions about it, or he said he had no knowledge about it.

21             This is nothing more than gamesmanship because they

22   know the problems he has.  They're trying to create problems

23   here.  We'll lay that out in our brief.

24             I do want to say one last thing in response to what

25   Mr. Pomerantz said about the jury instruction.  We would

1    welcome an opportunity to brief the reason why that jury

2    instruction is, in fact, appropriate as well.

3              THE COURT:  Mr. Pomerantz?

4              MR. POMERANTZ:  One second, Your Honor.

5              THE COURT:  I know you're not playing games.

6              MR. POMERANTZ:  We're not.  I do think just like

7    Mr. Busch wouldn't like it if I said sorry, you only get to

8    question these two witnesses because I like them better than

9    any of my other witnesses.  I don't think he gets to say, you

10   get these two witnesses, and say, sorry, you don't get the

11   others.  We think Mr. Mark Bass does have relevant testimony,

12   and we would like to put him on the stand and have the jury

13   assess his credibility.

14             THE COURT:  One of the things -- I'll set

15   schedules -- and say something upfront about what the parties

16   are going to file.

17             One of the concerns I got about the trial date

18   moving to February 17th.  I just thought how many more

19   pleadings would be generated in the two weeks that were going

20   to come up.  This is not an opportunity to reopen issues that

21   should have been addressed before.  So we're going to deal

22   with them now.  I don't expect any -- you've had two years

23   about to get to this point.  I don't want to see any more

24   motions in limine or other issues that we haven't addressed

25   today.  This is the time and the place.  We're going to end

1    it now, and then I'll set a briefing schedule.   I don't

2    expect to see any ex-partes or motion in limine or emergency

3    requests or anything else because I commit to you that I will

4    read every slip of paper that you file.   I can't do that if

5    you're -- I'm trying to make a schedule.   I do have other

6    cases.   I just can't do it if people are dropping paper on me

7    two days before trial, one day before trial.   I just can't do

8    it.

9           February 10th parties are to submit the amended

10    joint witness list that can be read to the jurors.   If it's

11    the same, just tell me it's the same for whatever reason.

12    The amended joint exhibit list, February 10th, as well.

13           Opposition to Motion in Limine Number 6,

14    February 3rd; reply February 10th.

15           February 13th, as close as you can get the final

16    deposition designations along with either a joint stipulation

17    or two letter briefs about the order in which you intend to

18    use those depositions so that I can have a sense as to which

19    ones I need to get to first.   Then I expect that I'll have

20    the depositions by then as well so I can start working on

21    them on the 13th.

22           In the event that Mr. Bass is served, simultaneous

23    briefs on the issue.   If there's going to be an objection as

24    to whether or not he can be compelled, February 10th.

25           With regard to the introduction of objections to

1    discovery requests, I would expect that would be defendant's

2    next in order in terms of the motions in limine.  That is to

3    be filed by the 3rd; opposition by the 10th.

4         Next with regard to the jury instruction that has

5    been submitted, opposition to the jury instruction on the

6    3rd; any reply on the 10th.

7         Both parties have the Court's permission to use the

8    rooms -- the ante-rooms to the courtroom during the trial.

9         Anything else I missed in terms of deadlines?

10        MR. POMERANTZ:  Your Honor, just a couple.  On the

11   February 3rd, February 10th dates for our, I guess, motion on

12   their use of discovery objections --

13        THE COURT:  Right.

14        MR. POMERANTZ:  -- from what Mr. Busch said today,

15   I don't think it's entirely clear to us precisely which

16   portions of the discovery responses that we have offered he

17   wants to offer into evidence.  He has things on his exhibit

18   list.  Those have many different things in them.

19        I would ask that Mr. Busch provide us with a

20   specific entry sometime reasonably before February 3rd so

21   that we can address those specific entries in our brief that

22   is due on February 3rd.

23        THE COURT:  Can you do that, Mr. Busch, by the next

24   couple of days.  We're here on the 26th.  Can you do that by

25   the 28th and 29th as to what specifically you have in mind?

```
 1              MR. BUSCH:  Yes, Your Honor.  In fact, I believe
 2    the defendants know.  We cited some of it already in one of
 3    our motion in limine responses that related to one of the
 4    experts the defendants were trying to exclude.  We cited it.
 5    I believe they know it.  I have no problem confirming that
 6    with them.
 7              THE COURT:  By the close of business January 28th.
 8              MR. BUSCH:  That's fine.
 9              THE COURT:  Couple days.
10              Anything else?  Any other questions before we
11    adjourn until the 17th?  All right.  Is there any
12    mechanism -- now it's a business deal.  It's not going to
13    help for you to hire a mediator or anyone else to do this.
14    Is there a mechanism in place that the parties will have in
15    mind in terms that they're going to meet and not come out for
16    three days and call their lawyers when they have an agreement
17    to work out?
18              MR. POMERANTZ:  The mechanism is when we leave this
19    courtroom, we're getting in the elevator together.  We're
20    going to the lounge downstairs.  Mr. Martin, Mr. Busch,
21    Mr. Bass -- I don't think Mr. Busch knows about this yet.  My
22    client and myself will talk about where we are and where the
23    next steps are.
24              MR. BUSCH:  That's fine with us.  My clients are
25    here.  They traveled out here.  They were planning on staying
```

UNITED STATES DISTRICT COURT

1    for the week.  They are planning to be at trial starting next

2    week.  So I assume that if the defense is serious about

3    wanting to do something, we're here.  We're always willing to

4    talk and listen.

5            THE COURT:  Thank you.

6            (Whereupon proceedings were concluded at 1545)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25