1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE PHILIP S. GUTIERREZ, JUDGE PRESIDING

4   F.B.T. PRODUCTIONS, LLC,            )
                                        )
5                                       )
                                        )
6                    Plaintiffs,        )
                                        )
7                                       )
                                        )
8         Vs.                           )   No. CV 07-3314-PSG
                                        )
9                                       )
                                        )
10  AFTERMATH RECORDS, ET AL.,          )
                                        )
11                                      )
                                        )
12                   Defendant.         )
                                        )
13  _____   )

14

15

16         REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              LOS ANGELES, CALIFORNIA

18              MONDAY, MARCH 2, 2009

19  _____

20

21           MIRIAM V. BAIRD, CSR 11893
         OFFICIAL U.S. DISTRICT COURT REPORTER
22          255 EAST TEMPLE STREET, # 181-K
            LOS ANGELES, CALIFORNIA 90012
23                (213) 894-2853
                 MVB11893@aol.com
24

25

1                              **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**      RICHARD BUSCH
     **F.B.T. PRODUCTIONS:**              - and -
4                                         Mark Guilford
                                          315 UNION STREET
5                                         NASHVILLE, TN 37201

6

7

8

9
     **IN BEHALF OF THE DEFENDANT,**      MUNGER, TOLLES & OLSON, LLP
10   **AFTERMATH RECORDS, ET AL.:**       BY:  GLENN D. POMERANTZ
                                               KELLY KLAUS
11                                             MELINDA LEMOINE
                                          355 SOUTH GRAND AVENUE
12                                        THIRTY-FIFTH FLOOR
                                          LOS ANGELES, CALIFORNIA
13                                        90071

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, MARCH 2, 2009; 0900

 2                                   ---

 3

 4              THE CLERK:  CV 07-3314-PSG.  F.B.T. Productions,

 5     LLC, versus Aftermath Records, et al.

 6              Counsel, please state your appearances.

 7              MR. BUSCH:  Richard Busch and Mark Guilford for the

 8     plaintiffs, Your Honor.

 9              THE COURT:  Good morning.

10              MR. POMERANTZ:  Glenn Pomerantz, Kelly Klaus, and

11     Mindy Lemoine for the defendants, Your Honor.

12              THE COURT:  Good morning.

13              I wanted to first start off by setting the jury

14     instructions.

15              One of the issues to be addressed first, though,

16     is -- I'm assuming, Mr. Busch, that you want the summary

17     charts marked as an exhibit and move them into evidence;

18     correct?

