1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3        HONORABLE PHILIP S. GUTIERREZ, JUDGE PRESIDING

4   F.B.T. PRODUCTIONS, LLC,          )
                                      )
5                                     )
                                      )
6                      Plaintiffs,    )
                                      )
7                                     )
                                      )
8        Vs.                          )   No. CV 07-3314-PSG
                                      )
9                                     )
                                      )
10  AFTERMATH RECORDS, ET AL.,        )
                                      )
11                                    )
                                      )
12                     Defendants.    )
    _____)
13                                    )

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                   *JURY TRIAL*

18               *DAY 6 A.M. SESSION*

19             LOS ANGELES, CALIFORNIA

20            THURSDAY, MARCH 5, 2009

21  _____

22

23            MIRIAM V. BAIRD, CSR 11893
        OFFICIAL U.S. DISTRICT COURT REPORTER
24         255 EAST TEMPLE STREET, # 181-K
            LOS ANGELES, CALIFORNIA 90012
25                 (213) 894-2853
                  MVB11893@aol.com

1                          **A P P E A R A N C E S**

2

3    **IN BEHALF OF THE PLAINTIFF,**    RICHARD BUSCH
     **F.B.T. PRODUCTIONS:**              - and -
4                                        Mark Guilford
                                         315 UNION STREET
5                                        NASHVILLE, TN 37201

6

7

8

9

     **IN BEHALF OF THE DEFENDANT,**    MUNGER, TOLLES & OLSON, LLP
10   **AFTERMATH RECORDS, ET AL.:**     BY:  GLENN D. POMERANTZ
                                              KELLY KLAUS
11                                            MELINDA LEMOINE
                                         355 SOUTH GRAND AVENUE
12                                       THIRTY-FIFTH FLOOR
                                         LOS ANGELES, CALIFORNIA
13                                       90071

14

15

16

17

18

19

20

21

22

23

24

25

INDEX

WITNESS:                                                    PAGE:


Jeffrey William Harleston, Witness, previously              4
sworn
REDIRECT EXAMINATION RESUMED                                4
RECROSS-EXAMINATION                                         7

                              * * * * *


EXHIBITS:

 none offered

                              * * * * *

```
 1        LOS ANGELES, CALIFORNIA; THURSDAY, MARCH 5, 2009; 0900

 2                            ---

 3

 4            THE COURT:  Good morning.

 5            (Open court - jury present)

 6            THE COURT:  Mr. Harleston, retake the witness

 7    stand.  You're reminded you're still under oath.

 8            THE WITNESS:  Yes.

 9    Jeffrey William Harleston, Witness, previously sworn

10            THE COURT:  You may resume your redirect.

11            MR. POMERANTZ:  Thank you, Your Honor.

12                  REDIRECT EXAMINATION RESUMED

13    MR. POMERANTZ:

14    Q.   Good morning, Mr. Harleston.

15    A.   Good morning.

16    Q.   I want to ask you a few questions about your testimony

17    with the senators.

18            MR. POMERANTZ:  Mr. Nichols, would you put it up on

19    the screen please, Exhibit 129.  And could you pull up the

20    last paragraph that Mr. Busch was questioning Mr. Harleston

21    about.

22    BY MR. POMERANTZ:

23    Q.   Mr. Harleston, do you remember Mr. Busch questioning

24    you yesterday afternoon about the portion of the sentence

25    here that I've highlighted?
```

A.   Yes, I do.

Q.   Okay.  And he didn't ask you about the rest of this sentence.

          Do you recall that?

A.   Yes.

Q.   Let me go to the rest of that sentence.

          MR. POMERANTZ:  Mr. Nichols, could you highlight the rest of the sentence so we have it on the screen.

BY MR. POMERANTZ:

Q.   Now, you see in the rest of the sentence there's a reference there to retail outlets like Wal-Mart?

A.   Yes.

Q.   Why did you mention retail outlets like Wal-Mart in the sentence?

A.   Well, the purpose of that testimony and the purpose of the point I was trying to make in my testimony was that we make our music available to a wide variety of companies to exploit our records in a variety of different ways.  And one example, the Wal-Mart example, is I think there's been a lot of testimony in this case already that we don't license our music to Wal-Mart; however, we -- at least not in this sense of the contracts at issue in this case, but we do make our music available to Wal-Mart as a retail partner, and so that's another -- just another example of how we make our music available.

1  Q.   So when you used the term "license" in this testimony,

2  for example, in this sentence, what did you mean?

3  A.   In the context of my Senate testimony, I used the word

4  "license" in terms of permission, authorization.  Basically

5  that's the -- what I think of as a common kind of vernacular

6  of the term "license."

7  Q.   All right.  Well, let's go back to the contracts at

8  issue here.

9         MR. POMERANTZ:  And, Mr. Nichols, could you put

10  back up 4 (a) and 4(c)(v), both on the screen at the same

11  time, please.

12  BY MR. POMERANTZ:

13  Q.   The bottom provision here, Mr. Harleston, is what we've

14  been referring to as the masters license provision.

15         Do you see that?

16  A.   Yes, I do.

17  Q.   How have people in the music business actually applied

18  this masters license provision?

19  A.   This provision has been used particularly in situations

20  where individuals or entities, companies have licensed our

21  masters or a portion of our master to embody it into their

22  own work, their own property, whether it's a -- you know,

23  a -- we talked about a film or a T.V. show yesterday or a

24  compilation album, something like that.

25  Q.   Now, are you aware of a single instance when this

1    masters license provision has been applied to the sale of an

2    Eminem album or record itself?

3    A.    To the sale of an Eminem album or record?

4    Q.    Yes.

5    A.    No, I do not.

6    Q.    In any configuration whatsoever?

7    A.    Not to my knowledge, no.

8    Q.    Now, why do you think that downloads should be covered

9    by the provision on the top, Paragraph 4 (a), rather than the

10   provision on the bottom, 4(c)(v)?

11   A.    Because the provision on the top -- again, a download is

12   a record, and it's sold through normal retail channels and

13   that's -- that's enough to qualify for the records sold

14   provision.  It's just like a CD.  It's just like a cassette.

15           MR. POMERANTZ:  Your Honor, I don't have any

16   further questions.

17           THE COURT:  Mr. Busch, recross?

18           MR. BUSCH:  Yes.

19           THE COURT:  Mr. Busch, are you going to use any

20   deposition testimony?

21           MR. BUSCH:  No, not deposition testimony.

22           THE COURT:  Okay.  All right.

23                    **RECROSS-EXAMINATION**

24   BY MR. BUSCH:

25   Q.    Mr. Harleston, were you here -- I want to go back to the

1    same provision that Mr. Pomerantz just asked you about.

2              MR. BUSCH:  And the bottom paragraph on the first

3    page, can you pull that up, please?

4    BY MR. BUSCH:

5    Q.   And do you remember Mr. Pomerantz asking you about the

6    second half of that sentence, which talks about licensing of

7    the recordings to different -- various companies?

8    A.   Just a few minutes ago?

9    Q.   Just a few minutes ago.  30 seconds ago.

10   A.   Yes, I do.

11   Q.   A minute ago.

12             And do you recall telling him that Wal-Mart -- that

13   you meant when you said Wal-Mart there, the sale of -- make

14   sure I understand this correctly.  The sale of physical CDs

15   by Universal to Wal-Mart?  Is that what you're saying you

16   meant, and not the licensing of the recordings to Wal-Mart?

17             That's what you said and that's what you meant;

18   right?

19   A.   Yes.

20   Q.   Okay.  Were you here for Mr. Pomerantz's opening

21   statement in this case?

22   A.   No, I was not.

23   Q.   Okay.  Mr. Pomerantz said in his opening statement that

24   for royalty purposes, it doesn't matter whether you buy the

25   Eminem CD through Wal-Mart or you buy the Eminem download

```
 1   through Walmart.com.
 2            Did you know that, that he said that?
 3   A.   I did not know he said that, but --
 4   Q.   It's true; right?
 5   A.   -- I'll take your word for it.
 6   Q.   Walmart.com has a permanent download system, do they
 7   not?
 8   A.   I believe they do.
 9   Q.   Okay.  And that's the issue in this case, whether
10   Universal is licensing its recordings to companies like
11   Walmart.com and iTunes for permanent downloads.
12            You understand that; right?
13   A.   I understand that is an issue in this case, yes.
14   Q.   Okay.  So when you used the word Wal-Mart there, that
15   you licensed your recordings to, among others, Verizon and
16   Wal-Mart, are you saying you meant their physical CDs and not
17   for permanent downloads?
18            Is that your testimony?
19   A.   My testimony is that I used the term retail outlets like
20   Wal-Mart.  And I didn't use the term Walmart.com, which I
21   think, from my understanding, is the entity which would be
22   selling downloads.
23   Q.   Okay.  Yesterday you held up -- I'm sorry.
24            When Universal sells an Eminem CD to Best Buy, what
25   is Universal's manufacturing cost for that CD?
```

```
 1    A.    I'm sorry.  When Universal sells a --
 2    Q.    When Universal manufactures a CD like this --
 3    A.    Yes.
 4    Q.    -- isn't it correct that its per-unit charge for this
 5    CD -- the jewel case, the artwork, everything -- is about
 6    $1.00 to $1.25?
 7              Isn't that right?
 8    A.    It depends upon the artwork.  There's a lot of charges
 9    relating to printing the booklet, depending on the number of
10    pages, the number of colors.  But something -- it's probably
11    in that range --
12    Q.    A dollar?
13    A.    -- unless it's an excessive package.
14    Q.    $1 to $1.25; right?
15    A.    Somewhere in that range.
16    Q.    And so would it be fair to say that if Eminem releases
17    a CD of -- a CD of Eminem like this one, and it sells
18    10 million units, that Universal has manufacturing charges
19    of -- if it's $1 to $1.25, 10 to $12 million that it has to
20    incur in order to press each one of these CDs?
21              Isn't that right?
22    A.    That's correct.
23    Q.    Okay.  Now, do you remember yesterday you looked at the
24    jury and you said, "Why would we pay under one royalty for
25    this record, and under a different royalty when the record is
```

```
 1    on an iPod?  We're wacky, but we're not that wacky"?
 2              Do you remember saying that?
 3    A.    Something to that effect.
 4    Q.    Okay.  If this -- you know that with this iPod and with
 5    the iTunes and download services, a digital file of the
 6    master recording is sent to Apple; correct?
 7    A.    That's correct.
 8    Q.    And so if Universal -- if Universal -- I'm sorry.
 9              If this -- if this song, this album, is then
10    downloaded 10 million times instead of 10 million purchases
11    of this CD, isn't it true that Universal doesn't have those
12    10 to $12 million worth of costs that it would have if it
13    sold 10 million CDs like this one?
14              Isn't that right?
15    A.    There are other costs related to the sale of the digital
16    download.
17    Q.    Mr. Harleston, didn't I ask you in this case whether
18    there were any costs -- whether Universal -- whether a song
19    was downloaded on iTunes one time or a million times or
20    10 million times, and didn't you tell me you didn't know?
21    A.    Probably.
22    Q.    Okay.  And do you know that Mr. Kenswil in this case
23    testified that there are no additional costs whether
24    Universal -- whether a download is downloaded one time or
25    10 million times?
```

1    A.   I don't know what Mr. Kenswil's testimony is, but I'll

2    take your word for it.