19              MR. BUSCH:  Yes, sir.

20              THE COURT:  Mr. Pomerantz, you may be heard on that

21     issue.  Specifically, why shouldn't they be admitted under

22     Rule 1006?

23              MR. POMERANTZ:  Your Honor, I believe that the

24     summary charts -- at least the way they were presented was in

25     the form of two columns, conditional downloads and permanent
```

1    downloads, and they were offered in connection with that

2    chart.  What they do is they extract out provisions -- that

3    there's two ways in which I believe that the summary charts

4    are misleading, and it would be misleading to present them to

5    the jury in that fashion.

6          First, they only summarize a portion of the

7    agreements that were produced, and there's no evidence in the

8    record that they fairly summarized the remaining agreements.

9          But, more importantly, they don't present to the

10   jury all of the relevant factors that one would want to

11   consider in comparing conditional download agreements to

12   permanent download agreements; in particular, that you

13   permanently own one, and you are only borrowing or renting

14   the other, number one.

15         And, number two, that a permanent download, you can

16   go out and buy just that, just the Eminem record in permanent

17   download form; whereas the conditional download, you can't do

18   that.  You have to pay for an entire subscription.

19         Now, I realize that those arguments are things that

20   I have brought out on cross and I will continue to bring out

21   on cross and on closing.  But it's a -- different than

22   putting a binder in front of the jury that purports to

23   represent the material terms of a whole bunch of agreements

24   and doesn't fairly represent some of the other terms that are

25   very, very important in those agreements.

1           I'm sorry.  Can I have one moment?

2           Mr. Klaus has reminded me, Your Honor, that in

3    the portion of these binders that go to mobile agreements,

4    Mr. Busch has combined provisions from ring tone agreements

5    and ring back agreements, and Mr. Busch himself has brought

6    out in testimony the difference between a ring tone

7    agreement and a ring -- I'm sorry.  A ring tone and a ring

8    back.  And so to combine those would also create something

9    that would be misleading to the jury.

10           THE COURT:  Mr. Busch?

11           MR. BUSCH:  I'll address Mr. Pomerantz's first

12    comments first, and I'll just go in order.

13           As to the first comments, the fact that permanent

14    downloads and conditional downloads as far as the end user

15    are concerned is -- there are differences is irrelevant.  The

16    question is the agreements between the -- between universal

17    and the digital download and conditional download services

18    and whether they are licenses or not.

19           Secondly, Mr. Pomerantz was free to, and is free

20    to, cross-examine or go over any terms in the agreements with

21    Mr. Kenswil.  He could've done that or prepared his own

22    charts.  We think that these provisions are a summary of

23    relevant provisions taken straight from the agreements that

24    are marked as what the agreements are and will assist the

25    jury in making a determination about whether the provisions

1    in there are relevant to the determination of whether they

2    are licenses or not.

3            The defendants -- as far as the last comment that

4    Mr. Pomerantz made about the combination of ring tone and

5    ring back, I'm not sure what he's getting at.  There are

6    several agreements where they combine -- the defendants have

7    combined different services into one, which I think is also

8    relevant to show that there is no difference in the terms.

9    They're combining ring tone and ring back agreements.  And

10   they're all marked; they are all numbered.  The exhibits are

11   all identified.  And they are a summary of the terms that are

12   in the agreements.  There's -- there was no changes to it.

13   It was cut out straight from the agreements themselves.

14           THE COURT:  All right.  The summary charts will be

15   marked as an exhibit and admitted.

16           MR. BUSCH:  Thank you, Your Honor.

17           THE COURT:  With regard to the jury instructions,

18   I've read the arguments presented.  These are the Court's

19   rulings.

20           Starting with the defendants' proposed --

21   defendants' proposed disputed jury instructions -- and I'm

22   going to need help from one of the parties.  I won't have a

23   judicial assistant for the next three days.  So what I would

24   like to do is assign to one of the parties a final -- to do

25   the final set, clean set, that reflects the Court's rulings

1    to be presented -- to be read and presented to the jury.

2    Then we can make the copies once we have them.

3              Starting with Defendants' 4A, that will be given.

4              It does not appear that 10A is applicable.  That

5    will not be given.

6              19A will not be given.

7              25 will be given.

8              26 will be given; however, 26 needs to be amended

9    to reflect the appropriate exhibits.

10             29 will be given.

11             33A will be given.

12             Mr. Pomerantz, is 33B -- is -- I have a question

13    about that.  It's not necessary, is it?  34B?

14             MR. KLAUS:  Your Honor, I believe that 34B relates

15    to the giving of notice.  And our view, as stated in the

16    papers, was that so long as it is clear that the first cause

17    of action is limited to master tones and permanent downloads

18    and that the second cause of action is limited to the -- what

19    we've been calling the $159,133 claim, it would not need to

20    be given.

21             THE COURT:  Is there any -- when I read before the

22    weekend -- I didn't sense any ambiguity that that's what this

23    case was about.  I -- we -- there wasn't -- there may have

24    been some question before we got to this point, but now that

25    we've been through trial I didn't see any ambiguity about

 1   that.

 2          MR. BUSCH:  Just master tones, ring tones, what --

 3   hi-fi tones, whatever they are referred to, it's all the same

 4   thing.  I think we had that understanding.  As long as that's

 5   our understanding, that's correct.

 6          MR. KLAUS:  Yes.  With respect to the first cause

 7   of action, yes.  Hi-fi tones, ring tones, download --

 8   whatever the downloads are over the cell phone is -- is fine.

 9   And then just on the second cause of action that it was

10   limited to the $159,000 claim.

11          MR. BUSCH:  Yes.  The other issues in the audit are

12   not part of this lawsuit, just the $159,000 question.

13          THE COURT:  Given that understanding, then it's

14   unnecessary, then; correct?

15          MR. KLAUS:  Yes.  It's not necessary to give the

16   instruction.

17          THE COURT:  All right.  35 will be given.

18          36 will be given.

19          37A, not given.

20          37B, not given.

21          39, given.

22          40, given.

23          41, given.

24          42, given.

25          43, not given.

1          With regard to plaintiffs' requested instructions

2     based on the Court's ruling, 21 will be given.

3          25, 27, 29, 30, 33, 34, not given.

4          With regard to 34A, Mr. Busch, is there really

5     evidence to support a contract of adhesion on that point?

6     You may be heard.

7          MR. BUSCH:  Under the 1998 agreement, I think the

8     evidence is that it was done in four days.  It was done by

9     Mr. Paterno on his form.  There's no evidence that the

10    defendants -- that the plaintiffs had anything to do with the

11    form that was drafted or any substantive changes other than

12    some royalty negotiations.  Under those circumstances, I

13    think that there is a jury question about the bargaining

14    position of the parties in connection with that agreement.

15         THE COURT:  And also the plaintiffs are represented

16    by counsel, and it seems like the defendants are more

17    concerned about losing Eminem than anything else.  And they

18    seem to be throwing money at the situation.  Whether -- you

19    know, if you accept Mr. Bass's testimony about that offer, it

20    may or may not be disputed.

21         And then also, there was some testimony about for a

22    first-time deal, Eminem getting higher royalties than he

23    would've otherwise gotten, advances that he would have

24    otherwise gotten; that doesn't seem to suggest adhesion.

25         MR. BUSCH:  The only thing that I would say is that