3    Q.   Okay.  And when you say Universal has some other costs

4    whether -- when this song is downloaded 10 million times,

5    other than having to pay artist royalties or mechanical

6    royalties -- I'm talking about manufacturing costs -- isn't

7    it correct that Universal has no manufacturing costs

8    associated with that download if it's downloaded 10 million,

9    20 million, or 50 million times?

10              Isn't that right?

11   A.   Not exactly.  I mean, you can't discount the cost of

12   developing the system, which we talked about yesterday, that

13   allows us to be able to download -- to provide files to our

14   digital partners to download.  You can't discount the cost of

15   marketing the product so that the consumer even knows that it

16   is available, which, by the way, when you sell 10 million

17   records, you spend a lot of money in marketing to get to that

18   point.

19              THE COURT:  Mr. Busch, we've been through this.

20   Time is up.

21              Thank you.

22              Anything further, Mr. Pomerantz?

23              MR. POMERANTZ:  No, Your Honor.

24              THE COURT:  Thank you.

25              You may step down.  Thank you.

1           Any additional witnesses for the defense?

2           MR. POMERANTZ:  No, Your Honor.

3           THE COURT:  Anything further for the plaintiff?

4           MR. BUSCH:  No, Your Honor.

5           All right.  Members of the jury, now that you've

6    heard all of the evidence and you will hear the arguments of

7    the attorneys, it is my duty to instruct you on the law of

8    this case.  A copy of these instructions will be sent with

9    you to the jury room when you deliberate.  You must not infer

10   from these instructions or from anything I may say or do as

11   indicating that I have an opinion regarding the evidence or

12   what your verdict should be.

13           It is your duty to find the facts from all of the

14   evidence in the case.  To those facts you will apply the law

15   as I give it to you.  You must follow the law as I give it to

16   you, whether you agree with it or not, and you must not be

17   influenced by any personal likes or dislikes, opinions,

18   prejudices, or sympathy.  That means that you must decide the

19   case solely on the evidence before you.  You will recall that

20   you took an oath to do so.

21           In following my instructions you must follow all of

22   them, not single out some and ignore others.  They are all

23   important.

24           To help you follow the evidence I will give you a

25   brief summary of the position of the parties.

1          The plaintiffs claim first that the defendants

2     failed to pay them under the proper royalty provision for

3     Eminem recordings in the form of permanent downloads and what

4     are commonly known as mastertones.  The plaintiffs claim,

5     second, that the defendants failed to allocate certain costs

6     correctly as between plaintiffs and Eminem, resulting in an

7     underpayment of the plaintiffs' royalties.  The plaintiffs

8     have the burden of proving these claims.

9          The defendants deny those claims and contend that

10    the plaintiffs have been paid under the proper royalty

11    provision for Eminem recordings in the form of permanent

12    downloads and mastertones.  As to the plaintiffs' second

13    claim, the defendants contend that plaintiffs should recover

14    from Eminem any costs plaintiffs claim were allocated

15    incorrectly.

16          The defendants also assert the affirmative defenses

17    of the statute of limitations, waiver, estoppel, set off, and

18    mitigation of the damages.  The plaintiffs deny the

19    defendants' affirmative defenses.

20          When a party has the burden of proof on any claim

21    or affirmative defense by a preponderance of the evidence,

22    it means you must be persuaded by the evidence that the claim

23    or affirmative defense is more probably true than not true.

24          You should base your decision on all of the

25    evidence, regardless of which party presented it.  You should

1  decide the case as to each party separately, unless otherwise

2  stated.  The instructions apply to all parties.

3         The evidence you are to consider in deciding what

4  facts -- what the facts are consist of, one, the sworn

5  testimony of any witness, whether appearing live or by

6  deposition.

7         Two, the exhibits which are received into evidence.

8         And, three, any facts to which the lawyers have

9  agreed.

10         In reaching your verdict, you may consider only the

11  testimony and exhibits received into evidence.  Certain

12  things are not evidence, and you may not consider them in

13  deciding what the facts are.  I will list them for you.

14         One, arguments and statements by lawyers are not

15  evidence.  The lawyers are not witnesses.  When they say --

16  what they say in their opening statements, closing arguments,

17  and at any other time is intended to help you interpret the

18  evidence, but it is not evidence.  If the facts as you

19  remember them differ from the way the lawyers have stated

20  them, your memory of them controls.

21         Two, questions and objections by lawyers are not

22  evidence.  Attorneys have a duty to their clients to object

23  when they believe a question is improper under the Rules of

24  Evidence.  You should not be influenced by the objection or

25  by the Court's ruling on it.

1            Three, the testimony that has been excluded or

2    stricken or that you have been instructed to disregard is not

3    evidence and must not be considered.  In addition, sometimes

4    testimony and exhibits received only for a limited purpose.

5    When I give a limiting instruction, you must follow it.

6            Four, any evidence -- anything you may have seen or

7    heard when the court was not in session is not evidence.  You

8    are to decide the case solely on the evidence received at the

9    trial.

10            Some evidence may be limited -- may be admitted for

11    a limited purpose only.  When I instruct you that an item of

12    evidence has been admitted for a limited purpose, you must

13    consider it only for that limited purpose and for no other.

14            Evidence may be direct or circumstantial.  Direct

15    evidence is direct proof of a fact, such as testimony by

16    witnesses about what that witness personally saw or heard or

17    did.  Circumstantial evidence is proof of one or more facts

18    from which you could find another fact.

19            By way of example, if you wake up in the morning

20    and see that the sidewalk is wet, you may find from that fact

21    that it rained during the night; however, other evidence,

22    such as a turned-on garden hose may provide a different

23    explanation for the presence of the water on the sidewalk.

24    Therefore, before you decide that a fact has been proved by

25    circumstantial evidence, you must consider all of the

1   evidence in light of reason, experience, and common sense.

2          You should consider both kinds of evidence.  The

3   law makes no distinction between the weight to be given to

4   either direct or circumstantial evidence.  It is for you to

5   decide how much weight to give to any evidence.

6          There are Rules of Evidence that control what can

7   be received into evidence.  When a lawyer asked a question or

8   offered an exhibit into evidence and a lawyer on the other

9   side thought it was not permitted by the Rules of Evidence,

10  that lawyer may have objected.  If I overruled the objection,

11  the question may be answered or the exhibit received.

12         If I sustained the objection, the question cannot

13  be answered and the exhibit cannot be received.  Whenever I

14  sustained an objection to a question, you must ignore the

15  question and must not guess what the answer might have the

16  been.

17         Sometimes I may order that evidence be stricken

18  from the record and that you disregard or ignore the

19  evidence.  That means that when you are deciding the case,

20  you must not consider the evidence that I told you to

21  disregard.

22         In deciding the facts of this case, you may have to

23  decide what -- what testimony -- which testimony to believe

24  and which testimony not to believe.  You may believe

25  everything a witness says or part of it or none of it.  Proof

1    of a fact does not necessarily depend on the number of

2    witnesses who testify about it.

3         In considering the testimony of any witness, you

4    may take into account, one, the opportunity and ability of

5    the witness to see or hear or know the things testified to.

6         Two, the witness's memory.

7         Three, the witness's manner while testifying.

8         Four, the witness's interest in the outcome of the

9    case and any bias or prejudice.

10        Five, whether other evidence contradicts the

11   witness's testimony.

12        Six, the reasonableness of the witness's testimony

13   in light of all of the evidence.

14        And, seven, any other factors that bear on

15   believability.

16        The weight of the evidence as to a fact does not

17   necessarily depend on the number of witnesses who testify

18   about it.

19        I will now say a few words about your conduct as

20   jurors.  First, you must not discuss this case with anyone,

21   including members of your family, people involved in the

22   trial, or anyone else.  This includes discussing the case in

23   Internet chat rooms or through Internet blogs, Internet

24   bulletin boards, or e-mails.  Nor are you to allow -- nor are

25   you allowed to permit others to discuss the case with you.

1    If anyone approaches you and tries to talk to you about this

2    case, please let me know about it immediately.

3            Second, do not read or listen to any news stories,

4    articles, radio, television, or online reports about the case

5    or about anyone who has anything to do with it.

6            Third, do not do any research such as consulting

7    dictionaries, searching the Internet, or using other

8    reference materials, and do not make any investigation about

9    the case on your own.

10           Fourth, if you need to communicate with me, simply

11   give a signed note to the bailiff to give to me.

12           And, fifth, do not make up your mind about what the

13   verdict should be until after you have gone to the jury room

14   to decide the case and you and your fellow jurors have

15   discussed the evidence.  Keep an open mind until then.

16           Finally, until this case is given to you for your

17   deliberation and verdict you are not to discuss the case with

18   your fellow jurors.  During deliberations, you will have to

19   make your decision based on what you recall of the evidence.

20   You will not have a transcript of the trial.

21           Whether or not you took notes, you should rely on

22   your own memory of the evidence.  Notes are only to assist

23   your memory.  You should not be overly influenced by your

24   notes or those of your fellow jurors.

25           From time to time during the trial it became

1    necessary for me to talk with the attorneys out of the

2    hearing of the jury, either by having a conference at the

3    bench when the jury was present in the courtroom or by

4    calling a recess.  Please understand that while you were

5    waiting we were working.  The purpose of these conferences is

6    not to keep relevant information from you but to decide how

7    certain evidence is to be treated under the Rules of Evidence

8    and to avoid confusion and error.  Of course we have done

9    what we could to keep the number and length of these

10   conferences to a minimum.  I did not always grant an

11   attorney's request for a conference.  Do not consider my

12   granting or denying a request for a conference as any

13   indication of my opinion of the case or what your verdict

14   should be.

15          Trials proceed in the following way.  First, each

16   side may make an opening statement.  A party is not required

17   to make an opening statement.  An opening statement is not

18   evidence.  It is simply an outline to help you understand

19   what that party expects the evidence will show.

20          Also, because it is often difficult to give you the

21   evidence in the order we would prefer, the opening statement

22   allows you to keep an overview of the case in mind during the

23   presentation of the evidence.

24          Plaintiffs will present their evidence first.

25   Because the parties will call many of the same witnesses,

1  defendants may present some of their evidence during the

2  plaintiffs' case.  Then, when plaintiffs are finished,

3  defendants will present the rest of their evidence.

4          One or both parties may call witness who were

5  employed by or otherwise associated with the other side or

6  whose interests run contrary to those of the party calling

7  the witnesses for some reason.  These witnesses are known as

8  adverse witnesses.  There are tactical reasons that a party

9  may call such a witness.  It is permissible for them to do

10  so, and you should not be confused by the fact that a party,

11  as part of its case-in-chief, called as a witness a person

12  associated with the other side.  You should treat the

13  testimony of these witnesses the same as you would the

14  testimony of any other witnesses.

15          After the evidence is presented, I will instruct

16  you on the law that applies to the case, and the attorneys

17  will make closing arguments.  After that you will go to the

18  jury room to deliberate on your verdict.

19          All parties are equal before the law, and a

20  corporation or partnership is entitled to the same fair and

21  conscientious consideration by you as any party.

22          A deposition is the sworn testimony of a witness

23  taken before trial.  The witness is placed under oath to tell

24  the truth, and the lawyers for each party may ask questions.

25  The questions and answers are recorded.

1        The deposition of Eddie Cue was taken on June 30th,

2    2008.  And the deposition of Ethan Gustav was taken on

3    October 30th, 2008.  You should consider this deposition

4    testimony presented to you in court in lieu of live testimony

5    insofar as possible in the same way as if the witness had

6    been present to testify.