```
 1    was an attempt to make -- there was no other record label.
 2    The testimony is there what was no other record label
 3    competing for Eminem at that time.  Yes, there was a concern
 4    by the defendants that he was an up-and-comer and somebody
 5    might pop up to obtain him.  But I think that the issue is
 6    there was no one competing at the time, and they kept him --
 7    they kept him there.  The testimony was they kept him there
 8    for a few days, got it done in, you know, ten times shorter
 9    time.  The difference in the lawyers, the lawyer in New York
10    was fresh out of law school.  I don't think there was any
11    testimony that there was substantive changes to terms.  There
12    is the money issue; that is correct.
13            THE COURT:  But even -- the argument -- because you
14    make that -- but I think I read in opening maybe, you made it
15    pretty strongly, here's a kid out of law school who's
16    befriended Eminem at some point earlier in his -- in his
17    life, but it turns out that the kid from law school was
18    pretty good.  I mean, he's developed in the business.  He's
19    still his manager.
20            MR. BUSCH:  Now, that's true, but at the time --
21    I understand Your Honor's point.  I think there's enough
22    evidence to let the jury make the decision on that as far as
23    the interpretation of the agreement against the defendant.
24            THE COURT:  All right.  Mr. Klaus, Mr. Pomerantz,
25    on 34A?
```

1          MR. KLAUS:  Yes, Your Honor.  On the contract of

2    adhesion point, Exhibit 5A is in evidence which shows an

3    extensive markup by Mr. Rosenberg.  There is -- as Mr. Jeff

4    Bass testified, the plaintiffs had, at their option, another

5    attorney besides Mr. Rosenberg, Mr. Howard Hertz, who is a

6    longtime representative of Mr. Martin.

7          This was not the case of just a young artist holed

8    up in a hotel room.  The -- Aftermath was negotiating the

9    agreement with a record company, F.B.T., Joel Martin.  They

10   had counsel of choice.  There's no evidence that there was

11   any overpowering or anything that was done with a -- with

12   a take-it-or-leave-it-type proposal.  There's no evidence

13   that F.B.T. was in any position other than to negotiate the

14   agreement and could've walked away.  I mean, I think there

15   would be error to give a contract of adhesion instruction

16   because there's no evidence to support it.

17         MR. BUSCH:  Can I just add one last thing on this

18   point, Your Honor?

19         THE COURT:  Certainly.

20         MR. BUSCH:  The jury instruction that we proposed

21   suggests -- or the law is that the jury can consider the

22   circumstances surrounding the making of the contract, and I

23   think the circumstances surrounding it have been clear about

24   who was in power and who was in control.  And the -- the rush

25   to get this done -- the relative bargaining strength of the

1   parties -- again, Eminem at that time had no other record

2   label competing for his services, and Interscope was

3   Interscope.  Who drafted the contract, whether it was drafted

4   by Mr. Paterno, whether the contract was a standardized form,

5   Mr. Paterno said it was.

6          And then it goes on -- or whether -- and then --

7   although the last part is whether the contract was negotiable

8   or whether the subscribing party only had the opportunity to

9   adhere to the contact or reject it, the law is that a

10  contract of adhesion may be found even where certain

11  provisions of a contract are negotiable.  And yes, we do not

12  dispute that there were royalty provisions that were

13  negotiable, but for the most part it was a form that was

14  presented by Mr. Paterno and was essentially -- the relevant

15  terms that are contained in it were the terms that were

16  ultimately accepted; so we think there's enough to go to the

17  jury on this issue.

18          THE COURT:  All right.  I think the argument is a

19  weak one, but I think there is enough to go to the jury.

20          34A will be given.

21          Again, 34B, that's unnecessary, isn't it,

22  Mr. Busch, for the same reasons?

23          MR. BUSCH:  Yes.  That's not necessary.

24          THE COURT:  Not given.

25          35, 37, 38, 39, 40, 41, and 42 will not be given.

```
 1                  43 and 44 will be given.

 2                  With regard to the joints, my assumption is that

 3      we're going to start at Joint Number 2 and continue through

 4      Joint Number 24.

 5                  MR. BUSCH:  Your Honor, did Your Honor say 43 and

 6      44 were in, or --

 7                  THE COURT:  In.  Let me go back and double-check.

 8                  MR. BUSCH:  I apologize.

 9                  THE COURT:  43 and 44 will be given.

10                  MR. BUSCH:  Thank you, Your Honor.

11                  THE COURT:  With regard to the joints, 2 through 24

12      should be given.

13                  I'm wondering whether or not -- well, 16 can be

14      given.  That's deposition in lieu of live testimony; however,

15      they should have -- I should have given them when the

16      testimony was read.  If we give it now, we still have to

17      amend it to add the deposition names.  So that needs to be

18      amended.

19                  17 also needs to be amended with regard to --

20      there's been no evidence of any crime.  So if they believe

21      someone lied under oath on a prior occasion, that needs to

22      be amended.

23                  Is 18 not applicable?  We haven't used

24      interrogatories?

25                  MR. BUSCH:  There is one interrogatory that we are
```

```
 1   going to ask to be admitted.  So I think for now I'd like to

 2   keep it pending Your Honor's ruling on that one --

 3           THE COURT:  All right.  20 will also need to be

 4   amended.  Just reflect that they have been shown as opposed

 5   to they will be shown.

 6           Is 25A not applicable?

 7           MR. BUSCH:  Yeah, we believe 25A is not applicable.

 8           MR. KLAUS:  Yes, Your Honor.  I think we are --

 9   it's our intention to make a motion at the close of the

10   plaintiffs' case but -- and pending -- reserving our rights

11   with respect to that motion, we would include it in the joint

12   set.

13           THE COURT:  All right.  So -- but we -- let's just

14   be nimble on the -- on the couple that we're going to -- you

15   know, either going to delete or add on the fly so that we're

16   ready to go.

17           And then 28, 30, and 31 should be given.

18   Mr. Pomerantz, can we delegate to the defense to come up

19   with a final set in conforming with the Court's rulings?

20           MR. POMERANTZ:  That's fine.

21           THE COURT:  And then those last questions with --

22   the parties indicated they wanted to use a general verdict,

23   and I just wanted to confirm that the general verdict is a

24   general verdict.