7        The evidence that a witness lied under other on a

8    prior occasion may be considered, along with all other

9    evidence, in deciding whether or not to believe the witness

10   and how much weight to give the testimony of the witness and

11   for no other purpose.

12       Evidence was presented to you in the form of

13   answers of one of the parties to a written interrogatory

14   submitted by the other side.  These answers were given in

15   writing and under oath before the actual trial in response to

16   questions that were submitted in writing under established

17   court procedures.  You should consider the answers, insofar

18   as possible, in the same way as if they were made from the

19   witness stand.

20       Some witnesses, because of education or experience,

21   are permitted to state opinions and reasons for those

22   opinions.  Opinion testimony should be judged just like any

23   other testimony.  You may accept it or reject it and give it

24   as much weight as you think it deserves, considering the

25   witness's education and experience, the reasons given for the

1    opinion, and all the other evidence in this case.

2         People have a legal right not to disclose what they

3    told their lawyers in confidence because the law considers

4    this information privileged.  People may exercise this

5    privilege freely and without fear of penalty.  The Court

6    decides whether an assertion of privilege should be upheld.

7    You should not use the fact that a witness asserted or

8    exercised this privilege to decide whether he or she should

9    be believed.  You must not let it affect this decision --

10   affect any of your decisions in this case.

11        Certain charts and summaries not received in

12   evidence have been shown to you in order to help explain the

13   content of books, records, documents, or other evidence in

14   the case.  They are not, themselves, evidence or proof of any

15   facts.  If they do not correctly reflect the facts or figures

16   shown by the evidence in the case, you should disregard these

17   charts and summaries and determine the facts from the

18   underlying evidence.

19        Certain charts and summaries have been received

20   into evidence to illustrate information brought out in trial.

21   Charts and summaries are only as good as the underlying

22   evidence that supports them.  You should therefore give them

23   only such weight as you think the underlying evidence

24   deserves.

25        When you begin your deliberations you should elect

1    one of your number of the jury as your presiding juror.  That

2    person will preside over your deliberations and speak for you

3    here in court.  You will then discuss the case with your

4    fellow jurors to reach agreement, if you can do so.

5          Your verdict must be unanimous.  Each of you must

6    decide the case for yourself, but should do so only after you

7    have considered all of the evidence, discussed it fully with

8    the other jurors, and listened to the views of your fellow

9    jurors.

10          Do not hesitate to change your opinion if the

11   discussion persuades you that you should.  Do not come to a

12   decision simply because other jurors think it is right.  It

13   is important that you attempt to reach a unanimous verdict,

14   but, of course, only if each of you can do so after having

15   made your own conscientious decision.  Do not change an

16   honest belief about the weight and effect of the evidence

17   simply to reach a verdict.

18          If it becomes necessary during your deliberations

19   to communicate with me, you may send a note through the

20   bailiff signed by your presiding juror or by one or more

21   members of the jury.  No member of the jury should ever

22   attempt to communicate with me except by signed writing.

23   I will communicate with any member of the jury on anything

24   concerning the case only in writing or here in open court.

25          If you send out a question, I will consult with the

1    parties before answering it, which may take some time.  You

2    should continue your deliberations while waiting for the

3    answer to any question.

4         Remember that you are not to tell anyone, including

5    me, how the jury stands numerically or otherwise until after

6    you have reached a unanimous verdict or have been discharged.

7    Do not disclose any vote count in any note to the Court.

8         A verdict form has been prepared for you.  After

9    you have reached a unanimous verdict -- a unanimous agreement

10   on a verdict, your presiding juror will fill in the form that

11   has been given to you, sign and date it, and advise the Court

12   that you are ready to return to the courtroom.

13        Plaintiffs claim that defendants breached the

14   recording agreement by failing to pay them under the proper

15   royalty provisions for Eminem recordings in the form of

16   permanent downloads and mastertones.  Plaintiffs further

17   claim that Aftermath breached the recording agreements by

18   failing to allocate certain costs correctly as between

19   F.B.T., on the one hand, and Eminem on the other hand

20   resulting in the underpayment of royalties to plaintiff.

21        To recover from defendants for breach of contract,

22   plaintiff must prove all of the following as to each of the

23   defendants:

24        That plaintiffs did all or substantially all of the

25   significant things that the recording agreements required

1    them to do or that they are excused from doing those things;

2    that all conditions required by the recording agreements for

3    the defendants' performance had occurred; that defendants

4    failed to do something that the recording agreements required

5    them to do and that defendants were harmed by that failure.

6           The rights and duties of the parties are governed

7    by the recording agreements and their amendments and -- that

8    have been admitted into evidence as Exhibit 5, the March 9th,

9    1998, recording agreement; Exhibit 9, the 2000 Novation;

10   Exhibit 10, the July 2nd, 2003, recording agreement; and

11   Exhibit 17, the 2004 amendment.  All of the recording

12   agreements and amendments which are part of the same

13   transaction must be interpreted together.

14          If there are any provisions in one of these

15   documents limiting, explaining, or otherwise affecting the

16   provisions of another, all of these provisions should be

17   given consideration in determining the agreement of the

18   parties.

19          You should assume that the parties -- you should

20   assume that the parties intended the words in the recording

21   agreements to have their usual and ordinary meaning, unless

22   you decide the parties intended the words to have a special

23   meaning.

24          In interpreting recording agreements, you should

25   assume that the parties intended words used in a technical

1    sense to have the meaning that is usually given to them by

2    people who work in the recording industry, unless you decide

3    that the parties clearly used the words in a different sense.

4         In deciding what the words of the recording

5    agreements meant to the parties, you should consider the

6    whole agreement, not just isolated parts.  You should use

7    each part to help you interpret the others so that all of the

8    parts make sense when taken together.

9         In deciding what the words in the recording

10   agreement meant to the parties, you may consider how the

11   parties acted after the recording agreement was created but

12   before any disagreement between the parties arose.

13        Interpretations of the parties' conduct is not

14   limited to their joint conduct, but may include any

15   unilateral conduct of one party without knowledge of the

16   other party.  However, the unilateral conduct of one party is

17   not conclusive evidence as to the meaning of the recording

18   agreement.

19        A contract must be interpreted to give effect to

20   the agreement of the parties at the time of contracting.  You

21   must determine what the parties agreed to by the words used

22   in the written recording agreements.  What the parties agreed

23   to is based on the words and acts of the parties and not on

24   their thoughts or unstated intentions.

25        If you decide that the plaintiffs have proved their

1    claim against any one of the defendants for breach of the

2    recording agreements, you also must decide how much each

3    defendant must pay in order to reasonably compensate the

4    plaintiffs for the harm caused by the breach.  This

5    compensation is called damages.  The purpose of such damages

6    is to put the plaintiffs in as good of a position as they

7    would have been in if the defendants had performed as

8    promised.

9         To recover damages for any harm, the plaintiffs

10   must prove, one, that the harm was likely to arise in the

11   ordinary course of events from the breach of the contract;

12   or, two, that when the contract was made, the parties could

13   have reasonably foreseen the harm as the probable result of

14   the breach.

15        Plaintiffs must also prove the amount of their

16   damages according to the following Instruction Number 36:

17   Plaintiffs do not have to prove the exact amount of damages.

18   You must not speculate or guess in awarding damages.

19        Plaintiffs claim damages first for the underpayment

20   of royalties from Aftermath's failure to pay them under the

21   proper royalty provision; and, second, for the underpayment

22   of royalties in the amount of 159,332,000 from the

23   misallocation of certain costs between F.B.T. and Eminem.

24        To recover damages for a breach of the recording

25   agreement's obligation to pay money, plaintiffs must prove

1    the amount due under the recording agreements.

2         If plaintiffs prove a breach of the recording

3    agreements as to any defendant and that the breach caused

4    harm, plaintiffs are not entitled to recover damages for harm

5    that defendants prove plaintiffs could have avoided with

6    reasonable efforts or expenditure.

7         You should consider the reasonableness of

8    plaintiffs' efforts in light of the circumstances facing them

9    at the time, including their ability to make the efforts or

10   expenditures without undue risk or hardship.  If plaintiffs

11   made reasonable efforts to avoid harm, then your award should

12   include reasonable amounts that they spent for this purpose.

13        If you conclude that Aftermath was required to

14   account to plaintiffs for permanent downloads and mastertones

15   under the provisions that plaintiffs claim applies, then

16   defendants contend that Aftermath is still not obligated to

17   account to plaintiffs in the manner -- in that manner because

18   plaintiffs gave up any rights to different royalty treatment.

19   This is called a waiver.  To succeed, defendants must both --

20   must prove both of the following by clear and convincing

21   evidence.

22        One, that plaintiffs knew Aftermath was required to

23   apply a particular royalty provision to permanent downloads

24   and mastertones.

25        Two, that plaintiffs freely and knowingly gave up

1    that right to have Aftermath perform this obligation.

2          A waiver may be oral or written, or it may arise

3    from conduct that shows that plaintiffs gave up that right.

4          If defendants prove that plaintiffs gave up that

5    right -- up their right to Aftermath's payment of royalties

6    for permanent downloads and mastertones under Section 4(c)(v)

7    and 5(c)(v) of the recording agreements, then Aftermath was

8    not required to perform the obligation.

9          If you conclude that Aftermath was required to

10   account to plaintiffs for permanent downloads and mastertones

11   under the provision that plaintiffs claims applies, then

12   Aftermath contends that it is still not obligated to account

13   to plaintiffs in the manner because plaintiffs are estopped

14   from demanding different royalty treatment.

15         To succeed, defendants must prove the following by

16   clear and convincing evidence.

17         One, that plaintiffs knew Aftermath was required to

18   apply particular royalty provisions to permanent downloads

19   and mastertones.

20         Two, that plaintiffs freely and knowingly gave up

21   their right to have Aftermath perform this obligation.

22         And, three, that defendants reasonably relied on

23   plaintiffs' knowing conduct.

24         Estoppel may arise by oral or written act, or it

25   may arise from conduct that shows that plaintiffs gave up

1    that right.  If defendants prove that plaintiffs gave up any

2    right to Aftermath's payment of royalties for permanent

3    downloads and mastertones, then Section 4C5 and Section 5C5

4    of the recording agreements and that defendants reasonably

5    relied on their relinquishing that right, then Aftermath was

6    not required to perform this obligation.

7         Defendants claim that any damages that plaintiffs

8    might obtain in this case would be subject to a setoff.  When

9    both parties owe each other money, their demands are

10   satisfied so far as they equal each other.

11        Aftermath has paid plaintiffs certain amounts in

12   royalties already, and plaintiffs are contractually obligated

13   to reimburse Aftermath for any other payments --

14   overpayments.  The amount of setoff against any award of

15   damages includes both, A, what Aftermath proves it has paid

16   plaintiffs in royalties; and, B, any amount that Aftermath

17   proves that the plaintiffs owe Aftermath under the contract,

18   including the difference on any overpayments.

19        The defendants contend that any damages to

20   plaintiffs which occurred prior to the time set by law for

21   plaintiffs' claim should be barred.  To succeed on this

22   defense as to any plaintiffs' claim the defendants must prove

23   that plaintiffs claim harm before May 21st, 2003.  Only

24   damages that occurred before May 21st, 2003, would be barred

25   by the statute of limitations.  Any damages that occurred

 1    after May 21st, 2003, would be recoverable.