25           Is it going to break out the causes of action?
```

 1          MR. POMERANTZ:  Yes, Your Honor.  We -- we're

 2   working on a form which I would hope to share with Mr. Busch

 3   by the end of the day today and hopefully have some joint

 4   proposal to submit to Your Honor tomorrow morning.

 5          THE COURT:  Okay.  And let's talk now about timing.

 6   First --

 7          MR. BUSCH:  Your Honor, can I interrupt one second.

 8          There's two jury instructions that Your Honor has

 9   not addressed yet, the two that we submitted last Thursday.

10          THE COURT:  All right.  Well -- and the ones

11   previous to that.  The two --

12          I've reviewed the requested -- the two supplemental

13   instructions, I believe three.  But the supplemental

14   instructions will not be given.

15          Next, let me apologize for Friday.  I was sick,

16   plain and simple.  But in any event, what's -- I understand

17   that has created more problems than I wanted.  But in any

18   event, what's the status?

19          MR. POMERANTZ:  We're glad that the emergency was

20   nothing more than that, Your Honor.  All of us.

21          Mr. Harleston is our expert, and he was scheduled

22   to testify Friday -- on Friday, and he would've testified on

23   Friday had we gone through that.  His wife is having surgery

24   tomorrow.  It's -- I -- and he asked -- he can't testify

25   tomorrow.  He is available on Wednesday.

1          Where we left off was -- was Mr. Berman, their

2     expert, his cross-examination.  Mr. Harleston had been in

3     court in Thursday for his direct.  And Mr. Harleston's role

4     in this case is to respond to Mr. Berman.  So what we would

5     request is that we not go forward tomorrow because

6     Mr. Harleston is not available to watch Mr. Berman's

7     cross-examination.  I believe we only have probably three

8     witnesses left.  Mr. Berman's -- completion of his testimony,

9     then Mr. Cohen, who is their damages expert, and then

10    Mr. Harleston.  And the only thing that would be left after

11    that would be if we wanted to call anybody else in our case

12    and Your Honor permitted it, to respond to something that

13    they said or if Mr. Busch has a rebuttal witness to -- to

14    offer after we finish putting on our case.

15          So our expectation is that on -- if we had gone

16    forward on Friday, we would have finished all of the

17    witnesses on Friday.  So what we would prefer is to finish

18    all those witnesses on Wednesday so the jury only comes in on

19    Wednesday and doesn't get just a small piece on Tuesday; and

20    we finish on Wednesday and then we close Thursday morning.

21          Is it possible to close Wednesday afternoon?

22    Maybe.  But I'm not 100 percent sure we'd be able to get both

23    closings and the instructions all to the jury plus the

24    witnesses that we have; so I think --

25          THE COURT:  How long do you anticipate with

1    Mr. Berman?

2            MR. POMERANTZ:  More than 30 minutes, probably less

3    than an hour.

4            THE COURT:  Okay.  And then Mr. Harleston?

5            MR. POMERANTZ:  That will be our longest witness.

6    And I would guess he would be on the stand someplace between

7    one -- a little -- one to one and a half hours.

8            THE COURT:  Let's -- while I have you up, let's

9    talk about Plaintiffs' Motion in Limine Number 5 with regard

10   to the rebuttal witnesses.

11           MR. POMERANTZ:  I can pull one of them off.  We

12   asked for two.  One was Steve Berman, and he was going to

13   respond to how downloads are marketed and how they're similar

14   to the way CDs are marketed.  We don't need Mr. Steve Berman

15   because through my cross of Mr. David Berman and

16   Mr. Harleston's testimony, we will accomplish what we need

17   to accomplish.  So we don't request him.

18           THE COURT:  And then Mr. Ciongoli.  My initial

19   comments were -- with regard to the royalty calculation, the

20   plaintiffs were always required -- I mean the language of the

21   contract was -- is clear:  A royalty minus net.

22           And does the fact that the damages expert doesn't

23   consider net, is that really rebuttal?  Wasn't that issue

24   always in the case?

25           MR. POMERANTZ:  Again, Your Honor, I do believe

1    that it's likely that we're not going to need Mr. Ciongoli;

2    that by the time we're through with Mr. Cohen, their damages

3    expert, the point will be clear to the jury, and we won't

4    need another witness.

5            I guess I would just ask that we have the

6    opportunity, if necessary, to come back to Your Honor after

7    Mr. Cohen testifies if we believe there's a particular point

8    that we need to rebut that we haven't, and Your Honor can

9    tell us yes or no at that point in time.

10            THE COURT:  All right.

11            Mr. Busch?

12            MR. BUSCH:  Would you like me to start with the

13    schedule issue?

14            Okay.  On the schedule issue, Your Honor, we

15    figured out -- obviously Mr. Harleston has a family issue.

16    We're not going to obviously insist; so the only issue

17    becomes this:  Whether we come tomorrow and finish David

18    Berman and then finish Gary Cohen and then -- so that would

19    probably take us up to lunch, and then come back in the

20    morning on Wednesday and do Harleston.  And that way -- and

21    the jury can be charged after that, and they can have the

22    case by Wednesday after lunch.  If we --

23            THE COURT:  I'm sorry.  Did you say Wednesday or

24    Thursday?

25            MR. BUSCH:  If we -- if we -- this is how we