 2            If you find that the defendants breached the

 3    contracts and that the breach was committed in a manner such

 4    that it was not reasonably discoverable by plaintiffs until

 5    a future time, the application of the statute of limitations

 6    may be delayed by what is commonly referred to as the

 7    discovery rule.  Under the discovery rule a claim accrues for

 8    purposes of the statute of limitations when the plaintiff

 9    discovers or could have discovered through reasonable

10    diligence the injury and its cause.  Any damages you find

11    that the plaintiffs could not have discovered through

12    reasonable diligence prior to May 21, 2003, are fully

13    recoverable by plaintiffs.

14            Ladies and gentlemen, we're going to take a quick

15    five-minute break to allow counsel to set up for their

16    closing arguments, and we'll bring you back in the courtroom

17    for closing arguments.

18            Again, until that point in time, please still do

19    not discuss the case among yourselves or with anyone else.

20    Don't form or express any opinions about the case until it

21    has been submitted to you.

22            And we'll see you in about five or ten minutes.

23            (Open court - jury not present.)

24            THE COURT:  I'm not sure how the parties want to --

25    in reading the instructions there was one thing I noticed

1    that may have been omitted.

2         When we got to the defenses and we talked about the

3    burden of proof by clear and convincing evidence, we did not

4    have an instruction defining what clear and convincing

5    evidence is.  So I don't know if the parties want to have

6    that instruction added and given or just move on to closing

7    arguments.  But we did define preponderance, but we didn't

8    define clear and convincing -- I don't think so.

9         MR. BUSCH:  Which instruction was that, Your Honor?

10        THE COURT:  I noticed that when I was reading the

11   instructions relating to the affirmative defenses and the

12   burden of proof identified in those instructions was clear

13   and convincing evidence, and we've never defined clear and

14   convincing evidence.

15        We defined preponderance of the evidence, but we

16   never defined clear and convincing.

17        MR. POMERANTZ:  Your Honor, there was also one

18   other -- there was an error in one of the instructions

19   where -- on Instruction 34.  It makes reference to

20   Instruction 36, and I think that was supposed to be 35.  And

21   I don't think there's a need to correct it, but maybe in the

22   version that we actually hand to the jury, based on this.

23   Otherwise, I would just change that to 35.  I think that is

24   what it was meant to refer to.

25        THE COURT:  All right.  Any thoughts on the clear

1    and convincing issue?

2              MR. BUSCH:  I think it should be -- an instruction

3    should be given because it is different than the

4    preponderance of the evidence.

5              THE COURT:  I don't remember if the model --

6    whether the Ninth Circuit model has a clear and convincing.

7    I just don't remember -- or CACI; so you'll make a choice as

8    to which you want to use.

9              Do you have those handy?  I can make them

10   available.

11             MR. BUSCH:  I need to see them.

12             THE COURT:  All right.

13             (Recess taken at 10:00 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$1.00** [1] - 10:6
**$1.25** [3] - 10:6, 10:14, 10:19
**$12** [2] - 10:19, 11:12

**0**

**07-3314-PSG** [1] - 1:8
**0900** [1] - 4:1

**1**

**1** [2] - 10:14, 10:19
**10** [12] - 10:18, 10:19, 11:10, 11:12, 11:13, 11:20, 11:25, 12:4, 12:8, 12:16, 26:10
**10:00** [1] - 34:13
**11893** [1] - 1:23
**129** [1] - 4:19
**159,332,000** [1] - 28:22
**17** [1] - 26:11
**181-K** [1] - 1:24
**1998** [1] - 26:9

**2**

**20** [1] - 12:9
**2000** [1] - 26:9
**2003** [5] - 26:10, 31:23, 31:24, 32:1, 32:12
**2004** [1] - 26:11
**2008** [2] - 22:2, 22:3
**2009** [2] - 1:20, 4:1
**21** [1] - 32:12
**213** [1] - 1:25
**21st** [3] - 31:23, 31:24, 32:1
**255** [1] - 1:24
**2nd** [1] - 26:10

**3**

**30** [1] - 8:9
**30th** [2] - 22:1, 22:3
**315** [1] - 2:4
**34** [1] - 33:19
**35** [2] - 33:20, 33:23
**355** [1] - 2:11
**36** [2] - 28:16, 33:20
**37201** [1] - 2:5

**4**

**4** [4] - 3:3, 3:4, 6:10, 7:9

**4(c)(v** [3] - 6:10, 7:10, 30:6
**4C5** [1] - 31:3

**5**

**5** [3] - 1:20, 4:1, 26:8
**5(c)(v** [1] - 30:7
**50** [1] - 12:9
**5C5** [1] - 31:3

**6**

**6** [1] - 1:18

**7**

**7** [1] - 3:5

**8**

**894-2853** [1] - 1:25

**9**

**9** [1] - 26:9
**90012** [1] - 1:24
**90071** [1] - 2:13
**9th** [1] - 26:8

**A**

**a.m** [1] - 34:13
**A.M** [1] - 1:18
**ability** [2] - 18:4, 29:9
**able** [1] - 12:13
**accept** [1] - 22:23
**according** [2] - 28:16
**account** [5] - 18:4, 29:14, 29:17, 30:10, 30:12
**accrues** [1] - 32:7
**act** [1] - 30:24
**acted** [1] - 27:11
**acts** [1] - 27:23
**actual** [1] - 22:15
**added** [1] - 33:6
**addition** [1] - 16:3
**additional** [2] - 11:23, 13:1
**admitted** [3] - 16:10, 16:12, 26:8
**adverse** [1] - 21:8
**advise** [1] - 25:11
**affect** [2] - 23:9, 23:10
**affecting** [1] - 26:15
**AFTERMATH** [2] - 1:10, 2:10
**Aftermath** [16] - 25:17, 29:13, 29:16,

29:22, 30:1, 30:7, 30:9, 30:12, 30:17, 30:21, 31:5, 31:11, 31:13, 31:15, 31:16, 31:17
**Aftermath's** [3] - 28:20, 30:5, 31:2
**afternoon** [1] - 4:24
**ago** [4] - 8:8, 8:9, 8:11
**agree** [1] - 13:16
**agreed** [3] - 15:9, 27:21, 27:22
**agreement** [11] - 24:4, 25:9, 25:14, 26:9, 26:10, 26:17, 27:6, 27:10, 27:11, 27:18, 27:20
**agreement's** [1] - 28:25
**agreements** [15] - 25:17, 25:25, 26:2, 26:4, 26:7, 26:12, 26:21, 26:24, 27:5, 27:22, 28:2, 29:1, 29:3, 30:7, 31:4
**AL** [2] - 1:10, 2:10
**album** [4] - 6:24, 7:2, 7:3, 11:9
**allocate** [2] - 14:5, 25:18
**allocated** [1] - 14:14
**allow** [2] - 18:24, 32:15
**allowed** [1] - 18:25
**allows** [2] - 12:13, 20:22
**amendment** [1] - 26:11
**amendments** [2] - 26:7, 26:12
**amount** [6] - 28:15, 28:17, 28:22, 29:1, 31:14, 31:16
**amounts** [2] - 29:12, 31:11
**ANGELES** [4] - 1:19, 1:24, 2:12, 4:1
**answer** [2] - 17:15, 25:3
**answered** [2] - 17:11, 17:13
**answering** [1] - 25:1
**answers** [4] - 21:25, 22:13, 22:14, 22:17
**appearing** [1] - 15:5
**Apple** [1] - 11:6
**application** [1] - 32:5
**applied** [2] - 6:17, 7:1

**applies** [3] - 21:16, 29:15, 30:11
**apply** [4] - 13:14, 15:2, 29:23, 30:18
**approaches** [1] - 19:1
**arguments** [7] - 13:6, 15:14, 15:16, 21:17, 32:16, 32:17, 33:7
**arise** [4] - 28:10, 30:2, 30:24, 30:25
**arose** [1] - 27:12
**articles** [1] - 19:4
**artist** [1] - 12:5
**artwork** [2] - 10:5, 10:8
**assert** [1] - 14:16
**asserted** [1] - 23:7
**assertion** [1] - 23:6
**assist** [1] - 19:22
**associated** [3] - 12:8, 21:5, 21:12
**assume** [3] - 26:19, 26:20, 26:25
**attempt** [2] - 24:13, 24:22
**attorney's** [1] - 20:11
**attorneys** [3] - 13:7, 20:1, 21:16
**Attorneys** [1] - 15:22
**authorization** [1] - 6:4
**available** [5] - 5:17, 5:23, 5:25, 12:16, 34:10
**AVENUE** [1] - 2:11
**avoid** [2] - 20:8, 29:11
**avoided** [1] - 29:5
**award** [2] - 29:11, 31:14
**awarding** [1] - 28:18
**aware** [1] - 6:25

**B**

**bailiff** [2] - 19:11, 24:20
**BAIRD** [1] - 1:23
**barred** [2] - 31:21, 31:24
**base** [1] - 14:24
**based** [3] - 19:19, 27:23, 33:22
**bear** [1] - 18:14
**became** [1] - 19:25
**becomes** [1] - 24:18
**begin** [1] - 23:25
**BEHALF** [2] - 2:3,

2:9
**belief** [1] - 24:16
**believability** [1] - 18:15
**bench** [1] - 20:3
**Best** [1] - 9:24
**between** [5] - 14:6, 17:3, 25:18, 27:12, 28:23
**bias** [1] - 18:9
**blogs** [1] - 18:23
**boards** [1] - 18:24
**booklet** [1] - 10:9
**books** [1] - 23:13
**bottom** [3] - 6:13, 7:10, 8:2
**breach** [9] - 25:21, 28:1, 28:4, 28:11, 28:14, 28:24, 29:2, 29:3, 32:3
**breached** [3] - 25:13, 25:17, 32:2
**break** [1] - 32:15
**brief** [1] - 13:25
**bring** [1] - 32:16
**brought** [1] - 23:20
**bulletin** [1] - 18:24
**burden** [4] - 14:8, 14:20, 33:3, 33:12
**BUSCH** [10] - 2:3, 7:18, 7:21, 7:24, 8:2, 8:4, 13:4, 33:9, 34:2, 34:11
**Busch** [5] - 4:20, 4:23, 7:17, 7:19, 12:19
**business** [1] - 6:17
**buy** [2] - 8:24, 8:25
**Buy** [1] - 9:24
**BY** [6] - 2:10, 4:22, 5:9, 6:12, 7:24, 8:4

**C**

**CACI** [1] - 34:7
**CALIFORNIA** [5] - 1:2, 1:19, 1:24, 2:12, 4:1
**cannot** [2] - 17:12, 17:13
**case** [40] - 5:20, 5:22, 8:21, 9:9, 9:13, 10:5, 11:17, 11:22, 13:8, 13:14, 13:19, 15:1, 16:8, 17:19, 17:22, 18:9, 18:20, 18:22, 18:25, 19:2, 19:4, 19:9, 19:14, 19:16, 19:17, 20:13, 20:22, 21:2, 21:11,