```
 1   figured it out.  If we do David Berman -- through the cross
 2   of David Berman tomorrow and do Gary Cohen, direct and cross
 3   tomorrow morning after that --
 4            THE COURT:  I see.
 5            MR. BUSCH:  -- then we're pretty much done with our
 6   case at lunchtime, come back on Thurs- -- on Wednesday
 7   morning and do Harleston in the morning.  The jury can be
 8   charged.  We can have closings, and the jury can have the
 9   case by Wednes- -- early Wednesday afternoon.
10            If we don't do that, then we'll just give up
11   tomorrow, and we'd be here all day Wednesday.  The jury won't
12   get the case until Thursday.
13            And so it strikes me that -- I understand the point
14   about Mr. Harleston watching Mr. Berman, but he was here for
15   his direct.  He heard what he said.  He should know what
16   Mr. Pomerantz is going to ask him on cross-examination or he
17   can see the transcript.  He was at Mr. Berman's deposition
18   also, both depositions.
19            So I think the better course is to go ahead and go
20   Tuesday morning -- go Tuesday morning, get done what we can
21   get done, come back Wednesday morning, do Harleston, and that
22   way the jury can have the case by Wednesday, early afternoon.
23            THE COURT:  Are you certain that the case -- the
24   case -- I'm not certain that the case would get to them with
25   both instruction and closings on Wednesday.
```

1          MR. BUSCH:  Well, if --

2          THE COURT:  And then we still have that Thursday.

3   And then -- obviously, then, two days are better than three.

4          MR. BUSCH:  If we -- if the only witness on

5   Wednesday is Harleston, and given my limited time to be able

6   to cross him, it strikes me that we'll be done with Harleston

7   by -- if he is an hour to an hour and a half, and I have

8   20 minutes left or something like that, unless Your Honor

9   gives me a little more time, we're going to be done with

10  Harleston, you know, late morning.  The jury can be charged

11  by lunch, and we can have closings, you know, after that.

12  It's not a strong position that I have on this one.  It's up

13  to Your Honor, obviously --

14         THE COURT:  I'm just trying to figure out how to --

15  how to inconvenience the -- I don't want to inconvenience the

16  jurors more than I have already.  That's probably the most

17  overriding concern that I have.  And we told them that they'd

18  have the case today -- or tomorrow, rather.  So my preference

19  is that if we can have them here for -- if I can make sure we

20  have them here for two days instead of three, that would be

21  my preference more than anything else.

22         And it just seemed to me that if we waited until

23  Wednesday, we would really for sure use two of the days.

24  They still will have to deliberate, but I'm more worried

25  about it than having Tuesday, coming in Wednesday, and then

```
 1   something goes wrong and we bring them in, begin on Thursday

 2   for instruction and argument.

 3        What are your last thoughts on it?

 4        MR. BUSCH:  My last thoughts are that -- I think

 5   that by our calculation the jury would have the case

 6   Wednesday afternoon on our side, and I know the jury is

 7   the -- is the most important factor.  We have people that are

 8   here from all over the country also, and we would like to try

 9   to wrap this thing up as quickly as possible.

10        THE COURT:  The last thing, too, Ms. Hernandez,

11   I don't know if she shared this with you, but one of the

12   jurors has a function on Thursday too.  And I don't know if

13   it's morning, afternoon, evening.  That was just -- they

14   indicated they had a function.

15        MR. BUSCH:  That really argues, then, I think,

16   Your Honor, in favor of getting done what we can on Tuesday.

17        THE COURT:  Mr. Pomerantz, what's the -- I mean,

18   since he's seen the deposition, what is the -- what's going

19   to be the harm if he's not here for your cross?  And how --

20   when are you getting the dailies anyway, the next day?

21        MR. POMERANTZ:  That evening.

22        MR. BUSCH:  That same day.

23        THE COURT:  So you're getting -- so if he gets the

24   daily --

25        MR. POMERANTZ:  Your Honor, it really hampers the
```

1  effect of presentation.  Mr. Harleston is going to sit there

2  and say yes, I heard Mr. Berman say this, and I disagree for

3  the following reasons.  When he isn't here and the jury knows

4  he's not here to hear the cross, it makes it much more

5  difficult for him to then say I heard what he said because

6  Mr. Berman --

7          THE COURT:  He's not going to -- if he says I read

8  what he said, then --

9          MR. POMERANTZ:  Well, first of all, he would have

10  to then read the transcript on whatever night that would be,

11  Tuesday night, the night of his wife's surgery.  I don't know

12  what that schedule is; so that -- that would be a problem.

13  And I think that it is typical, if not almost uniform, that

14  when you have experts testifying in a case, one watches the

15  other, and then the second one responds to the first.

16          So I hear Your Honor about the concern about the

17  jurors's schedule on Thursday, and it's -- I guess right now

18  none of us know exactly what that means in terms of his or

19  her availability that day.  But I do think that if we follow

20  the course that I have proposed, that as long as that juror

21  is available for half of the day, whichever half on Thursday

22  it is, it will work because we will be able to both finish

23  our closings and charge the jury in a half day.  That will

24  not be a problem.

25          THE COURT:  How much time do you want for closing?

1          MR. POMERANTZ:  I guess I would ask for equal time.

2    And I don't really have a strong feeling.  I would think an

3    hour is what you give us in opening.  I would certainly say

4    it should be no more than that, given the evidence -- you

5    know, the amount of evidence that has come into the case.

6          MR. BUSCH:  An hour would be fine with us, Your

7    Honor.

8          THE COURT:  All right.  So I'll limit it to an

9    hour.

10         MR. POMERANTZ:  Your Honor, could I also ask that

11   since plaintiff gets rebuttal time that their collective time

12   is an hour and --

13         THE COURT:  That's the question I'm asking.  An

14   hour for both arguments?  Or do you want an hour and 15?

15         MR. BUSCH:  An hour 15.

16         THE COURT:  An hour 15, both sides.

17         MR. POMERANTZ:  All right.

18         THE COURT:  All right.

19         MR. BUSCH:  The Mr. Ciongoli issue, we don't think

20   that is rebuttal at all and so --

21         THE COURT:  At this point I agree with you, but

22   let's see how it plays out.

23         MR. BUSCH:  Okay.  Fine.

24         THE COURT:  At this point it's reserved.

25         MR. POMERANTZ:  Your Honor, there are a couple of