21:16, 23:1, 23:10, 23:14, 23:16, 24:3, 24:6, 24:24, 31:8, 32:19, 32:20
**case-in-chief** [1] - 21:11
**cassette** [1] - 7:14
**caused** [2] - 28:4, 29:3
**CD** [9] - 7:14, 8:25, 9:24, 9:25, 10:2, 10:5, 10:17, 11:11
**CDs** [4] - 8:14, 9:16, 10:20, 11:13
**CENTRAL** [1] - 1:2
**Certain** [3] - 15:11, 23:11, 23:19
**certain** [5] - 14:5, 20:7, 25:18, 28:23, 31:11
**change** [3] - 24:10, 24:15, 33:23
**channels** [1] - 7:12
**charge** [1] - 10:4
**charges** [2] - 10:8, 10:18
**charts** [3] - 23:11, 23:17, 23:19
**Charts** [1] - 23:21
**chat** [1] - 18:23
**chief** [1] - 21:11
**choice** [1] - 34:7
**Circuit** [1] - 34:6
**circumstances** [1] - 29:8
**circumstantial** [3] - 16:14, 16:25, 17:4
**Circumstantial** [1] - 16:17
**claim** [16] - 14:1, 14:4, 14:13, 14:14, 14:20, 14:22, 25:13, 25:17, 28:1, 28:19, 29:15, 31:7, 31:21, 31:22, 31:23, 32:7
**claims** [3] - 14:8, 14:9, 30:11
**clear** [10] - 29:20, 30:16, 33:3, 33:4, 33:8, 33:12, 33:13, 33:16, 33:25, 34:6
**clearly** [1] - 27:3
**clients** [1] - 15:22
**closing** [5] - 15:16, 21:17, 32:16, 32:17, 33:6
**colors** [1] - 10:10
**committed** [1] - 32:3
**common** [2] - 6:5, 17:1

**commonly** [2] - 14:4, 32:6
**communicate** [4] - 19:10, 24:19, 24:22, 24:23
**companies** [4] - 5:17, 6:20, 8:7, 9:10
**compensate** [1] - 28:3
**compensation** [1] - 28:5
**compilation** [1] - 6:24
**concerning** [1] - 24:24
**conclude** [2] - 29:13, 30:9
**conclusive** [1] - 27:17
**conditions** [1] - 26:2
**conduct** [8] - 18:19, 27:13, 27:14, 27:15, 27:16, 30:3, 30:23, 30:25
**conference** [3] - 20:2, 20:11, 20:12
**conferences** [2] - 20:5, 20:10
**confidence** [1] - 23:3
**configuration** [1] - 7:6
**confused** [1] - 21:10
**confusion** [1] - 20:8
**conscientious** [2] - 21:21, 24:15
**consider** [13] - 15:3, 15:10, 15:12, 16:13, 16:25, 17:2, 17:20, 20:11, 22:3, 22:17, 27:5, 27:10, 29:7
**consideration** [2] - 21:21, 26:17
**considered** [3] - 16:3, 22:8, 24:7
**considering** [2] - 18:3, 22:24
**considers** [1] - 23:3
**consist** [1] - 15:4
**consult** [1] - 24:25
**consulting** [1] - 19:6
**consumer** [1] - 12:15
**contend** [4] - 14:9, 14:13, 29:16, 31:19
**contends** [1] - 30:12
**content** [1] - 23:13
**context** [1] - 6:3
**continue** [1] - 25:2
**contract** [5] - 25:21, 28:12, 28:11, 28:12, 31:17

**contracting** [1] - 27:20
**contracts** [3] - 5:22, 6:7, 32:3
**contractually** [1] - 31:12
**contradicts** [1] - 18:10
**contrary** [1] - 21:6
**control** [1] - 17:6
**controls** [1] - 15:20
**convincing** [10] - 29:20, 30:16, 33:3, 33:4, 33:8, 33:13, 33:14, 33:16, 34:1, 34:6
**copy** [1] - 13:8
**corporation** [1] - 21:20
**correct** [6] - 10:4, 10:22, 11:6, 11:7, 12:7, 33:21
**correctly** [4] - 8:14, 14:6, 23:15, 25:18
**cost** [3] - 9:25, 12:11, 12:14
**costs** [11] - 11:12, 11:15, 11:18, 11:23, 12:3, 12:6, 12:7, 14:5, 14:14, 25:18, 28:23
**counsel** [1] - 32:15
**count** [1] - 25:7
**course** [3] - 20:8, 24:14, 28:11
**Court** [3] - 23:5, 25:7, 25:11
**court** [7] - 4:5, 16:7, 22:4, 22:17, 24:3, 24:24, 32:23
**COURT** [16] - 1:1, 1:23, 4:4, 4:6, 4:10, 7:17, 7:19, 7:22, 12:19, 12:24, 13:3, 32:24, 33:10, 33:25, 34:5, 34:12
**Court's** [1] - 15:25
**courtroom** [3] - 20:3, 25:12, 32:16
**covered** [1] - 7:8
**created** [1] - 27:11
**CSR** [1] - 1:23
**Cue** [1] - 22:1
**CV** [1] - 1:8

# D

**damages** [16] - 14:18, 28:5, 28:9, 28:16, 28:17, 28:18, 28:19, 28:24, 29:4,

31:7, 31:15, 31:19, 31:24, 31:25, 32:10
**date** [1] - 25:11
**DAY** [1] - 1:18
**decide** [14] - 13:18, 15:1, 16:8, 16:24, 17:5, 17:23, 19:14, 20:6, 23:8, 24:6, 26:22, 27:2, 27:25, 28:2
**decides** [1] - 23:6
**deciding** [7] - 15:3, 15:13, 17:19, 17:22, 22:9, 27:4, 27:9
**decision** [5] - 14:24, 19:19, 23:9, 24:12, 24:15
**decisions** [1] - 23:10
**DEFENDANT** [1] - 2:9
**defendant** [2] - 28:3, 29:3
**defendants** [25] - 14:1, 14:5, 14:9, 14:13, 14:16, 21:1, 21:3, 25:13, 25:21, 25:23, 26:3, 26:5, 28:1, 28:7, 29:5, 29:16, 29:19, 30:4, 30:15, 30:22, 31:1, 31:4, 31:19, 31:22, 32:2
**Defendants** [2] - 1:12, 31:7
**defendants'** [2] - 14:19, 26:3
**defense** [4] - 13:1, 14:21, 14:23, 31:22
**defenses** [4] - 14:16, 14:19, 33:2, 33:11
**define** [2] - 33:7, 33:8
**defined** [3] - 33:13, 33:15, 33:16
**defining** [1] - 33:4
**delayed** [1] - 32:6
**deliberate** [2] - 13:9, 21:18
**deliberation** [1] - 19:17
**deliberations** [5] - 19:18, 23:25, 24:2, 24:18, 25:2
**demanding** [1] - 30:14
**demands** [1] - 31:9
**deny** [2] - 14:9, 14:18
**denying** [1] - 20:12
**deposition** [7] - 7:20,

7:21, 15:6, 21:22, 22:1, 22:2, 22:3
**deserves** [2] - 22:24, 23:24
**determine** [2] - 23:17, 27:21
**determining** [1] - 26:17
**developing** [1] - 12:12
**dictionaries** [1] - 19:7
**differ** [1] - 15:19
**difference** [1] - 31:18
**different** [8] - 5:18, 8:7, 10:25, 16:22, 27:3, 29:18, 30:14, 34:3
**difficult** [1] - 20:20
**digital** [3] - 11:5, 11:15, 12:14
**diligence** [2] - 32:10, 32:12
**direct** [3] - 16:14, 16:15, 17:4
**Direct** [1] - 16:14
**disagreement** [1] - 27:12
**discharged** [1] - 25:6
**disclose** [2] - 23:2, 25:7
**discount** [2] - 12:11, 12:14
**discoverable** [1] - 32:4
**discovered** [2] - 32:9, 32:11
**discovers** [1] - 32:9
**discovery** [2] - 32:7
**discuss** [5] - 18:20, 18:25, 19:17, 24:3, 32:19
**discussed** [2] - 19:15, 24:7
**discussing** [1] - 18:22
**discussion** [1] - 24:11
**dislikes** [1] - 13:17
**disregard** [4] - 16:2, 17:18, 17:21, 23:16
**distinction** [1] - 17:3
**DISTRICT** [3] - 1:1, 1:2, 1:23
**documents** [2] - 23:13, 26:15
**dollar** [1] - 10:12
**done** [1] - 20:8
**down** [1] - 12:25
**download** [9] - 7:11,

8:25, 9:6, 11:5, 11:16, 11:24, 12:8, 12:13, 12:14
**downloaded** [5] - 11:10, 11:19, 11:24, 12:4, 12:8
**downloads** [13] - 7:8, 9:11, 9:17, 9:22, 14:3, 14:12, 25:16, 29:14, 29:23, 30:6, 30:10, 30:18, 31:3
**due** [1] - 29:1
**during** [5] - 16:21, 19:25, 20:22, 21:1, 24:18
**During** [1] - 19:18
**duties** [1] - 26:6
**duty** [3] - 13:7, 13:13, 15:22

## E

**e-mails** [1] - 18:24
**EAST** [1] - 1:24
**Eddie** [1] - 22:1
**education** [2] - 22:20, 22:25
**effect** [3] - 11:3, 24:16, 27:19
**efforts** [4] - 29:6, 29:8, 29:9, 29:11
**either** [2] - 17:4, 20:2
**elect** [1] - 23:25
**embody** [1] - 6:21
**Eminem** [14] - 7:2, 7:3, 8:25, 9:24, 10:16, 10:17, 14:3, 14:6, 14:11, 14:14, 25:15, 25:19, 28:23
**employed** [1] - 21:5
**entities** [1] - 6:20
**entitled** [2] - 21:20, 29:4
**entity** [1] - 9:21
**equal** [2] - 21:19, 31:10
**error** [2] - 20:8, 33:18
**established** [1] - 22:16
**estopped** [1] - 30:13
**estoppel** [1] - 14:17
**Estoppel** [1] - 30:24
**ET** [2] - 1:10, 2:10
**Ethan** [1] - 22:2
**events** [1] - 28:11
**evidence** [73] - 13:6, 13:11, 13:14, 13:19, 13:24, 14:21, 14:22, 14:25, 15:3, 15:7,

15:11, 15:12, 15:15, 15:18, 15:22, 16:3, 16:6, 16:7, 16:8, 16:10, 16:12, 16:15, 16:17, 16:21, 16:25, 17:1, 17:2, 17:4, 17:5, 17:7, 17:8, 17:17, 17:19, 17:20, 18:10, 18:13, 18:16, 19:15, 19:19, 19:22, 20:7, 20:18, 20:19, 20:21, 20:23, 20:24, 21:1, 21:3, 21:15, 22:7, 22:9, 23:1, 23:12, 23:13, 23:14, 23:16, 23:18, 23:20, 23:22, 23:23, 24:7, 24:16, 26:8, 27:17, 29:21, 30:16, 33:3, 33:5, 33:13, 33:14, 33:15, 34:4
**Evidence** [6] - 15:24, 16:14, 17:6, 17:9, 20:7, 22:12
**exact** [1] - 28:17
**exactly** [1] - 12:11
**EXAMINATION** [4] - 3:4, 3:5, 4:12, 7:23
**example** [5] - 5:19, 5:24, 6:2, 16:19
**except** [1] - 24:22
**excessive** [1] - 10:13
**excluded** [1] - 16:1
**excused** [1] - 26:1
**exercise** [1] - 23:4
**exercised** [1] - 23:8
**exhibit** [3] - 17:8, 17:11, 17:13
**Exhibit** [5] - 4:19, 26:8, 26:9, 26:10, 26:11
**exhibits** [3] - 15:7, 15:11, 16:4
**EXHIBITS** [1] - 3:7
**expects** [1] - 20:19
**expenditure** [1] - 29:6
**expenditures** [1] - 29:10
**experience** [3] - 17:1, 22:20, 22:25
**explain** [1] - 23:12
**explaining** [1] - 26:15
**explanation** [1] - 16:23
**exploit** [1] - 5:18
**express** [1] - 32:20