```
1    other issues that we don't actually have to take up right
2    now, but we do need to take up, one of them before
3    Mr. Harleston testifies and the other before closing.  And I
4    can identify what the issues are, and then Your Honor can
5    tell us whether you want to hear it now or later.
6             With respect to Mr. Harleston, there was an issue
7    as to whether Mr. Busch should be allowed to inquire about
8    certain testimony that Mr. Harleston gave in front of a panel
9    of the U.S. Senate in which he uses the word "license" in the
10   context of the hearings in that particular matter.  We think
11   it raises the same issue that Your Honor has already
12   addressed by other witnesses to use the word "license"
13   outside the context of the contracts and issues in this case.
14            We would like to have an opportunity to present
15   that issue to Your Honor and have a ruling before
16   Mr. Harleston takes the stand.
17            The other issue is with respect to what
18   demonstratives, if any, can be used -- not if any.  What
19   demonstratives can be used during closing.  And, again,
20   Mr. Busch and I don't have an agreement on that, and we would
21   need to have Your Honor's guidance on that issue as well.
22            THE COURT:  Is there -- is there disagreement as to
23   certain demonstratives?
24            MR. POMERANTZ:  Yeah.  I mean, our -- Mr. Busch has
25   asked to have -- to create wholly new demonstratives at this
```

1    point in the case and use them.  I mean, he hasn't told us

2    what they will be.  But in our view the local rule is there

3    for a purpose, and that is to be able to share exhibits in

4    advance of trial.  We know which ones -- I'm sorry.

5    Demonstratives in advance of trial.  We exchanged at the same

6    time.  And we know what those demonstratives are going to be

7    so that if we want to, for example, use them with a witness

8    and, therefore, elicit the testimony what will better explain

9    what the demonstrative is or is not showing, we can do that.

10          Mr. Busch reads the local rule differently than I

11   do.  It's Local Rule 16-3.  And I believe that when that rule

12   is saying that you should disclose copies of graphic or

13   illustrative material to be shown the trier of fact as

14   illustrating the testimony of a witness, that's the way that

15   the jury hears evidence.  They hear evidence through

16   witnesses, and you introduce exhibits through witnesses.  And

17   so I think what that rule is designed to do is to say that if

18   you want to illustrate any of the evidence that you intend to

19   show to the jury, you should share that 11 days before trial

20   begins.

21          I think right now what -- what plaintiffs are

22   seeking to do is create new demonstratives because they don't

23   like the way the evidence has thus far been presented to the

24   jury, and they want to create something new and something

25   different.  We don't know exactly what that is, but I don't

```
 1   think it's fair to create a wholly new demonstrative at this
 2   point in the case.
 3          THE COURT:  Doesn't 16 -- I mean, does 16-3
 4   contemplate, though, that trials are dynamic and that
 5   things -- things happen during trials to change things?  I
 6   mean, frankly, I've never seen it as an issue.  But, first,
 7   I think the demonstratives at some point need to be shared.
 8          MR. BUSCH:  Your Honor --
 9          THE COURT:  And once they're shared, whether
10   there's an objection to what has been shared, with enough
11   time for the Court to rule.
12          How do you -- how do you interpret 16-3 with the
13   reality that trials are dynamic?
14          MR. POMERANTZ:  As I -- there is a second sentence
15   to the rule which gives the Court discretion.  And as I read
16   what that is designed to do is that there's a presumption in
17   favor of a fair exchange before trial.  If the Court believes
18   that one party fairly has an argument that some demonstrative
19   can be created after this deadline, the Court always has that
20   discretion.
21          THE COURT:  Certainly if a witness makes a
22   confession in the middle of the -- you blow that up.
23          MR. POMERANTZ:  Right.
24          I'm not -- and what I'm saying here is all
25   Mr. Busch has said to me is he wants new demonstratives for
```

1    closing, and I don't think that's the rule here.

2            THE COURT:  Mr. Busch, what's the status of what

3    you are going to present and when can you get it for review

4    so we can see if we have an issue or not?

5            MR. BUSCH:  Okay.  Your Honor -- I think Your Honor

6    hit the nail on the head.  I think the local rule is talking

7    about -- and it's very specific.  It says, "As illustrating

8    the testimony of a witness."  That's so that if you're going

9    to show, when you have your expert up there, a chart and walk

10   him through that or when you're doing your opening statement

11   what you think you're going to show.  That's what that

12   applies to.

13           It can't apply to closing because you don't know

14   what a witness is going to say or what you can argue to the

15   jury until they testify; so there's no way to be able to do

16   something like that.

17           And, also, the defendant -- the arguments.  If we

18   want to respond to arguments, this is the only chance you

19   have to argue in the case.

20           THE COURT:  My only request would be this, and tell

21   me your position about it.  I don't want and you don't want

22   people standing up during your closing argument to object --

23           MR. BUSCH:  Your Honor --

24           THE COURT:  -- and I don't want to rule on the fly.

25           MR. BUSCH:  No, no.

1      Your Honor, I offered Mr. Pomerantz, three or four

2  times this weekend -- I said to him we have no objection to a

3  simultaneous exchange of demonstratives to be shown at

4  closing if he would agree to that; so I absolutely have no

5  objection to that.

6      THE COURT:  Okay.  So, then, Mr. Pomerantz, why

7  can't we exchange this afternoon to see if we really have a

8  problem?

9      MR. POMERANTZ:  I had asked Mr. Busch just to give

10 me a sense of what we're arguing about because what I don't

11 know is whether he's designing an animation cartoon that is

12 going to somehow tell his story in a way that I think is

13 totally objectionable, or whether he is talking about a

14 PowerPoint slide with three words on it.  And so I asked him

15 if I could have some idea before this morning so I wasn't

16 arguing in the dark.  I didn't get it.

17     I think once Your Honor tells us what the schedule

18 of the case is going to be, then I think Mr. Busch and I can

19 probably agree on it.

20     THE COURT:  All right.  Let's do this.  We'll go

21 dark tomorrow.  We'll start again Wednesday at 9:00 o'clock.

22 Simultaneous exchange today by 5:00 o'clock?

23     MR. BUSCH:  Your Honor --

24     THE COURT:  3:00 o'clock?

25     MR. BUSCH:  Your Honor, I think that -- I would