## F

**F.B.T** [4] - 1:4, 2:3, 25:19, 28:23
**facing** [1] - 29:8
**fact** [8] - 16:15, 16:18, 16:20, 16:24, 18:1, 18:16, 21:10, 23:7
**factors** [1] - 18:14
**facts** [12] - 13:13, 13:14, 15:4, 15:8, 15:13, 15:18, 16:17, 17:22, 23:15, 23:17
**failed** [3] - 14:2, 14:5, 26:4
**failing** [2] - 25:14, 25:18
**failure** [2] - 26:5, 28:20
**fair** [2] - 10:16, 21:20
**family** [1] - 18:21
**far** [1] - 31:10
**fear** [1] - 23:5
**fellow** [5] - 19:14, 19:18, 19:24, 24:4, 24:8
**few** [4] - 4:16, 8:8, 8:9, 18:19
**fifth** [1] - 19:12
**FIFTH** [1] - 2:12
**figures** [1] - 23:15
**file** [1] - 11:5
**files** [1] - 12:13
**fill** [1] - 25:10
**film** [1] - 6:23
**Finally** [1] - 19:16
**finished** [1] - 21:2
**First** [2] - 18:20, 20:15
**first** [4] - 8:2, 14:1, 20:24, 28:19
**Five** [1] - 18:10
**five** [2] - 32:15, 32:22
**five-minute** [1] - 32:15
**FLOOR** [1] - 2:12
**follow** [4] - 13:15, 13:21, 13:24, 16:5
**following** [6] - 13:21, 20:15, 25:22, 28:16, 29:20, 30:15
**foreseen** [1] - 28:13
**form** [7] - 14:3, 14:11, 22:12, 25:8, 25:10, 25:15, 32:20
**Four** [2] - 16:6, 18:8
**Fourth** [1] - 19:10
**freely** [3] - 23:5, 29:25, 30:20

**fully** [2] - 24:7, 32:12
**future** [1] - 32:5

## G

**garden** [1] - 16:22
**gentlemen** [2] - 32:14
**given** [9] - 17:3, 19:16, 22:14, 22:25, 25:11, 26:17, 27:1, 33:6, 34:3
**GLENN** [1] - 2:10
**governed** [1] - 26:6
**GRAND** [1] - 2:11
**grant** [1] - 20:10
**granting** [1] - 20:12
**guess** [2] - 17:15, 28:18
**Guilford** [1] - 2:4
**Gustav** [1] - 22:2
**GUTIERREZ** [1] - 1:3

## H

**half** [1] - 8:6
**hand** [3] - 25:19, 33:22
**handy** [1] - 34:9
**hardship** [1] - 29:6
**Harleston** [9] - 3:3, 4:6, 4:9, 4:14, 4:20, 4:23, 6:13, 7:25, 11:17
**harm** [8] - 28:4, 28:9, 28:10, 28:13, 29:4, 29:11, 31:23
**harmed** [1] - 26:5
**hear** [2] - 13:6, 18:5
**heard** [3] - 13:6, 16:7, 16:16
**hearing** [1] - 20:2
**held** [1] - 9:23
**help** [5] - 13:24, 15:17, 20:18, 23:12, 27:7
**hesitate** [1] - 24:10
**highlight** [1] - 5:7
**highlighted** [1] - 4:25
**honest** [1] - 24:16
**Honor** [7] - 4:11, 7:15, 12:23, 13:2, 13:4, 33:9, 33:17
**HONORABLE** [1] - 1:3
**hose** [1] - 16:22

## I

**identified** [1] - 33:12

**ignore** [3] - 13:22, 17:14, 17:18
**illustrate** [1] - 23:20
**immediately** [1] - 19:2
**important** [2] - 13:23, 24:13
**improper** [1] - 15:23
**IN** [2] - 2:3, 2:9
**include** [2] - 27:14, 29:12
**includes** [2] - 18:22, 31:15
**including** [4] - 18:21, 25:4, 29:9, 31:18
**incorrectly** [1] - 14:15
**incur** [1] - 10:20
**INDEX** [1] - 3:1
**indicating** [1] - 13:11
**indication** [1] - 20:13
**individuals** [1] - 6:20
**industry** [1] - 27:2
**infer** [1] - 13:9
**influenced** [3] - 13:17, 15:24, 19:23
**information** [3] - 20:6, 23:4, 23:20
**injury** [1] - 32:10
**insofar** [2] - 22:5, 22:17
**instance** [1] - 6:25
**instead** [1] - 11:10
**instruct** [3] - 13:7, 16:11, 21:15
**instructed** [1] - 16:2
**Instruction** [3] - 28:16, 33:19, 33:20
**instruction** [5] - 16:5, 33:4, 33:6, 33:9, 34:2
**instructions** [8] - 13:8, 13:10, 13:21, 15:2, 32:25, 33:11, 33:12, 33:18
**intended** [4] - 15:17, 26:20, 26:22, 26:25
**intentions** [1] - 27:24
**interest** [1] - 18:8
**interests** [1] - 21:6
**Internet** [4] - 18:23, 19:7
**interpret** [2] - 15:17, 27:7
**Interpretations** [1] - 27:13
**interpreted** [2] - 26:13, 27:19
**interpreting** [1] - 26:24

**interrogatory** [1] - 22:13
**investigation** [1] - 19:8
**involved** [1] - 18:21
**iPod** [2] - 11:1, 11:4
**isolated** [1] - 27:6
**issue** [5] - 5:22, 6:8, 9:9, 9:13, 34:1
**item** [1] - 16:11
**itself** [1] - 7:2
**iTunes** [3] - 9:11, 11:5, 11:19

### J

**Jeffrey** [2] - 3:3, 4:9
**jewel** [1] - 10:5
**joint** [1] - 27:14
**JUDGE** [1] - 1:3
**judged** [1] - 22:22
**July** [1] - 26:10
**June** [1] - 22:1
**juror** [2] - 24:1, 24:20, 25:10
**jurors** [8] - 18:20, 19:14, 19:18, 19:24, 24:4, 24:8, 24:9, 24:12
**JURY** [1] - 1:17
**jury** [15] - 4:5, 10:24, 13:5, 13:9, 19:13, 20:2, 20:3, 21:18, 24:1, 24:21, 24:23, 25:5, 32:23, 33:22

### K

**Keep** [1] - 19:15
**keep** [3] - 20:6, 20:9, 20:22
**KELLY** [1] - 2:10
**Kenswil** [1] - 11:22
**Kenswil's** [1] - 12:1
**kind** [1] - 6:5
**kinds** [1] - 17:2
**KLAUS** [1] - 2:10
**knowing** [1] - 30:23
**knowingly** [2] - 29:25, 30:20
**knowledge** [2] - 7:7, 27:15
**known** [2] - 14:4, 21:7
**knows** [1] - 12:15

### L

**Ladies** [1] - 32:14
**last** [1] - 4:20
**law** [8] - 13:7, 13:14,

13:15, 17:3, 21:16, 21:19, 23:3, 31:20
**lawyer** [3] - 17:7, 17:8, 17:10
**lawyers** [7] - 15:8, 15:14, 15:15, 15:19, 15:21, 21:24, 23:3
**least** [1] - 5:21
**legal** [1] - 23:2
**LEMOINE** [1] - 2:11
**length** [1] - 20:9
**license** [7] - 5:20, 6:1, 6:4, 6:6, 6:14, 6:18, 7:1
**licensed** [2] - 6:20, 9:15
**licensing** [3] - 8:6, 8:16, 9:10
**lied** [1] - 22:7
**lieu** [1] - 22:4
**light** [3] - 17:1, 18:13, 29:8
**likely** [1] - 28:10
**limitations** [4] - 14:17, 31:25, 32:5, 32:8
**limited** [6] - 16:4, 16:10, 16:11, 16:12, 16:13, 27:14
**limiting** [2] - 16:5, 26:15
**list** [1] - 15:13
**listen** [1] - 19:3
**listened** [1] - 24:8
**live** [2] - 15:5, 22:4
**LLC** [1] - 1:4
**LLP** [1] - 2:9
**looked** [1] - 10:23
**LOS** [4] - 1:19, 1:24, 2:12, 4:1

### M

**mails** [1] - 18:24
**manner** [5] - 18:7, 29:17, 30:13, 32:3
**manufactures** [1] - 10:2
**manufacturing** [4] - 9:25, 10:18, 12:6, 12:7
**MARCH** [2] - 1:20, 4:1
**March** [1] - 26:8
**Mark** [1] - 2:4
**marketing** [2] - 12:15, 12:17
**Mart** [13] - 5:11, 5:13, 5:19, 5:21, 5:23, 8:12, 8:13, 8:15, 8:16, 8:25,

9:14, 9:16, 9:20
**master** [2] - 6:21, 11:6
**masters** [4] - 6:14, 6:18, 6:21, 7:1
**mastertones** [9] - 14:4, 14:12, 25:16, 29:14, 29:24, 30:6, 30:10, 30:19, 31:3
**materials** [1] - 19:8
**matter** [1] - 8:24
**mean** [2] - 6:2, 12:11
**meaning** [4] - 26:21, 26:23, 27:1, 27:17
**means** [3] - 13:18, 14:22, 17:19
**meant** [7] - 8:13, 8:16, 8:17, 9:16, 27:5, 27:10, 33:24
**mechanical** [1] - 12:5
**MELINDA** [1] - 2:11
**member** [2] - 24:21, 24:23
**Members** [1] - 13:5
**members** [2] - 18:21, 24:21
**memory** [4] - 15:20, 18:6, 19:22, 19:23
**mention** [1] - 5:13
**might** [2] - 17:15, 31:8
**million** [14] - 10:18, 10:19, 11:10, 11:12, 11:13, 11:19, 11:20, 11:25, 12:4, 12:8, 12:9, 12:16
**mind** [3] - 19:12, 19:15, 20:22
**minimum** [1] - 20:10
**minute** [2] - 8:11, 32:15
**minutes** [3] - 8:8, 8:9, 32:22
**MIRIAM** [1] - 1:23
**misallocation** [1] - 28:23
**mitigation** [1] - 14:18
**model** [2] - 34:5, 34:6
**money** [3] - 12:17, 28:25, 31:9
**morning** [4] - 4:4, 4:14, 4:15, 16:19
**move** [1] - 33:6
**MR** [21] - 4:11, 4:13, 4:18, 4:22, 5:7, 5:9, 6:9, 6:12, 7:15, 7:18, 7:21, 7:24, 8:2, 8:4, 12:23, 13:2, 13:4,

33:9, 33:17, 34:2, 34:11
**MUNGER** [1] - 2:9
**music** [5] - 5:17, 5:21, 5:23, 5:25, 6:17
**must** [31] - 13:9, 13:15, 13:16, 13:18, 13:21, 14:22, 16:3, 16:5, 16:12, 16:25, 17:14, 17:15, 17:20, 18:20, 23:9, 24:5, 25:22, 26:13, 27:19, 27:21, 28:2, 28:3, 28:10, 28:15, 28:18, 28:25, 29:19, 29:20, 30:15, 31:22
**MVB11893@aol. com** [1] - 1:25