```
 1   rather -- just because of the fact that we would want to
 2   incorporate some things that Mr. Harleston says into the --
 3   into what we're doing, and until there's a close of evidence
 4   you can't do that.
 5            THE COURT:  Well, can't you do everything except
 6   that?
 7            MR. BUSCH:  I could.
 8            THE COURT:  All right.  And it's just you've made
 9   that caveat, and you're going to act in good faith.  And if
10   you have one or two or three to add, based on Harleston, you
11   do -- you present those as soon as you're ready.
12            MR. BUSCH:  Okay.  The only thing is that I think
13   that when they see what we're doing they're going to craft
14   some of their final examinations based on what we've done,
15   and I think that's unfair in a way.  I wanted to exchange
16   this in sufficient time that they could object before the
17   closing or I could object to theirs, but not give either side
18   an advantage to be able to craft their final witnesses or
19   testimony based upon what they see the other side is going to
20   do.
21            THE COURT:  Look, I'll do whatever it takes, but
22   the problem is, okay, assuming we end -- we're going to have
23   delay because we're arguing about closing argument
24   demonstratives, and then we lose another hour, two hours?
25            MR. BUSCH:  Right.
```

1          THE COURT:  I don't know.  Depending on how -- we

2     may lose nothing.  There might not be a problem.  But I don't

3     want to be in a position where I say, okay.  You've heard all

4     of the evidence.  I preinstruct, and then the jury is waiting

5     for an hour or two while we settle demonstratives.

6          MR. BUSCH:  Can we -- can we -- to be frank with

7     Your Honor, you know, one thing we're doing is we're pulling

8     out some -- what we think is key testimony.  And I think that

9     with -- if they see what we think is important key testimony,

10    then they could craft their examination of Harleston to

11    address some of those things, which they might not do if they

12    didn't see what we're thinking along those lines.

13         THE COURT:  Doesn't everybody know what everybody

14    else is thinking in the room today?

15         MR. BUSCH:  Probably.

16         THE COURT:  I mean, you have lived with -- both of

17    you have lived with the case.  I think it's probably played

18    out pretty close to the way you thought it was going to play

19    out.

20         MR. BUSCH:  Whatever Your Honor decides is fine.

21    At least -- at least until Mr. Berman finishes his

22    examination -- until they finish examining Berman, I think

23    that would be fair to wait at least until then to be able to

24    disclose.

25         THE COURT:  All right.  So simultaneous exchange

```
 1    tomorrow at 3:00 o'clock.

 2            MR. BUSCH:  Okay.

 3            THE COURT:  Wednesday, noon.

 4            MR. BUSCH:  Wednesday, noon.

 5            THE COURT:  Wednesday, noon.

 6            MR. BUSCH:  All right.  Thank you, Your Honor.

 7            THE COURT:  All right.

 8            MR. BUSCH:  And then the other thing is on the

 9    Jeff Harleston testimony, it's much broader than that, and we

10    are going to ask for admission of Mr. Harleston's Senate

11    testimony.