### N

**NASHVILLE** [1] - 2:5
**necessarily** [2] - 18:1, 18:17
**necessary** [2] - 20:1, 24:18
**need** [3] - 19:10, 33:21, 34:11
**never** [2] - 33:13, 33:16
**news** [1] - 19:3
**Nichols** [3] - 4:18, 5:7, 6:9
**night** [1] - 16:21
**Ninth** [1] - 34:6
**none** [2] - 3:8, 17:25
**normal** [1] - 7:12
**note** [3] - 19:11, 24:19, 25:7
**notes** [2] - 19:21, 19:24
**Notes** [1] - 19:22
**noticed** [2] - 32:25, 33:10
**Novation** [1] - 26:9
**number** [6] - 10:9, 10:10, 18:1, 18:17, 20:9, 24:1
**Number** [1] - 28:16
**numerically** [1] - 25:5

### O

**oath** [4] - 4:7, 13:20, 21:23, 22:15
**object** [1] - 15:22
**objected** [1] - 17:10
**objection** [4] - 15:24, 17:10, 17:12, 17:14

**objections** [1] - 15:21
**obligated** [1] - 29:16, 30:12, 31:12
**obligation** [5] - 28:25, 30:1, 30:8, 30:21, 31:6
**obtain** [1] - 31:8
**occasion** [1] - 22:8
**occurred** [4] - 26:3, 31:20, 31:24, 31:25
**October** [1] - 22:3
**OF** [4] - 1:2, 1:16, 2:3, 2:9
**offered** [2] - 3:8, 17:8
**OFFICIAL** [1] - 1:23
**often** [1] - 20:20
**OLSON** [1] - 2:9
**omitted** [1] - 33:1
**one** [22] - 5:18, 10:17, 10:20, 10:24, 11:13, 11:19, 11:24, 15:4, 16:17, 18:4, 22:13, 24:1, 24:20, 25:19, 26:14, 27:15, 27:16, 28:1, 28:10, 32:25, 33:17, 33:18
**One** [4] - 15:14, 21:4, 29:22, 30:17
**online** [1] - 19:4
**Open** [2] - 4:5, 32:23
**open** [2] - 19:15, 24:24
**opening** [7] - 8:20, 8:23, 15:16, 20:16, 20:17, 20:21
**opinion** [4] - 13:11, 20:13, 23:1, 24:10
**Opinion** [1] - 22:22
**opinions** [4] - 13:17, 22:21, 22:22, 32:20
**opportunity** [1] - 18:4
**oral** [2] - 30:2, 30:24
**order** [5] - 10:20, 17:17, 20:21, 23:12, 28:3
**ordinary** [2] - 26:21, 28:11
**Otherwise** [1] - 33:23
**otherwise** [4] - 15:1, 21:5, 25:5, 26:15
**outcome** [1] - 18:8
**outlets** [3] - 5:11, 5:13, 9:19
**outline** [1] - 20:18
**overly** [1] - 19:23
**overpayments** [2] - 31:14, 31:18

**overruled** [1] - 17:10
**overview** [1] - 20:22
**owe** [2] - 31:9, 31:17
**own** [5] - 6:22, 19:9, 19:22, 24:15

## P

**package** [1] - 10:13
**PAGE** [1] - 3:2
**page** [1] - 8:3
**pages** [1] - 10:10
**paid** [3] - 14:10, 31:11, 31:15
**Paragraph** [1] - 7:9
**paragraph** [2] - 4:20, 8:2
**part** [4] - 17:25, 21:11, 26:12, 27:7
**particular** [2] - 29:23, 30:18
**particularly** [1] - 6:19
**parties** [26] - 13:25, 15:2, 20:25, 21:4, 21:19, 22:13, 25:1, 26:6, 26:18, 26:19, 26:20, 26:22, 26:25, 27:3, 27:5, 27:10, 27:11, 27:12, 27:20, 27:21, 27:22, 27:23, 28:12, 31:9, 32:24, 33:5
**parties'** [1] - 27:13
**partner** [1] - 5:23
**partners** [1] - 12:14
**partnership** [1] - 21:20
**parts** [2] - 27:6, 27:8
**party** [13] - 14:20, 14:25, 15:1, 20:16, 20:19, 21:6, 21:8, 21:10, 21:21, 21:24, 27:15, 27:16
**pay** [7] - 10:24, 12:5, 14:2, 25:14, 28:3, 28:20, 28:25
**payment** [2] - 30:5, 31:2
**payments** [1] - 31:13
**penalty** [1] - 23:5
**people** [3] - 6:17, 18:21, 27:2
**People** [2] - 23:2, 23:4
**per** [1] - 10:4
**per-unit** [1] - 10:4
**perform** [4] - 30:1, 30:8, 30:21, 31:6
**performance** [1] -

26:3
**performed** [1] - 28:7
**permanent** [12] - 9:6, 9:11, 9:17, 14:3, 14:11, 25:16, 29:14, 29:23, 30:6, 30:10, 30:18, 31:2
**permissible** [1] - 21:9
**permission** [1] - 6:4
**permit** [1] - 18:25
**permitted** [2] - 17:9, 22:21
**person** [2] - 21:11, 24:2
**personal** [1] - 13:17
**personally** [1] - 16:16
**persuaded** [1] - 14:22
**persuades** [1] - 24:11
**PHILIP** [1] - 1:3
**physical** [2] - 8:14, 9:16
**placed** [1] - 21:23
**plaintiff** [4] - 13:3, 25:20, 25:22, 32:8
**PLAINTIFF** [1] - 2:3
**plaintiffs** [45] - 14:1, 14:4, 14:6, 14:7, 14:10, 14:13, 14:14, 14:18, 21:2, 25:24, 27:25, 28:4, 28:6, 28:9, 28:25, 29:2, 29:4, 29:5, 29:10, 29:14, 29:15, 29:17, 29:18, 29:22, 29:25, 30:3, 30:4, 30:10, 30:11, 30:13, 30:17, 30:20, 30:25, 31:1, 31:7, 31:11, 31:12, 31:16, 31:17, 31:20, 31:23, 32:4, 32:11, 32:13
**Plaintiffs** [7] - 1:6, 20:24, 25:13, 25:16, 28:15, 28:17, 28:19
**plaintiffs'** [7] - 14:7, 14:12, 21:2, 29:8, 30:23, 31:21, 31:22
**point** [3] - 5:16, 12:18, 32:18
**Pomerantz** [4] - 8:1, 8:5, 8:23, 12:22
**POMERANTZ** [13] - 2:10, 4:11, 4:13, 4:18, 4:22, 5:7, 5:9, 6:9, 6:12, 7:15, 12:23, 13:2, 33:17

**Pomerantz's** [1] - 8:20
**portion** [2] - 4:24, 6:21
**position** [2] - 13:25, 28:6
**possible** [2] - 22:5, 22:18
**prefer** [1] - 20:21
**prejudice** [1] - 18:9
**prejudices** [1] - 13:18
**prepared** [1] - 25:8
**preponderance** [4] - 14:21, 33:7, 33:15, 34:4
**presence** [1] - 16:23
**present** [7] - 4:5, 20:3, 20:24, 21:1, 21:3, 22:6, 32:23
**presentation** [1] - 20:23
**presented** [4] - 14:25, 21:15, 22:4, 22:12
**preside** [1] - 24:2
**PRESIDING** [1] - 1:3
**presiding** [3] - 24:1, 24:20, 25:10
**press** [1] - 10:20
**previously** [2] - 3:3, 4:9
**printing** [1] - 10:9
**privilege** [3] - 23:5, 23:6, 23:8
**privileged** [1] - 23:4
**probable** [1] - 28:13
**procedures** [1] - 22:17
**proceed** [1] - 20:15
**PROCEEDINGS** [1] - 1:16
**product** [1] - 12:15
**PRODUCTIONS** [2] - 1:4, 2:3
**promised** [1] - 28:8
**Proof** [1] - 17:25
**proof** [6] - 14:20, 16:15, 16:17, 23:14, 33:3, 33:12
**proper** [4] - 14:2, 14:10, 25:14, 28:21
**property** [1] - 6:22
**prove** [12] - 25:22, 28:10, 28:15, 28:17, 28:25, 29:2, 29:5, 29:20, 30:4, 30:15, 31:1, 31:22
**proved** [2] - 16:24, 27:25

**proves** [2] - 31:15, 31:17
**provide** [2] - 12:13, 16:22
**proving** [1] - 14:8
**provision** [15] - 6:13, 6:14, 6:18, 6:19, 7:1, 7:9, 7:10, 7:11, 7:14, 8:1, 14:2, 14:11, 28:21, 29:23, 30:11
**provisions** [6] - 25:15, 26:14, 26:16, 29:15, 30:18
**pull** [2] - 4:19, 8:3
**purchases** [1] - 11:10
**purpose** [10] - 5:15, 16:4, 16:11, 16:12, 16:13, 20:5, 22:11, 28:5, 29:12
**purposes** [2] - 8:24, 32:8
**put** [3] - 4:18, 6:9, 28:6

## Q

**qualify** [1] - 7:13
**questioning** [2] - 4:20, 4:23
**questions** [6] - 4:16, 7:16, 15:21, 21:24, 21:25, 22:16
**quick** [1] - 32:14

## R

**radio** [1] - 19:4
**rained** [1] - 16:21
**range** [2] - 10:11, 10:15
**rather** [1] - 7:9
**reach** [3] - 24:4, 24:13, 24:17
**reached** [2] - 25:6, 25:9
**reaching** [1] - 15:10
**read** [1] - 19:3
**reading** [2] - 32:25, 33:10
**ready** [1] - 25:12
**reason** [2] - 17:1, 21:7
**reasonable** [5] - 29:6, 29:11, 29:12, 32:9, 32:12
**reasonableness** [2] - 18:12, 29:7
**reasonably** [5] - 28:3, 28:13, 30:22, 31:4, 32:4

**reasons** [3] - 21:8, 22:21, 22:25
**received** [9] - 15:7, 15:11, 16:4, 16:8, 17:7, 17:11, 17:13, 23:11, 23:19
**recess** [1] - 20:4
**Recess** [1] - 34:13
**record** [6] - 7:2, 7:3, 7:12, 10:25, 17:18
**recorded** [1] - 21:25
**recording** [24] - 11:6, 25:14, 25:17, 25:25, 26:2, 26:4, 26:7, 26:9, 26:10, 26:11, 26:20, 26:24, 27:2, 27:4, 27:9, 27:11, 27:17, 27:22, 28:2, 28:24, 29:1, 29:2, 30:7, 31:4
**recordings** [7] - 8:7, 8:16, 9:10, 9:15, 14:3, 14:11, 25:15
**RECORDS** [2] - 1:10, 2:10
**records** [4] - 5:18, 7:13, 12:17, 23:13
**recover** [5] - 14:13, 25:21, 28:9, 28:24, 29:4
**recoverable** [2] - 32:1, 32:13
**RECROSS** [2] - 3:5, 7:23
**recross** [1] - 7:17
**RECROSS-EXAMINATION** [2] - 3:5, 7:23
**REDIRECT** [2] - 3:4, 4:12
**redirect** [1] - 4:10
**refer** [1] - 33:24
**reference** [3] - 5:11, 19:8, 33:19
**referred** [1] - 32:6
**referring** [1] - 6:14
**reflect** [1] - 23:15
**regarding** [1] - 13:11
**regardless** [1] - 14:25
**reimburse** [1] - 31:13
**reject** [1] - 22:23
**related** [1] - 11:15
**relating** [1] - 10:9, 33:11
**releases** [1] - 10:16
**relevant** [1] - 20:6
**relied** [2] - 30:22, 31:5
**relinquishing** [1] -