12            THE COURT:  I need to see it then.  I think

13    that's --

14            MR. BUSCH:  Yes.

15            THE COURT:  All right.

16            MR. BUSCH:  It is much broader than what

17    Mr. Pomerantz is saying.  The difference is i--

18            THE COURT:  How long is the testimony?

19            MR. BUSCH:  It's two pages.

20            THE COURT:  All right.

21            MR. BUSCH:  The key distinction here is that

22    Mr. Harleston is being offered as an expert and to offer his

23    opinion in this case, and his testimony is directly contrary

24    to his opinion testimony.  It's no different than if you

25    found an article or a book.
```

```
 1              THE COURT:  And if they read those two pages, am I
 2     going to have the appropriate context?
 3              MR. BUSCH:  Yes, sir.
 4              THE COURT:  All right.
 5              MR. BUSCH:  Yes, sir.
 6              THE COURT:  So submit those to me and then we'll --
 7              MR. BUSCH:  I can hand them up right now.
 8              THE COURT:  All right.
 9              THE BUSCH:  Okay.
10              MR. POMERANTZ:  Your Honor, it's Exhibit 129 in
11     your binder.
12              THE COURT:  Oh, I've got it in the binder.
13              MR. POMERANTZ:  Exhibit 129.
14              THE COURT:  129.
15              Thank you.
16              MR. POMERANTZ:  And we would just ask for an
17     opportunity to argue it, you know, sometime I guess during
18     the day on Wednesday before --
19              THE COURT:  We'll have time at the end of the day
20     anyway.
21              MR. POMERANTZ:  Well, it has to be before Harleston
22     testifies.
23              MR. BUSCH:  And I'm going to move it into evidence
24     affirmatively as an admission of a party at the close of my
25     case; so it's not just for impeachment purposes.
```

1          THE COURT:  Why don't -- is there anything -- I'm

2     here all of the time; so I can do it tomorrow, like, at

3     4:00 o'clock in the afternoon.  It doesn't matter to me.

4          MR. BUSCH:  Well, you can show -- I'm around the

5     corner.

6          THE COURT:  All right.  So you're here too.

7          MR. BUSCH:  Yeah.

8          THE COURT:  So -- okay.  So why don't we -- we can

9     do it at 4:00 o'clock tomorrow, raise any other issues that

10    may have popped up.

11         MR. POMERANTZ:  That's fine.

12         And one thing Mr. Busch raised that I just wanted

13    to ask for some clarification on.

14         Your court reporter has been kind enough to send us

15    daily transcripts and so we have the witness's testimony.

16         During closing, can we excerpt, you know, question,

17    answer from the testimony itself that came out during trial

18    and put it up on the screen?  Does Your Honor have any rules

19    as to whether that's permissible or impermissible?

20         THE COURT:  I don't have a rule.

21         MR. BUSCH:  I have no objection.  I mean, we plan

22    on doing the same thing, so....

23         MR. POMERANTZ?  I wasn't planning on doing or not

24    doing it.  I just wanted to have a fair --

25         THE COURT:  Yeah.  You can do it, yeah.  All right.

1          MR. BUSCH:  And just so we complete the -- there is

2     a document that we just obtained from our economic expert

3     that we believe was responsive to a document request -- or

4     several of our document requests not produced by the

5     defendants in this case.  It relates to this "Lose Yourself,"

6     whether it's part of the case -- not -- that should be

7     included in the damages or not.

8          I gave it to Mr. Pomerantz this morning.  We may

9     not have a dispute about whether it can be added to the

10    exhibit list or not.

11         THE COURT:  Let's talk about it at 4:00 o'clock if

12    Mr. Pomerantz just got it.

13         MR. BUSCH:  Okay.

14         MR. POMERANTZ:  When would you like us to get the

15    jury instructions to Your Honor?

16         THE COURT:  Why don't we bring them tomorrow -- or

17    bring them tomorrow at 4:00 o'clock.  As soon as you finish,

18    e-mail them to each other, and then -- so Mr. Busch can look

19    at them to see if they comply with the Court's ruling or

20    whether the amendments are appropriate.

21         And then I can look at them when you get them to

22    me.  If you get them to me earlier -- if you have time to

23    deliver them, that's fine.  If not, just bring them at 4:00,

24    and then I can start looking at them to see my view as to

25    whether they conform.

```
 1              MR. POMERANTZ:  Sure.  That's fine.

 2              And then in terms of going back to the

 3    demonstratives for closing, we will exchange them, if I

 4    recall, noon Wednesday; and then at the end of the day

 5    Wednesday, I take it we'll have to have a discussion with

 6    Your Honor, if either one of us objects to the other.

 7              THE COURT:  Right.

 8              MR. BUSCH:  And can we submit them to Your Honor as

 9    well so that way Your Honor can see them also before -- and

10    that way Your Honor can get an idea about what they are as

11    well.

12              THE COURT:  How voluminous do you think --

13              MR. BUSCH:  Ours are not that voluminous.

14              THE COURT:  Less than 50?

15              MR. BUSCH:  Yeah.

16              MR. POMERANTZ:  Ours will be far less than that.

17    In fact, we may just use the same ones that we have used --

18              THE COURT:  Okay.

19              MR. POMERANTZ:  -- for other cases.

20              THE COURT:  Go ahead and submit it to me.  I can

21    take a quick look at them --

22              MR. POMERANTZ:  Okay.

23              THE COURT:  -- when you have them here.

24              MR. BUSCH:  And then the last thing, Your Honor,

25    we're not getting the under seal daily transcript, and the
```

```
 1    court reporter said without an order of the Court, we cannot

 2    get the portions of the transcript that are being designated

 3    as under seal.  So we would ask an order allowing us to get

 4    those.

 5              THE COURT:  You may have those.  And then you're

 6    subject to the same protective order that was in existence

 7    before.

 8              MR. BUSCH:  Thank you.

 9              MR. POMERANTZ:  All right.

10              THE COURT:  Anything else?

11              MR. BUSCH:  I think that's it.

12              MR. POMERANTZ:  No, Your Honor.

13              THE COURT:  All right.  Thank you.

14              MR. BUSCH:  Thank you.

15              MR. POMERANTZ:  Thank you again.

16              (Proceedings concluded at 9:55 a.m.)

17

18

19

20

21

22

23

24

25
```