31:5
**rely** [1] - 19:21
**Remember** [7] - 25:4
**remember** [7] - 4:23, 8:5, 10:23, 11:2, 15:19, 34:5, 34:7
**reminded** [1] - 4:7
**REPORTER** [1] - 1:23
**REPORTER'S** [1] - 1:16
**reports** [1] - 19:4
**request** [2] - 20:11, 20:12
**required** [10] - 20:16, 25:25, 26:2, 26:4, 29:13, 29:22, 30:8, 30:9, 30:17, 31:6
**research** [1] - 19:6
**response** [1] - 22:15
**rest** [5] - 5:2, 5:6, 5:8, 5:10, 21:3
**result** [1] - 28:13
**resulting** [2] - 14:6, 25:20
**resume** [1] - 4:10
**RESUMED** [2] - 3:4, 4:12
**retail** [5] - 5:11, 5:13, 5:23, 7:12, 9:19
**retake** [1] - 4:6
**return** [1] - 25:12
**RICHARD** [2] - 2:3
**rights** [2] - 26:6, 29:18
**risk** [1] - 29:10
**room** [3] - 13:9, 19:13, 21:18
**rooms** [1] - 18:23
**royalties** [10] - 12:5, 12:6, 14:7, 25:20, 28:20, 28:22, 30:5, 31:2, 31:12, 31:16
**royalty** [11] - 8:24, 10:24, 10:25, 14:2, 14:10, 25:15, 28:21, 29:18, 29:23, 30:14, 30:18
**rule** [2] - 32:7
**Rules** [4] - 15:23, 17:6, 17:9, 20:7
**ruling** [1] - 15:25
**run** [1] - 21:6

### S

**sale** [5] - 7:1, 7:3, 8:13, 8:14, 11:15
**satisfied** [1] - 31:10
**saw** [1] - 16:16

**screen** [3] - 4:19, 5:8, 6:10
**searching** [1] - 19:7
**second** [4] - 8:6, 14:5, 14:12, 28:21
**Second** [1] - 19:3
**seconds** [1] - 8:9
**Section** [3] - 30:6, 31:3
**see** [6] - 5:10, 6:15, 16:20, 18:5, 32:22, 34:11
**sell** [1] - 12:16
**selling** [1] - 9:22
**sells** [3] - 9:24, 10:1, 10:17
**Senate** [1] - 6:3
**senators** [1] - 4:17
**send** [2] - 24:19, 24:25
**sense** [5] - 5:21, 17:1, 27:1, 27:3, 27:8
**sent** [2] - 11:6, 13:8
**sentence** [8] - 4:24, 5:3, 5:6, 5:8, 5:10, 5:14, 6:2, 8:6
**separately** [1] - 15:1
**services** [1] - 11:5
**SESSION** [1] - 1:18
**session** [1] - 16:7
**set** [3] - 14:17, 31:20, 32:15
**setoff** [2] - 31:8, 31:14
**seven** [1] - 18:14
**show** [2] - 6:23, 20:19
**shown** [2] - 23:12, 23:16
**shows** [2] - 30:3, 30:25
**side** [5] - 17:9, 20:16, 21:5, 21:12, 22:14
**sidewalk** [2] - 16:20, 16:23
**sign** [1] - 25:11
**signed** [3] - 19:11, 24:20, 24:22
**significant** [1] - 25:25
**simply** [4] - 19:10, 20:18, 24:12, 24:17
**single** [2] - 6:25, 13:22
**situations** [1] - 6:19
**Six** [1] - 18:12
**sold** [3] - 7:12, 7:13, 11:13
**solely** [2] - 13:19, 16:8

**sometimes** [1] - 16:3
**Sometimes** [1] - 17:17
**Somewhere** [1] - 10:15
**song** [3] - 11:9, 11:18, 12:4
**sorry** [3] - 9:23, 10:1, 11:8
**SOUTH** [1] - 2:11
**special** [1] - 26:22
**speculate** [2] - 28:18
**spend** [1] - 12:17
**spent** [1] - 29:12
**stand** [2] - 4:7, 22:19
**stands** [1] - 25:5
**state** [1] - 22:21
**statement** [6] - 8:21, 8:23, 20:16, 20:17, 20:21
**statements** [2] - 15:14, 15:16
**STATES** [1] - 1:1
**statute** [4] - 14:17, 31:25, 32:5, 32:8
**step** [1] - 12:19
**still** [4] - 4:7, 29:16, 30:12, 32:18
**stories** [1] - 19:3
**STREET** [2] - 1:24, 2:4
**stricken** [2] - 16:2, 17:17
**subject** [1] - 31:8
**submitted** [3] - 22:14, 22:16, 32:21
**substantially** [1] - 25:24
**succeed** [3] - 29:19, 30:15, 31:21
**summaries** [2] - 23:11, 23:17, 23:19, 23:21
**summary** [1] - 13:25
**supports** [1] - 23:22
**supposed** [1] - 33:20
**sustained** [2] - 17:12, 17:14
**sworn** [4] - 3:4, 4:9, 15:4, 21:22
**sympathy** [1] - 13:18
**system** [2] - 9:6, 12:12

### T

**T.V** [1] - 6:23
**tactical** [1] - 21:8
**talks** [1] - 8:6
**technical** [1] - 26:25

**television** [1] - 19:4
**TEMPLE** [1] - 1:24
**ten** [1] - 32:22
**term** [4] - 6:1, 6:6, 6:19, 9:20
**terms** [1] - 6:4
**testified** [2] - 11:23, 18:5
**testify** [3] - 18:2, 18:17, 22:6
**testifying** [1] - 18:7
**testimony** [30] - 4:16, 5:15, 5:16, 5:20, 6:1, 6:3, 7:20, 7:21, 9:18, 9:19, 12:1, 15:5, 15:11, 16:1, 16:4, 16:15, 17:23, 17:24, 18:3, 18:11, 18:12, 21:13, 21:14, 21:22, 22:4, 22:10, 22:22, 22:23
**THE** [17] - 2:3, 2:9, 4:4, 4:6, 4:8, 4:10, 7:17, 7:19, 7:22, 12:19, 12:24, 13:3, 32:24, 33:10, 33:25, 34:5, 34:12
**themselves** [2] - 23:14
**Therefore** [1] - 16:24
**therefore** [1] - 23:22
**Third** [1] - 19:6
**THIRTY** [1] - 2:12
**THIRTY-FIFTH** [1] - 2:12
**thoughts** [2] - 27:24, 33:25
**three** [2] - 15:8, 30:22
**Three** [2] - 16:1, 18:7
**THURSDAY** [2] - 1:20, 4:1
**TN** [1] - 2:5
**together** [2] - 26:13, 27:8
**TOLLES** [1] - 2:9
**took** [2] - 13:20, 19:21
**top** [2] - 7:9, 7:11
**transaction** [1] - 26:13
**transcript** [1] - 19:20
**TRANSCRIPT** [1] - 1:16
**treat** [1] - 21:12
**treated** [1] - 20:7
**treatment** [2] - 29:18, 30:14
**TRIAL** [1] - 1:17
**trial** [7] - 16:9, 18:22,

19:20, 19:25, 21:23, 22:15, 23:20
**Trials** [1] - 20:15
**tries** [1] - 19:1
**true** [4] - 9:4, 11:11, 14:23
**truth** [1] - 21:24
**trying** [1] - 5:16
**turned** [1] - 16:22
**turned-on** [1] - 16:22
**two** [1] - 28:12
**Two** [5] - 15:7, 15:21, 18:6, 29:25, 30:20

### U

**U.S** [1] - 1:23
**unanimous** [5] - 24:5, 24:13, 25:6, 25:9
**Under** [1] - 32:7
**under** [18] - 4:7, 10:24, 10:25, 14:2, 14:10, 15:23, 20:7, 21:23, 22:7, 22:15, 22:16, 25:14, 28:20, 29:1, 29:15, 30:6, 30:11, 31:17
**underlying** [3] - 23:18, 23:21, 23:23
**underpayment** [4] - 14:7, 25:20, 28:19, 28:21
**undue** [1] - 29:10
**unilateral** [2] - 27:15, 27:16
**UNION** [1] - 2:4
**unit** [1] - 10:4
**UNITED** [1] - 1:1
**units** [1] - 10:18
**Universal** [13] - 8:15, 9:10, 9:24, 10:1, 10:2, 10:18, 11:8, 11:11, 11:18, 11:24, 12:3, 12:7
**Universal's** [1] - 9:25
**unless** [4] - 10:13, 15:1, 26:21, 27:2
**unstated** [1] - 27:24
**up** [17] - 4:18, 4:19, 6:10, 8:3, 9:23, 12:20, 16:19, 19:12, 29:18, 29:25, 30:3, 30:4, 30:5, 30:20, 30:25, 31:1, 32:15
**upheld** [1] - 23:6
**usual** [1] - 26:21

## V

**variety** [2] - 5:17, 5:18
**various** [1] - 8:7
**verdict** [13] - 13:12, 15:10, 19:13, 19:17, 20:13, 21:18, 24:5, 24:13, 24:17, 25:6, 25:8, 25:9, 25:10
**Verizon** [1] - 9:15
**vernacular** [1] - 6:5
**version** [1] - 33:22
**views** [1] - 24:8
**vote** [1] - 25:7
**Vs** [1] - 1:8

## W

**wacky** [2] - 11:1
**waiting** [2] - 20:5, 25:2
**waiver** [3] - 14:17, 29:19, 30:2
**wake** [1] - 16:19
**Wal** [13] - 5:11, 5:13, 5:19, 5:21, 5:23, 8:12, 8:13, 8:15, 8:16, 8:25, 9:14, 9:16, 9:20
**Wal-Mart** [13] - 5:11, 5:13, 5:19, 5:21, 5:23, 8:12, 8:13, 8:15, 8:16, 8:25, 9:14, 9:16, 9:20
**Walmart.com** [4] - 9:1, 9:6, 9:11, 9:20
**water** [1] - 16:23
**ways** [1] - 5:18
**weight** [7] - 17:3, 17:5, 18:16, 22:10, 22:24, 23:23, 24:16
**wet** [1] - 16:20
**whatsoever** [1] - 7:6
**whole** [1] - 27:6
**wide** [1] - 5:17
**William** [2] - 3:3, 4:9
**WITNESS** [2] - 3:2, 4:8
**Witness** [2] - 3:3, 4:9
**witness** [17] - 4:6, 15:5, 16:16, 17:25, 18:3, 18:5, 21:4, 21:9, 21:11, 21:22, 21:23, 22:5, 22:7, 22:9, 22:10, 22:19, 23:7
**witness's** [6] - 18:6, 18:7, 18:8, 18:11, 18:12, 22:25
**witnesses** [12] - 13:1, 15:15, 16:16, 18:2, 18:17, 20:25,

21:7, 21:8, 21:13, 21:14, 22:20
**word** [4] - 6:3, 9:5, 9:14, 12:2
**words** [9] - 18:19, 26:20, 26:22, 26:25, 27:3, 27:4, 27:9, 27:21, 27:23
**worth** [1] - 11:12
**writing** [4] - 22:15, 22:16, 24:22, 24:24
**written** [4] - 22:13, 27:22, 30:2, 30:24

## Y

**yesterday** [4] - 4:24, 6:23, 10:23, 12:12
**Yesterday** [1] - 9:23
**yourself** [1] - 24:6
**yourselves** [1] - 32:19