UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


| | | |
|---|---|---|
| F.B.T. PRODUCTIONS, LLC, ET AL., | ) ) ) | CASE NO: CV-07-3314-PSG(MANx) |
| Plaintiffs, | ) ) | CIVIL |
| vs. | ) ) | Los Angeles, California |
| AFTERMATH RECORDS, ET AL., | ) ) | Friday, September 26, 2008 |
| Defendants. | ) | (1:33 p.m. to 2:57 p.m.) |

TELEPHONIC CONFERENCE REGARDING PLAINTIFFS' MOTION FOR LEAVE TO
TAKE IN EXCESS OF TEN DEPOSITIONS ("PLAINTIFF'S MOTION")

BEFORE THE HONORABLE MARGARET A. NAGLE,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          RICHARD S. BUSCH, ESQ.
                         MARK GUILFORD, ESQ.
                         King and Ballow
                         315 Union Street, Suite 1100
                         Nashville, TN 37201


For Defendants:          KELLY M. KLAUS, ESQ.
                         MELINDA EADES LEMONIE, ESQ.
                         Munger, Tolles & Olson, LLP
                         355 South Grand Ave, 35th Flr.
                         Los Angeles, CA 90071


Court Reporter:          Recorded; CourtSmart

Deputy Clerk:            E. Carson

Transcriber:             Exceptional Reporting Services, Inc.
                         14493 S. Padre Island Drive
                         Suite A-400
                         Corpus Christi, TX 78418
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    **Los Angeles, California; Friday, September 26, 2008; 1:33 p.m.**

2                          **(Call to Order)**

3            **THE CLERK:**  Calling Case Number CV 07-3314-PSG

4    (MANx); *F.B.T. Productions, LLC et al versus Aftermath Records,*

5    *et al.*  Counsel, please state your appearances.

6            **MR. BUSCH:**  Richard Busch for the plaintiffs and I

7    also have in my office with me Mark Guilford.

8            **THE COURT:**  Good afternoon, Mr. Busch and Mr.

9    Guilford.

10           **MR. BUSCH:**  Good afternoon, your Honor.

11           **MR. KLAUS:**  Good afternoon, your Honor, it's Kelly

12   Klaus and with me is Melinda Lemoine from my office for the

13   defendants.

14           **THE COURT:**  Good afternoon to you, Mr. Klaus and Ms.

15   Lemoine.

16           I just want to let you know that as of an hour ago

17   your courtesy copies were not here.  Before we went on the

18   record, I asked my law clerk to check again to see if courtesy

19   copies were here and, in fact, they are now here.  We pulled

20   the inch plus of filings on this matter earlier this morning,

21   so I have read them all, but counsel, I cannot impress upon you

22   enough the importance of getting courtesy copies to a judge as

23   early as you possibly can, particularly in connection with

24   something like this that's being heard on a very expedited

25   basis.

1          **MR. BUSCH**:  I apologize -- this is Richard Busch,

2     your Honor.  I apologize.  We did communicate with our local

3     counsel to get your Honor the courtesy copy.  I will check to

4     see what happened, but --

5          **THE COURT**:  Well, it turned up in the box.  It was

6     just picked up now.  I said, "Before we go on the record, will

7     you check again?"  As of an hour ago, it wasn't here, Mr.

8     Busch, but again, we had checked just to make sure and I have

9     read the papers, but I have to tell you as busy as most of our

10    judges, indeed I think all of our judges are, if you don't have

11    courtesy copies for them sometimes the papers won't get read.

12          So, for what it's worth, that's my best advice of the

13    day to you.

14          I'm disappointed that we have to have this hearing.

15    I'm sorry that I couldn't do it at 10:00 when you originally

16    wanted me to do it, but if I had said okay to 10:00 I wouldn't

17    have had all of these papers, because they don't show up on the

18    docket until sometime in the morning and I wouldn't have known

19    they're here, so it's a good thing I couldn't do it until 1:30.

20          I'm disappointed, though, because some of the

21    disputes here seem to me to be petty and possibly pointless.

22    Let me take the categories, or at least the first five of them.

23    The last one, which deals with discovery involving downloads

24    and mastertones in foreign countries, which is reportedly to be

25    the subject of a motion not yet filed, is one that I'm not

1  going to deal with at this time, because I believe it is

2  premature.  But I will address the other five points with you

3  in a minute.

4         Counsel, I have to say that as I read the joint

5  stipulation, I got to page 2 at the top of the page, where it

6  says, "Thus, only nine separate depositions have taken place,"

7  and I made a note for myself in large writing, "30(b)(6) plus

8  who?"

9         And when I got to the defendants' portion of the

10  argument at the top of page 6 -- bottom of page 5 carrying over

11  to the top of page 6, to be precise -- I thought, "Oh, now I'm

12  going to have the context that I need," because the defendant

13  says, correctly at lines 1 to 2 on page 6, "The request for

14  additional depositions must be considered in the context of the

15  depositions already taken."

16         And then, the defendants correctly point out that if

17  the parties seeking additional depositions has injudiciously

18  taken ten insignificant depositions, the Court isn't going to

19  instantly give them another ten to take the depositions that

20  they really needed and should have taken in the first place.

21         That said, the defendants point out Mr. Harrington's,

22  Mr. Jobs' and Mr. Iovine's deposition as pointless and

23  needless, but it wasn't until I looked at Ms. Lemoine's

24  declaration in paragraph 2 that I saw the names of the

25  deponents and nowhere does anybody tell me who these deponents

5

1    are.  A couple of them, obviously, I know; they were subject of

2    motions -- Mr. Iovine and Mr. Jobs.

3            But I do think there's an issue here as to whether

4    some of the ten were wasted, although I couldn't say that Mr.

5    Iovine's and Jobs' depositions were not relevant here.  I'm

6    hardly shocked that when you take someone at the apex of the

7    ladder like Mr. Jobs for a couple of hours, you don't get much

8    useful information.  So, Mr. Busch and Mr. Guilford, I'm going

9    to tell you I think you wasted some of your ten, which doesn't

10   make the Court more inclined to give you a large extra number

11   of depositions.

12           But I'm going to do this out of order.  There are two

13   -- well, maybe I'll do it from the bottom up.  The sixth

14   request, which is laid out on page 3, starting at line 16, I

15   already said I'm not going to deal with because I haven't seen

16   the other motion and I don't have a context for it.

17           If I move up on page 3 to line 5, we have the issue

18   regarding the deposition of Scott Ravine, who has been deposed

19   by Mr. Busch in another litigation, the Bridgewater case, and

20   Mr. Ravine's deposition in that case is subject to a protective

21   order.

22           It troubles me that so much has been made of the fact

23   that Mr. Busch is even raising the fact that he knows of the

24   Ravine deposition, which he took, and that there have been

25   nasty grams from Patterson Belknap, who defended Mr. Ravine in

1    that deposition on behalf of UMG, to Mr. Busch saying, in

2    essence, you're perilously close to violating the protective

3    order, if you haven't violated it by even discussing the fact

4    that you know about the Ravine deposition, which as I said

5    before Mr. Busch took.

6         And I see on page 80 of the joint stip an e-mail from

7    Mr. Pomerantz to Mr. Guilford, cc to Mr. Busch, which in

8    paragraph number 2 makes the same point.  Indeed, it states,

9    "In our view, the very fact that you're using your knowledge of

10   information you obtained under the protective order in that

11   case," referring to the Bridgeport case, "to advantage your

12   client in this case already raises serious questions regarding

13   compliance with the Bridgeport protective order."

14        Counsel, I have to tell you, Mr. Busch took the

15   deposition.  He has hardly revealed anything that's protected.

16   He's merely said that there's a deposition on the same subject

17   matter and it certainly appears to the Court that he thought

18   that an agreement would be struck to avoid retaking Mr.

19   Ravine's deposition here.  Perhaps he should have pursued the

20   issue earlier, but it is not shocking to me that Mr. Busch had

21   some expectation that you'd work this out.

22        If Munger Tolles wants to take the position that

23   Munger Tolles was not present at the Bridgeport depositions,

24   did not help to prepare the witnesses, and that because other

25   Universal counsel handling a different matter were present who

1  might not have handled it as Munger would in defending this

2  case and, therefore, the deposition shouldn't be used, then I'm

3  inclined to think, all right, maybe Mr. Ravine needs to be

4  deposed here.

5        It just strikes me as a pretty hard line point that

6  Patterson Belknap didn't defend him well enough, and frankly,

7  if I were Mr. Busch I would be going into the court which

8  handled Bridgewater (sic) and saying, "We couldn't reach an

9  agreement to avoid a repetitive deposition.  I do wish to have

10  an order from this Court that if Mr. Ravine, having been

11  prepared differently by new counsel testifies differently in a

12  new deposition on the same subjects, then I want to be able to

13  use the deposition taken in that case to impeach him, whether

14  at his deposition or at trial."

15        But if that's the bottom line that there's an

16  insistence that the deposition from the Bridgeport case on the

17  same issues -- and I'm not hearing anybody saying they're not

18  the same issues -- cannot be used here, then it doesn't seem

19  unreasonable to permit Mr. Ravine to be deposed in this case.

20        **MR. KLAUS:**  I think, your Honor -- this is Kelly

21  Klaus -- and I think that the problem with Mr. Ravine -- taking

22  the deposition -- there's been absolutely no showing as to why

23  it would be relevant here.  This is someone who -- the case has

24  been pending for a year.  Mr. Busch took the deposition of Mr.

25  Ravine in the Bridgeport case back in --

1          **THE COURT:**  Except he's supposed to have forgotten

2    that under the protective order, according to you.

3          **MR. KLAUS:**  I'm sorry?

4          **THE COURT:**  He's supposed to have lost all memory of

5    that according to you if he's going to comply with the

6    protective order.

7          **MR. KLAUS:**  It's not a matter of not losing out of

8    the protective order, your Honor.  I think that the concern is

9    it's not just Mr. Ravine.  There have been other depositions

10   and other statements have been made with respect to other

11   witnesses who were deposed in the Bridgeport case, which is not

12   related to this case.

13          There are provisions in the rule, there are

14   provisions in the statute for relating litigation for having

15   cross over between two cases, where you have an identity of

16   plaintiff.  The plaintiffs in that case were different, there

17   were a number of defendants who were different and there is a

18   protective order in the case which is very explicit that the

19   materials that are gained in restricted confidential or

20   attorneys eyes only discovery in that case are to be used

21   solely for the purpose of litigating that case.

22          **THE COURT:**  Mr. Klaus --

23          **MR. KLAUS:**  Not other cases and that -- I'm sorry, I

24   just want to finish this point, just to make sure that this is

25   not a petty concern of ours, which is that if Mr. Busch wants

9

1    to represent a different party, different litigation, he

2    certainly is entitled to do that.  The fact that what has been

3    troubling to us is that a number of those depositions seem to

4    have been -- to always be coming back and being thrown back at

5    us as, "I now need to take that person because I've learned of

6    something else in a different case."

7            The only other thing that I want to say about Mr.

8    Ravine's deposition is that independent of the protective

9    order, is that there's no justification for why -- there's no

10   good cause for why his deposition ought to be taken in this

11   case.  This is somebody who --

12           **THE COURT:**  Now, wait.  Let me stop you, Mr. Klaus.

13   We only need that if he's beyond ten and let me back up a

14   minute to is it 9 versus 11?  Again, and perhaps it's because

15   this is an expedited proceeding with expedited briefing, I do

16   not have a clear enough record on several issues to make calls

17   that I'm being asked to make.  So, let me try and clear up some

18   of the questions I have that I wish were clearer in -- the

19   answers to which I wish were clearer in these papers.

20           I see that there were e-mails asking about two of the

21   witnesses who were produced as 30(b)(6) witnesses; that is, e-

22   mails asking to take their depositions.  Were those individuals

23   ever noticed for deposition?

24           **MR. KLAUS:**  Yes.  The two individuals are Rand

25   Hoffman.  Rand Hoffman is a person who signed the 2003

1    agreement between the parties, the head of legal and business

2    affairs for Interscope Records.  He's somebody who, from the

3    very beginning, Mr. Busch asked us to make available for

4    deposition in this case.  There's never been a dispute that he

5    would be a relevant witness.  And though he clearly -- he was

6    noticed as a percipient witness.

7          The second person is Mr. Kinswell and Mr. Kinswell,

8    who is designated as a 30(b)(6) on two topics, also was

9    somebody and we've got an e-mail on this.  I think it's Exhibit

10   Number -- it's either Exhibit Number 1 or Number 2 of Ms.

11   Lemoine's declaration which is an e-mail from Mr. Guilford back

12   in the early part of this year that lists both of those

13   individuals.

14         **THE COURT:**  I understand that.  That's why I'm saying

15   I've seen e-mails saying, "We want to take their depositions."

16   But in my experience when I was litigating cases instead of

17   deciding them, it is not unusual for parties to discuss who it

18   is they want to take and then if somebody is being proffered as

19   a 30(b)(6) witness, they are taken as a 30(b)(6) witness, not

20   independently of the 30(b)(6) topics and sometimes they wound

21   up being taken as both a 30(b)(6) and for topics beyond the

22   30(b)(6).

23         And what is not clear to me is I don't have the

24   caption pages or any other way of having clarity on what's in

25   front of me as to in what capacity Mr. Hoffman and Mr. Kinswell

1   were taken.

2          **MR. KLAUS:**  Your Honor, they were both -- their

3   depositions were asked for.  We agreed to produce them well in

4   advance of the service of the 30(b)(6), but 30(b)(6) notice was

5   served on May 12th of this year, at a time when both Mr.

6   Kinswell and Mr. Hoffman had already been agreed to be

7   produced.

8          **THE COURT:**  And were they --?

9          **MR. KLAUS:**  And the deposition transcripts of those

10  individuals -- and we'd happily submit them -- make clear that

11  at the outset of the deposition there was a question and answer

12  period between Mr. Busch and my colleague, Mr. Pomerantz, where

13  he said, "I understand that you're also making these

14  individuals available on certain topics.  Will you tell me

15  which topics in the notice they're being made available in

16  response to?"  And that was done.

17         **THE COURT:**  All right.  That I didn't have.

18         **MR. KLAUS:**  I don't think Mr. Busch will dispute it,

19  but I'm happy to submit those deposition transcripts.

20         **THE COURT:**  Mr. Busch?

21         **MR. BUSCH:**  Your Honor, I've let Mr. Klaus go on.

22  I've been quiet, waiting for my turn here.  First, on the issue

23  of the 30(b)(6), Mr. Hoffman, Mr. Kinswell, Mr. Ostroff, these

24  witnesses that were deposed were all identified as being

25  30(b)(6) witnesses and Mr. Klaus is correct that at the outset

1    of the deposition I asked Mr. Pomerantz in each case, "Are

2    these people being proffered on 30(b)(6) topics?"  And they all

3    were.

4         If your Honor's question is did I question them

5    solely on the 30(b)(6) topics or not, or did I ask questions

6    beyond those topics, I'd have to review the transcript, but I

7    would assume that some of the questions I asked may not have

8    been just on the topics that were identified as 30(b)(6)

9    topics.  But each of them were proffered as 30(b)(6) witnesses

10   on certain topics.

11        **THE COURT:**  Mr. Kinswell was proffered on topics 11

12   and 18.  Is my memory serving me correct on that?

13        **MR. KLAUS:**  And if I could just say -- this is Mr.

14   Klaus, your Honor -- the one thing I think was missing from

15   what Mr. Busch just said was the clear statement that these

16   were people -- these were witnesses who had had requested them

17   to be deposed in their percipient capacity well before there

18   was ever a 30(b)(6) notice.

19        **MR. BUSCH:**  I don't think that's right as it relates

20   to Mr. Ostroff.  In fact, I'm relatively certain it's not right

21   as it relates to Mr. Ostroff.  As it relates to Mr. Kinswell

22   and Mr. Hoffman, that may be right.  But I don't think that's

23   right as it relates to Mr. Ostroff.

24        **THE COURT:**  How many witnesses were produced as

25   30(b)(6) witnesses?

1          **MR. KLAUS:**  I think, your Honor, that the only ones

2    to testify as 30(b)(6) witnesses were Mr. Hoffman on certain

3    topics and Mr. Kinswell.  I don't remember whether Mr. Ostroff

4    was designated as a 30(b)(6) witness on any topics in F.B.T. or

5    in the Eight Mile case.

6          **MR. BUSCH:**  That's not correct.  Mr. Ostroff was

7    designated as a 30(b)(6) witness on certain topics.

8          **MR. KLAUS:**  For the F.B.T. case or the Eight Mile

9    case?

10          **MR. BUSCH:**  May I finish, please?

11          **MR. KLAUS:**  For the F.B.T. -- he was in the Eight

12    Mile case, though.

13          **THE COURT:**  Mr. Busch, go ahead and finish but please

14    answer that question.

15          **MR. BUSCH:**  Mr. Ostroff was identified as a 30(b)(6)

16    witness on certain topics.  Mr. Kinswell was identified.  Mr.

17    Hoffman was identified.  And I believe Mr. Paterno was also

18    identified, although that may have been in the Eight Mile case.

19    I'd have to go back and check to be certain on that.

20          **THE COURT:**  All right.  But with respect to Mr.

21    Hoffman, Kinswell or, critically, Ostroff, were they all

22    designated as 30(b)(6) in this case, as opposed to the Eight

23    Mile case?

24          **MR. BUSCH:**  I believe that is correct.  I can go back

25    and double check and look at the transcript, but I am

 1    relatively certain that is correct.

 2         **THE COURT:**  Frankly, this is one of the points that I

 3    find somewhat disappointing.  If people were individually

 4    noticed and happen to overlap with 30(b)(6) topics so there

 5    were no other people produced on the 30(b)(6), it seems to me

 6    like there's double counting one way or another.  It doesn't

 7    seem to me like there were 11 depositions.  I originally

 8    understood it as you were counting 30(b)(6) and as the 9th and

 9    then counting Kinswell and Hoffman and 10th and 11th.

10         **MR. BUSCH:**  I'll also say, your Honor, I'm not

11    certain of this, either.  I'm not certain of this, either, but

12    there were one or two people on financial matters that were

13    deposed and I'd have to go back and check, but my recollection

14    is that they were identified as 30(b)(6) on the financial

15    issues that were on our 30(b)(6), but I may be wrong about

16    that.

17         **THE COURT:**  Thank you, Mr. Busch.  But if all of the

18    witnesses who were produced in response to notices directed to

19    individuals filled out the 30(b)(6), it seems like you're

20    getting a double count, if you count them both as individuals

21    and then you count the 30(b)(6) for which no one else was

22    required, as an additional deposition when an additional one

23    wasn't taken.  So, I'm inclined to believe that, at most,

24    you've got 9 or 10 depositions here and not the 11.

25         And again, it strikes me as a bit petty and Mr.

1   Klaus, you accurately picked up on the Court's concern that the

2   arguments regarding Mr. Ravine's deposition and Mr. Busch's

3   knowledge of that deposition were viewed by the Court as

4   somewhat petty here.

5         Mr. Busch --

6         **MR. KLAUS:**  Your Honor, if I could just -- Mr. Klaus

7   -- if I could just -- I don't want to beat the dead horse --

8         **THE COURT:**  And I don't want you to, so let me go

9   ahead and ask Mr. Busch the more salient question here.

10        Mr. Busch, why do you need Mr. Ravine?

11        **MR. BUSCH:**  Mr. Ravine is the head of the licensing

12  department at Universal that enters into the agreements with

13  third parties for licensing of the masters for compilation

14  albums and otherwise.

15        **THE COURT:**  And what's that got to do with the issues

16  here?

17        **MR. BUSCH:**  The issue in this case -- one of the

18  issues in this case -- one of the predominant issues in this

19  case is whether the agreements between Universal and the third

20  party digital download and mastertone providers are license

21  agreements or not.  It is our view that they certainly are

22  license agreements.  It is the position of Universal that they

23  are resale agreements.

24        The agreements that Universal undoubtedly admit are

25  license agreements that they enter into with third parties,

1   where they license the masters, we believe will show are very

2   close to if not identical to the agreements that have been

3   produced in this case.  If Universal is admitting that those

4   are license agreements and the terms are similar and the

5   provisions are similar, we believe that advances our case to

6   show that the agreements with the digital download and

7   mastertone providers are license agreements and that Universal

8   should be accounting to the plaintiffs on the 50/50 licensing

9   provision for those agreements, just like they do for the

10  compilation album agreements.

11          **THE COURT:**  And Mr. Busch, is it your assertion that

12  you didn't notice Mr. Ravine's deposition in your first 10

13  because you anticipated that an agreement to use his deposition

14  on the same or similar issues in another case would obviate the

15  need for noticing him in this case?

16          **MR. BUSCH:**  That's what we were hoping for.  We took

17  the deposition several months ago and I asked about it almost

18  immediately and never really got a straight answer until I was

19  told no just recently.

20          **MR. KLAUS:**  That's just not correct, your Honor.

21          **THE COURT:**  Go ahead, Mr. Klaus.

22          **MR. KLAUS:**  The last time that we were before you,

23  what had happened, Mr. Busch stood up and said that he needed

24  to use the deposition or take the transcript from the

25  Bridgeport case and take the deposition of somebody named Glen

17

1   Sanatar.

2           **THE COURT:**  Right.

3           **MR. KLAUS:**  That was who was mentioned then for the

4   first time.  We then found out after that deposition that it

5   wasn't Mr. Sanatar; that all of a sudden it was Mr. Ravine who

6   Mr. Busch said that he needed to take.  So, this was not

7   something where there had been a deposition in July and there

8   was immediately requested, "Oh, I need this testimony for this

9   case."  This is something that has come up within the last

10  couple of weeks, is that Mr. Ravine all of a sudden has to be

11  requested.

12          **MR. BUSCH:**  Since Mr. Klaus is saying that, let me

13  back up because that's not --

14          **THE COURT:**  Counsel, would you just indicate who's

15  speaking?

16          **MR. BUSCH:**  I apologize.  This is Richard Busch for

17  the record, your Honor.

18          **THE COURT:**  Go ahead.

19          **MR. BUSCH:**  I approached Mr. Klaus' partner at or

20  around the time of the mediation in this case and said that the

21  deponents that had been taken in the Bridgeport case --

22  basically the proposal that your Honor had mentioned.  He said

23  he would check with his clients and get back to me.  The first

24  time I mentioned it was not at the hearing, but rather I had --

25  I believe if there's a record of that hearing, I had said that

1    I had spoken to Mr. Pomerantz about it and not got an answer.

2           Mr. Klaus is correct that at the hearing I mistakenly

3    said Sanatar, because I took two depositions, one of the

4    financial person on the compilation album.  They produced two

5    witnesses, one of whom was the CFO and then the person in

6    charge of licensing.  And my request was for both and I had

7    either forgotten or had gotten the names mixed up at the

8    hearing.  But I did speak to Mr. Pomerantz about it earlier

9    than that and had asked for the right to take the deposition or

10   use the transcripts and the reason why I raised it at the court

11   hearing was because I had not gotten an answer.

12          **MR. KLAUS**:  And your Honor, I was at the mediation,

13   Mr. Pomerantz was, but I don't think the name Mr. Sanatar was a

14   slip.  I think that was mentioned several times over again.

15          **THE COURT**:  I do remember it.  I asked for the

16   spelling of his name.

17          **MR. KLAUS**:  And they come back to the issue with

18   respect to Mr. Ravine in terms of whether it's a deposition

19   that is justified.  The issue in this case is a really narrow

20   one.  The issue in this case is whether or not when Universal

21   sells a digital download through iTunes, as opposed to at the

22   Corner Tower Records where they used to sell vinyl LPs and CDs,

23   are those the same thing under the agreement?  Is that selling

24   a record?

25          And there is a provision that talks about licensing

1    and there is no dispute in the case about what the paradigmatic

2    cases of licenses are.  Sync licenses, when you put a song on a

3    movie sound track or licenses when you license somebody else to

4    make their own compilation -- some other record company to make

5    a compilation album.  And that's the type of licensing that Mr.

6    Ravine is involved in.  If somebody wants to make "Greatest

7    Hits of the 1980s" or "Greatest Hip Hop Hits of the Early Part

8    of the 21st Century," they can go to somebody to take a license

9    -- it's a record company that's making its own record and its

10   own albums.

11          The core issue in this case is, you know, what types

12   of transactions do the parties understand what is included

13   within selling a record versus those sorts of licensing on

14   other uses?  And given that there is no mystery about what it

15   is that happens when one record company licenses songs for a

16   compilation album by another record company, it would certainly

17   be the case if this were an early on deposition of Mr. Ravine.

18   Probably wouldn't have had good grounds to object to it.  At

19   this point, just saying that he's involved in licensing and

20   whether this is a license makes it an issue, I don't think cuts

21   it, given the number of depositions that are in the case.

22          **MR. BUSCH:**  Your Honor, this is Richard Busch.  Mr.

23   Klaus states the issue that his version of the facts are, in

24   fact, the case.  They could not be more wrong and contrary to

25   the evidence.  That's their view.

1          Our view is that Universal is licensing the master

2    recordings to iTunes just like they licensed the master

3    recordings to third parties for release.

4          **THE COURT:**  I don't think he said anything different.

5    What he said is the issue is narrow.

6          **MR. BUSCH:**  No, no, but my point is he said that the

7    licensing provision in the agreement relates solely to --

8          **THE COURT:**  No, that's not what he said.  What he

9    said is the question here is are downloads, such as to iTune,

10   the same as selling records or the same as licensing, which

11   historically has encompassed such things as providing tracks

12   for a movie sound track or for a compilation.

13         **MR. BUSCH:**  No -- right.  But what his point is is

14   that the agreement that is at the heart of this case provides,

15   where there is no dispute, about what other types of licenses

16   that are covered by the licensing provision.  And what he said

17   is a fact issue that we're going to prove the licensing that

18   Universal does to iTunes is, in fact, the same and is covered

19   by that provision in the agreement.  It will be a fact for

20   trial.

21         **MR. KLAUS:**  And my only point, your Honor, is I don't

22   know what the issue of Mr. Ravine's -- Mr. Ravine doesn't deal

23   with iTunes.  Mr. Ravine deals with --

24         **MR. BUSCH:**  Mr. --

25         **MR. KLAUS:**  -- I'm sorry, if I could finish, Mr.

1    Busch.  He deals with, and this is -- it is clear.  The head of

2    Mr. Busch's company, Mr. Martin, has admitted this, that what

3    is paradigmatically involved in the licensing provision is

4    licensing compilation albums.  It's licensing things for

5    soundtrack.

6          Now, it is true that the claim of the plaintiff in

7    the case is that when authorization is given to a digital

8    download provider that that somehow is more like the

9    paradigmatic type of license that is like a sale of a record.

10   That's their allegation.

11         **THE COURT:**  Mr. Klaus, is your point essentially

12   there's no need to take Ravine because you can all stipulate

13   that the giving out of songs in the UMG library for use on

14   compilation albums by someone else is treated as a licensing

15   event?

16         **MR. KLAUS:**  If I understand the question correctly, I

17   think the answer is --

18         **THE COURT:**  Actually, I don't think that was a hard

19   one.

20         **MR. KLAUS:**  I think it is undisputed in the case that

21   when Universal licenses a track to another record company for a

22   compilation album, that that falls within the licensing for

23   other uses.

24         **MR. BUSCH:**  And our position --

25         **THE COURT:**  Hang on.  Wait a second, Mr. Busch.  And

1  isn't your point, Mr. Klaus, there is really no point in taking

2  Mr. Ravine's deposition because the only thing that he's got

3  relevant to say here is that when a track is given to another

4  record company for a compilation it's treated as a licensing

5  event?  And that's no longer in dispute?

6        **MR. KLAUS:**  My point is that there's been no showing

7  that that's why he is necessary for a deposition.  The one

8  reason I'm hesitant, your Honor, to say that is because I think

9  we certainly want to make the argument and to have the right to

10 make the argument at trial that when somebody licenses a --

11 licensing for a compilation album and licensing a sync track

12 for a movie, that that's what's encompassed within that, that

13 we should be able to have a discussion about that, to inform

14 the finder of fact about it.

15        But we don't see what it is -- why it is that a

16 deposition of Mr. Ravine at this point, given the number of

17 other depositions that have been in the case, why there's good

18 cause to do that.

19        **THE COURT:**  Has there been deposition testimony about

20 licensing for compilations?

21        **MR. KLAUS:**  There, in fact, has been.  I think, as I

22 indicated, Mr. Martin, who's Mr. Busch's client, said, "Yes,

23 that is one of the things that's clearly encompassed within the

24 license for other uses."

25        **THE COURT:**  Has anybody said that on your side?

1          **MR. KLAUS:**  I don't have the transcripts all in mind,

2   but I think when anyone has been asked what was encompassed

3   within the licensing on other uses, I think everyone who's

4   involved in this agreement and knows about this agreement has

5   said that it encompassed making licenses for compilation albums

6   sync licenses.

7          **THE COURT:**  All right.

8          **MR. KLAUS:**  That's a clear understanding of it in the

9   music industry.

10          **THE COURT:**  I'm still inclined to permit Mr. Ravine's

11   deposition -- where is he based?

12          **MR. BUSCH:**  Los Angeles, your Honor.

13          **THE COURT:**  I'm still inclined to permit his,

14   perhaps, for a limited period of time.  But due to the fact

15   that I think Mr. Busch could have reasonably believed that an

16   arrangement would be worked out so that he wouldn't have to

17   retake Mr. Ravine on issues that may be relevant and,

18   particularly, Mr. Klaus, given your hesitation about what the

19   fact finder needs to hear on this issue and how broad it needs

20   to be and it sounds like you can't come up with a fact

21   stipulation or two that would obviate the need for it, I'm

22   inclined to say how long do you need, Mr. Busch for Mr.

23   Ravine's deposition?

24          **MR. BUSCH:**  No more than a half a -- three hours of

25   deposition time would probably be fine.

1          **THE COURT:**   Three hours for Ravine.

2          **MR. BUSCH:**   Thank you, your Honor.

3          **THE COURT:**   Now, I haven't given it to you yet, but

4    I'm just writing it down.  I am inclined to give it to you.

5          We'll back up and go over them.  With respect to --

6    I'm doing them still in reverse order, but I'm going to --

7    well, let's address Mr. Weinberg next, who's in New York,

8    usually?

9          **MR. KLAUS:**   He's in New York for a good chunk of the

10   time and he also maintains an office in Los Angeles.

11         **THE COURT:**   Okay.  So, you don't have to necessarily

12   go to New York.  You could do it on a date when he's out here.

13   My only question on Mr. Weinberg is I see asserted in the

14   papers that Mr. Weinberg may be the trial witness for topics 11

15   and 18 on the 30(b)(6) deposition for which Mr. Kinswell was

16   proffered as a witness.  Is my understanding on that correct?

17         **MR. KLAUS:**   I'm not sure which part of the papers

18   you're talking about, your Honor.

19         **THE COURT:**   I have -- I'm looking at page 41,

20   paragraphs 11 and 12.  I believe this is Mr. Busch's deposition

21   and he's referring in -- it starts on line 18 to Mr. Kinswell's

22   deposition on May 23rd in paragraph 12.  He says, "Counsel for

23   defendants stated on the record at Mr. Kinswell's deposition

24   that they might also choose to designate Mr. Weinberg to

25   testify concerning topics 11 and 18."

1          And in paragraph 11, at lines 18 to 19, it's

2    indicated that, "Defendants' indicated that Mr. Kinswell was

3    their 30(b)(6) designee for topics 11 and 18."

4          Now, again, Mr. Klaus, this is in Mr. Busch's

5    deposition.  I didn't see a push back on this point.  I do see

6    in e-mails back and forth between Mr. Guilford and Mr.

7    Pomerantz -- again, I'm referring to the e-mail at the top of

8    page 80 of this joint stipulation -- and item number 3, Mr.

9    Pomerantz states, "We reserve our right to call David Weinberg

10   as a witness in the F.B.T. matter."  And my question is, is

11   what Mr. Busch is saying in paragraphs 11 and 12 disputed or

12   not?

13         And before you answer the question, let me tell you

14   where I'm going with it.  I don't try and be abstruse.  If, in

15   fact, the defense produced Mr. Kinswell as the person most

16   knowledgeable on topics 11 and 18, but it is reserving its

17   right to produce instead at the trial Mr. Weinberg as the

18   witness on these two topics, then I have a question of whether

19   Mr. Weinberg ought to be deposed when he's in LA.

20         **MR. KLAUS:**  I think that the problem is that we've

21   always said in this case -- and this is no mystery to -- Mr.

22   Busch has taken Mr. Weinberg's deposition in the Bridgeport

23   case at least twice.

24         **THE COURT:**  And I'm sure he can't talk about it and

25   is supposed to have no memory of it under the protective order.

1          **MR. KLAUS:**  Here's --

2          **THE COURT:**  I would hate to see him get another nasty

3    gram from Patterson Belknap if he were to comment on it in this

4    case, so go ahead.

5          **MR. KLAUS:**  Setting that aside, your Honor, it's

6    always been known that we might call -- Mr. Weinberg worked in

7    exactly the same group that  Mr. Kinswell did, the E Labs

8    group.

9          **THE COURT:**  Okay, but --

10         **MR. KLAUS:**  Which is the group that did the digital

11   deals.

12         **THE COURT:**  I understand that, but again, I don't

13   mean to cut you off.  You can respond, but I want you to

14   respond precisely.  It is asserted on page -- what did I say it

15   was -- 40 in paragraph -- no, page 41, in paragraphs 11 and 12,

16   that you produced as your most knowledgeable 30(b)(6) witness,

17   Mr. Kinswell, on topics 11 and 18 and yet you have indicated

18   that you may designate Mr. Weinberg to testify concerning

19   topics 11 and 18 and I think if what your argument is is that,

20   "They're equal and knowledgeable on 11 and 18 so we teed up for

21   the 30(b)(6) one witness, but when we go to trial, we're going

22   to tee up the other equally knowledgeable," I have an issue

23   with it.

24         So, my more precise question, Mr. Klaus, is looking

25   at paragraphs 11 and 12 on page 41, do you want to push back on

1    that or no?  Because if you're going to -- I don't want to say

2    bait and switch -- but if you're going to tee up as a 30(b)(6)

3    witness one guy and go to trial using the other equally

4    knowledgeable guy, I have a problem with it.

5         **MR. KLAUS:**  Well, here's the issue, because I'm

6    looking at exactly the portion of Mr. Kinswell's transcript and

7    what Mr. Pomerantz said is at the very beginning of the

8    deposition -- by the way, I looked at Mr. Ostroff's deposition

9    transcript and there was no discussion of the 30(b)(6) there.

10   But there was a discussion of the 30(b)(6) at the beginning of

11   Mr. Kinswell's deposition transcript.  And Mr. Pomerantz said,

12   "We're going to designate him to testify on topics 11 and 18."

13   What he said is, "We may also designate Mr. Weinberg."

14         With that point, his deposition has been under

15   discussion.  Mr. Weinberg's name as a possible deponent has

16   been under discussion for some time and there were other people

17   who Mr. Busch was burning his way through when he was taking

18   his depositions.  So, Mr. Weinberg was out there and I think

19   all that Mr. Pomerantz said is, "The same subject that Mr.

20   Kinswell knows, Mr. Weinberg may also know and we may also --

21   if you take his deposition -- we may also designate him on

22   that."

23         **THE COURT:**  Well, you could have also designated --

24         **MR. KLAUS:**  The only thing I will say is --

25         **THE COURT:**  You could have designated him as your

 1  30(b)(6) on 11 and 18, too.  Yes?

 2          **MR. KLAUS:**  Yes, we could have.

 3          **THE COURT:**  Okay.

 4          **MR. KLAUS:**  Yes, we could have.  But, first of all, I

 5  don't think there's anything in the Federal Rules that says

 6  that the person who you designate has to be the person who is

 7  absolutely the most knowledgeable.

 8          Now, in this case --

 9          **THE COURT:**  Well, I think the Rule does require you

10  to produce the person most knowledgeable.  I think that's how

11  the Rule is phrased.  If what you're saying is there are a

12  couple of people who are equally knowledgeable, I guess it's

13  just the kind of litigation strategy of it that has me

14  disconcerted.

15          **MR. KLAUS:**  I don't -- with all due respect, your

16  Honor -- I don't think that this is a case of litigation

17  strategy.  I think the issue is that we've said was, "We're

18  producing Mr. Kinswell as a corporate representative, meaning

19  the answers you get on these topics we're stuck with as the

20  answers of the company," and that's what 30(b)(6) is.

21          We said, "We may also have the person you also -- you

22  were talking about deposing, as was the case back in May, when

23  Mr. Kinswell was being deposed -- the person who you've also

24  had indicated you might want to depose is Mr. Weinberg."

25          Now, there's never been a dispute on our part that

1    Mr. Weinberg has relevant testimony in this case.  We've always

2    made very clear that we may be calling Mr. Weinberg as a

3    witness, so there could be no claim of surprise.  The issue

4    here is that we've now gone through all of the other

5    depositions in the case and I think as is fairly clear, a

6    number of them were just simply a waste of time -- Jimmy

7    Iovine's was a waste of time.

8         **THE COURT:**  Well, we'll get to that.  I think there's

9    a consequence for taking depositions that really are largely a

10   waste of time and I've already made that point.

11        **MR. KLAUS:**  Okay, but that -- and so, the only point

12   I'm making on Mr. Weinberg is there is no bait and switch with

13   Mr. Weinberg.  There's no "we gave you one person, we're going

14   to produce another."  We've always made clear and it's always

15   been known to Mr. Busch that Mr. Weinberg has submitted

16   declarations in this case, taking about his work at E Labs on

17   motions before your Honor.  It's always been known he might be

18   somebody that would be deposed.  And had we been in a situation

19   where there were not the number of depositions that had already

20   been taken, as had been the case when we were discussing this

21   earlier with Mr. Busch, we would have produced Mr. Weinberg for

22   a deposition.

23        **MR. BUSCH:**  Your Honor --

24        **MR. KLAUS:**  We're now at the point where we're beyond

25   the limit and we think, as I said, we think there has to be

1  some consequence for having taken the number of depositions

2  that have been taken and putting us through this expense.

3          **MR. BUSCH:**  Your Honor --

4          **THE COURT:**  Mr. Busch?

5          **MR. BUSCH:**  Yes, your Honor, Richard Busch.  Three

6  things that were said I have to respond to.  First of all, Mr.

7  Guilford reminds me on Ostroff, the only reason we took Mr.

8  Ostroff's deposition is because we asked Mr. Klaus' partner,

9  Mr. Pomerantz, to advise us who they were reserving their right

10 to call to trial, and they said they were reserving the right

11 to call Ostroff at trial, so obviously we needed to take that

12 deposition.

13         I don't recall if there was a 30(b)(6) or not.  Mr.

14 Klaus represents there was no mention of it, but the only

15 reason why that deposition went forward is because of that

16 representation that they were going to be calling him as a

17 witness at trial, or at least reserving their right to do so.

18         **THE COURT:**  All right.  Then I --

19         **MR. BUSCH:**  As it relates to Mr. Weinberg, the way

20 this sequence really happened was when we served our 30(b)(6)

21 notice and we were talking about this, we were trying to

22 schedule Mr. Weinberg, as well as Mr. Kinswell, but every time

23 we tried to schedule Mr. Weinberg -- and I have a paper trail

24 of this -- he was either -- he was somewhere where we couldn't

25 depose him.  He was in New York when we were in Los Angeles.

1  He was in Los Angeles when we were in New York.  He wasn't

2  available on this day and he wasn't available on that day.

3  That's why it got away from us and they have taken the position

4  that they are reserving their right to call him at trial.  So,

5  we want to question him.

6          **THE COURT:**  And how long do you think you need him

7  for?

8          **MR. BUSCH:**  A half a day at most.  I would say it

9  depends on what his testimony's going to be.  I mean, it could

10  be a day.  It could be a day.  I would try my best to make it

11  less than that.

12          I do want to say one last thing, because we keep

13  hearing from Mr. Klaus, and I've never responded to this yet,

14  that the deposition of Mr. Iovine was a waste of time and the

15  deposition of Mr. Jobs was a waste of time.  Nothing further

16  could -- nothing further from the actual truth on that.

17          Mr. Iovine did not, as they say in their papers,

18  merely utter the word "license" and that is why we wanted to

19  depose him; same with Mr. Jobs.  Rather, he called the

20  agreements that are at the heart of this case license

21  agreements and it is our view that we will have expert

22  testimony on and factual testimony on that if they are license

23  agreements, we win.

24          So, it is more than just the uttering of the phrase

25  "license."  Mr. Jobs issued a public statement in which he

1   called these agreements licenses over and over again.

2           So, Mr. Klaus and I can debate all day long whether

3   they were or were not good depositions.  Our view is they

4   certainly were not a waste of time and will be crucial to our

5   case.

6           **MR. KLAUS:**  I would just point out that Mr. Busch

7   previously said that the reason he needed to depose Mr. Ravine

8   is because you need to go behind for the way something is --

9   whether it's denominated a license or not a license -- to

10  determine the substance of the transaction.  And yet, what he

11  said about Mr. Iovine and Mr. Jobs is that because they used

12  the word license when referring to certain types of agreements,

13  that that automatically proves his case that the subject of

14  licensing provision --

15          **MR. BUSCH:**  This is Richard Busch.  I never said it

16  automatically proves our case, but what I did say is if Jimmy

17  Iovine, the head -- the chairman if Interscope -- and if Steve

18  Jobs -- the head of iTunes -- who licenses things every day of

19  his life believes these agreements to be license agreements, it

20  certainly is probative, relevant evidence --

21          **THE COURT:**  Well, I --

22          **MR. BUSCH:**  -- economic realities of the transaction.

23          **THE COURT:**  There's nothing like arguing in the

24  alternative.  Let's keep going and let me deal with the second.

25  I skipped over the, like I said, the fourth item which was the

1  30(b)(6) witness on the additional claim.  Everybody seems to

2  agree that that one might be appropriate and, indeed,

3  defendants' counter proposal was at one point -- and again, I'm

4  looking at page 80, Mr. Pomerantz' e-mail -- the proposal was

5  that the defense would agree to produce 30(b)(6) witness on the

6  new claim and two additional depositions of the plaintiffs'

7  choice.  That was the proposal, so everybody seems to think

8  that a 30(b)(6) on the new topic may well be required, the new

9  claim, which is why I've skipped that.

10          But let's go to the second issue and I do realize I'm

11  skipping around a bit.  Plaintiffs say they want to depose Rio

12  Caraeff and I have just a couple of pages from his deposition

13  that's attached to Ms. Lemoine's declaration.  I'm sure it's

14  attached for the qualification, which was referred to by the

15  defense, of Mr. Kinswell's suggestion that Mr. Caraeff might be

16  more knowledgeable as to certain agreements, but Mr. Kinswell

17  then said, "Well, Mr. Caraeff's not a lawyer.  He has a

18  different role."  I'm looking at page 106, lines 24 over to

19  page 107.  And that's the qualification to which the defense

20  refers that Mr. Caraeff's not a lawyer.  He's probably not the

21  person who best understands the legal working and he probably

22  never saw the agreements, either.

23          What I don't have are pages that really set up the

24  argument that Mr. Caraeff was pointed to by Mr. Kinswell as

25  more knowledgeable than him on certain of these agreements.  I

34

```
 1    do see -- well, let me get it.  It's page 106, line 11 -- well,

 2    back up to line 8, when Mr. Kinswell is asked, "Have you ever

 3    seen this agreement before?"  It's a T-Mobile agreement,

 4    apparently.

 5          He answers, "No," and the question is posed at line

 6    11, "If I asked you the same questions about this as I did

 7    about the Nextel agreement, would your answers be the same?"

 8          I don't have the pages where he's asked about the

 9    Nextel agreement.

10          MR. BUSCH:  Well, he did say -- this is Richard

11    Busch --

12          THE COURT:  No, let me finish, Mr. Busch.

13          MR. BUSCH:  All right.  That's fine, your Honor.

14          THE COURT:  And Mr. Kinswell's response is,

15    "Probably."

16          And then, he's asked, "Is that yes?"

17          And then he answers again, "I believe so, yes."

18          And the question is, "Okay and would Rio Garaeff --

19    is that his name, Rio Garaeff?"  And he's corrected to Caraeff.

20          "Would he be a better person to ask about these

21    agreements than you?"

22          And the answer is, "Probably," before the

23    qualification.

24          I don't have the questions and answers about the T-

25    Mobile agreement where Mr. Kinswell apparently started
```

1   suggesting that Mr. Caraeff would know more than him about

2   something to do with these agreements, but I really look at the

3   issue of Mr. Caraeff and I think it's teed up incorrectly.

4          To me, it looks like the issue may be should Mr.

5   Caraeff also have been designated as a 30(b)(6) on one or more

6   of these topics, because he is a person who Mr. Kinswell

7   pointed to, but again, I don't have a clear enough record and I

8   know this was done on an expedited basis to see whether this is

9   really an argument that Mr. Caraeff is a clean-up on the

10  30(b)(6) as opposed to a new deponent.  So, someone help me.

11         **MR. KLAUS:**  I would just say that the page that's

12  earlier where Mr. Caraeff's name came up at the deposition --

13         **THE COURT:**  Yep, which I don't have.

14         **MR. KLAUS:**  Okay.  But I'll read it.  It's page 323

15  of the deposition transcript of Mr. Busch and Mr. Guilford -- I

16  think probably have it, as well.  And there's a question about

17  the agreement and what Mr. Kinswell says is, "The ringtone

18  agreements were done by the mobile group, not reporting to me."

19         **THE COURT:**  And Mr. Caraeff used to be the head of

20  the mobile group when there was a mobile group?

21         **MR. KLAUS:**  Right.  Mr. Busch says, "Okay."

22         Mr. Kinswell says, "The lawyers who reported to me

23  did the legal work, but the agreements themselves, once the

24  mobile group was established" -- which I'm pretty sure by the

25  date of this Exhibit 77 was the case -- "I did not do the deals

1    or wasn't involved in the deal making in those agreements."

2              Question:  "The question is not who did the deals.

3    The question is not who would know the deals.  But the question

4    is who is the head of the department?"

5              Answer:  "The head of the department was Rio

6    Caraeff."

7              "Is he still with Universal?"

8              "Yes."

9              "What's his position now?"

10             "He runs E Labs."

11             Then there's a run of questions and then at page 333,

12   it comes back to the exchange that you have.  And the exchange

13   there is, Mr. Busch is saying, "I'm asking you now about this

14   agreement, a mobile agreement.  If I ask you this, would your

15   answers be the same?"

16             "Yes."

17             That's in the questions.  He then says, "Would Mr.

18   Caraeff be the person who would be better to talk to about

19   you?"

20             Mr. Kinswell says, "Probably," but then very quickly

21   qualifies it with the language that you've got at page 106 of

22   the joint stipulation.  He has a different role.  He's not a

23   lawyer.  He probably doesn't understand the legal workings.  He

24   probably never saw the agreements, either.

25             **THE COURT:**  What are topics 11 and 18?

1          **MR. KLAUS:**  I'm sorry?

2          **THE COURT:**  What are topics 11 and 18?  Would they

3  encompass the matters as to which Mr. Kinswell says that Mr.

4  Caraeff would probably be a more knowledgeable witness?

5          **MR. KLAUS:**  First of all, topic 18 is whether the

6  agreements between UMG and digital music providers, whether for

7  permanent downloads, subscription services or mastertones are

8  licenses.

9          And then, number 18, which is the negotiation and

10  structure of the agreements with digital music providers

11  produced in this action, including the decision to provide for

12  wholesale prices in such agreements.

13          **THE COURT:**  Hang on.  I'm taking a look at these

14  again.  Eleven is on page 53 of the joint stip materials.

15  "Whether the agreements between UMG and digital music

16  providers, whether for permanent downloads, subscription

17  services or mastertones are licenses."  And 18 is "The

18  negotiation and structure of the agreements with digital music

19  providers produced in this action, including the decision to

20  provide for wholesale prices in such agreements."

21          So, if it's in the negotiation and structure and Mr.

22  Caraeff was engaged in the negotiation, that would certainly be

23  within 18.  Yes?

24          **MR. KLAUS:**  I don't' know that he was involved with

25  the negotiation.  I would -- if he was involved in the

1    negotiation of those agreements, then I would certainly say he

2    probably has knowledge of whether he's the person who would be

3    a deponent -- a 30(b)(6) deponent on that, or whether he's

4    somebody whose information would be obtained.  Those are two

5    different questions.

6            But I thought that the point that Mr. Kinswell was

7    making after the word "probably," where he said he doesn't

8    understand the legal structure of these agreements; he's not a

9    lawyer --

10           **THE COURT:**  Yeah, but he's really here as a fact

11   witness.  The trier of fact is going to -- the Court will make

12   legal conclusions and the trier of fact will assess what the

13   fact witnesses have to say.  The fact that UMG's legal

14   department characterizes things one way or that plaintiffs

15   characterize it a different way, ultimately that's what the

16   litigation's about.  It doesn't rule the day on either side.

17           **MR. KLAUS:**  But I think the point that Mr. Kinswell

18   was making was he wouldn't have been involved in the lawyer to

19   lawyer negotiations of these agreements.  I think that's what

20   he said the first time that Mr. Caraeff's name came up, he said

21   he was a business person and that there were lawyers who both

22   Mr. Kinswell and Mr. Caraeff supervised at the same time, who

23   would have been involved in the negotiations of those

24   agreements.

25           **THE COURT:**  And again, I'm not saying you're going to

1  get them, but how long do you think you would need Mr. Kinswell

2  for, Mr. Busch?

3      **MR. BUSCH:**  Probably a half a day, but probably less

4  than half a day.  I think three hours of deposition time would

5  be enough.  Because there aren't that many mastertone

6  agreements to go through, so quite frankly, I think three hours

7  will be more than sufficient.

8      **THE COURT:**  All right.  I'm just surveying the lay of

9  the land, counsel.  So, now let's move back to the first topic.

10      Mr. Busch, I have to tell you on the first topic,

11  which is where you want five third parties, that's where I

12  think your showing is the very weakest.  You indicate you'd

13  like to depose the representatives of several of the third

14  party entities who offer Eminem masters as permanent downloads

15  and mastertones and you argue that you've got 200 of them and

16  you're only seeking to depose five and you've tried to

17  geographically cluster them, although Kansas City, Seattle and

18  San Francisco don't strike me as that clustered.  I do realize

19  that T-Mobile, Microsoft and Amazon are all in the greater --

20  Bellevue is pretty greater Seattle.  I've taken depositions up

21  there myself.

22      **MR. BUSCH:**  Your Honor --

23      **THE COURT:**  Hang on.  But I don't, Mr. Busch,

24  appreciate the need for any -- let alone five -- based on

25  what's been presented to me.  You have the agreements.  You

1   haven't pointed out any ambiguity in the agreements.  You

2   haven't pointed out what it is you need to ask these people

3   that you can't answer from the documentation.  I have no teeth,

4   if you will, on this puppy.  I just don't see any showing by

5   you -- and everybody agrees to the standard, you must make a

6   particularized showing as to why you need them.

7          After some fighting, you got all the agreements; you

8   have the 200; you've got them; they say what they say.  I don't

9   see you making any showing that you need more than the

10  agreements, which say what they say and are the operative

11  agreements.

12         Go ahead, Mr. Busch.

13         **MR. BUSCH:**  Thank you.  Again, this is Richard Busch,

14  your Honor.  The point is, your Honor, that as we discussed

15  when we first came before your Honor, you know, several months

16  ago on this issue when the defendants were resisting providing

17  the negotiator's name and making the argument that we shouldn't

18  have to take these depositions or didn't have a right to take

19  them; again, I would say several things.

20         First, Universal, because they were the party with

21  these third parties, are free without our depositions to

22  discuss the negotiations, to discuss the understanding of the

23  parties as to whether these are license agreements or not and

24  thus, the particular language in the agreement and the

25  understanding of the parties.  Without us taking at least a few

1    depositions of the people on the other side, their testimony in

2    that regard would come in unrebutted and unimpeached.

3        **THE COURT:**  Well, you've taken somebody from Apple on

4    this.

5        **MR. BUSCH:**  And we've got -- I think we got very good

6    information.  We took Mr. Jobs on this.  We also took Mr. Cue -

7    - Eddy Cue -- on this.  And I think that we will be able to

8    make a very good showing based upon their testimony that these,

9    in fact, are license agreements.

10       We have not taken any of the mastertone providers on

11   the other side and we didn't discuss this a moment ago, but in

12   the mastertone agreements there are even more specific

13   references to them being license agreements than in the

14   permanent download agreements.  There are references to

15   licenses in the permanent download agreements by the fact that

16   they are licensing the masters.

17       But in the mastertone agreements and the ones that we

18   selected, there are explicit references that we think will be

19   very persuasive to a jury.

20       Now, without us deposing the parties on the other

21   side of those negotiations, Mr. Kinswell or Mr. Weinberg or the

22   fellow that's the head of the mobile unit, could come in and

23   say whatever they wanted to say about that language and how it

24   doesn't mean what it says and it wasn't the intent of the

25   parties that they were licenses, without us having any ability

 1    whatsoever to respond to that.

 2            So, all we would like is, again, they would be very

 3    short depositions.  We've selected five.  You know, if your

 4    Honor thinks that's too many, we'd narrow it, but we haven't

 5    taken any mastertone providers and we would just like the

 6    opportunity to take a couple of those and maybe one other

 7    permanent download provider.  We've asked for five.  Certainly

 8    your Honor will rule whether that's too many; whether we get

 9    zero, five or somewhere in between.  But that is the reason

10    that we need those depositions.

11            **THE COURT:**  I'm highly disinclined --

12            **MR. KLAUS:**  May I be heard just very, very briefly,

13    your Honor?

14            **THE COURT:**  Not yet.  I'm highly disinclined on the

15    showing that's before me to give you five.  I see -- I said

16    Cutty, it was Eddy Cue who's the Apple executive who you've

17    deposed on this.  It's on page 16.  But again, it's not clear

18    to me why you need five.  There is an assertion in the defense

19    side that you wasted everybody's time taking Mr. Harrington,

20    who hasn't been addressed.  It's asserted that you wasted

21    everybody's time taking Jobs and Iovine.  You think you can

22    make hay out of the top guys at other companies referring to

23    these agreements as licenses in a lay person way -- don't know

24    whether you can or will.

25            But what about Mr. Harrington?  And Mr. Klaus, could

1    you first address -- who is he and why do you say that was a

2    waste of everybody's time?

3        **MR. KLAUS:**  Mr. Harrington is a guy in the royalty

4    department at Universal.  I think he was deposed because he

5    sent out some statements, but I don't know of any relevant

6    testimony that he had or brought to the case.

7        **THE COURT:**  Yeah, on page 14 you assert he was a

8    waste of time, essentially.

9        **MR. KLAUS:**  Your Honor, can I -- before coming back

10   to Mr. Harrington, can I just respond to one thing that Mr.

11   Busch said on the mastertone providers?

12       **THE COURT:**  Yes.

13       **MR. KLAUS:**  Because this is really the fundamental

14   problem with responding to the showing that was made in the

15   papers on the particular showing requirement is, we said we

16   have no idea why you need these depositions, why you need five

17   of them when you've already taken two depositions for the most

18   senior executives at the largest digital download provider,

19   Apple.

20           And Mr. Busch says, "We got very relevant testimony

21   from Mr. Jobs and Mr. Cue, which are going to show that --

22   which are going to rebut what Universal's going to say," and he

23   doesn't say what it is.  It's not in his papers.  We don't have

24   a chance to respond to it.

25           He says that the mastertone agreements contain

44

1  provisions that make them unlike the other agreements.  We

2  don't have them in front of us.  We have no opportunity to

3  respond to it.  We're (indiscernible).

4        **THE COURT:**  I do --

5        **MR. BUSCH:**  Your Honor --

6        **THE COURT:**  Yes, Mr. Busch, I do think this is very

7  weak.  Go ahead.

8        **MR. BUSCH:**  For Mr. Klaus to say he doesn't have the

9  mastertone agreements in front of him, they're the ones that

10  produced the agreements themselves.  The reason why we need to

11  take -- I'd be repeating myself -- we don't need to take five,

12  but we certainly need --

13        **THE COURT:**  Then why are you in front of me asking to

14  take five?

15        **MR. BUSCH:**  Well, because --

16        **THE COURT:**  Everybody's frustrating me today on this.

17        **MR. BUSCH:**  -- that you're inclined not to let us

18  take five and so what I'm saying to your Honor is --

19        **THE COURT:**  So, you high-balled me in hoping you'd

20  come out with one or two instead of the five?

21        **MR. BUSCH:**  No, I thought five would be legitimate

22  when there were 200 agreements that were produced.  I think

23  five is reasonable, but if your Honor is inclined to say your

24  Honor doesn't think five is reasonable, or five is too many,

25  what is imperative here that at least we get to take the

1   mastertone providers.  We have not taken any of those.  We have

2   taken Mr. Cue.  We have taken Mr. Jobs.  I would like -- I

3   think we certainly would like to take other permanent download

4   providers.

5           THE COURT:  So, if you got one mastertone, who would

6   you want?  And again, I'm not saying you're getting it right

7   now, but if you got one, who would it be?

8           MR. BUSCH:  Either T-Mobile or Sprint are the two

9   where the agreements are completely different.  They have the

10  licensing language, so if your Honor was inclined to let us

11  take anything, T-Mobile or Sprint would be the -- either of

12  those would be okay.  I'd like to take them both, but if your

13  Honor's only going to let us take one, it would be one of those

14  two.

15          As to Harrington, your Honor, I think it needs to be

16  responded to.

17          THE COURT:  And where is Sprint?

18          MR. BUSCH:  Where is Sprint?

19          MR. KLAUS:  Kansas City.

20          MR. BUSCH:  Spring is in Kansas City.

21          THE COURT:  All right.

22          MR. BUSCH:  T-Mobile is up by Seattle.  Sprint is in

23  Kansas City.

24          THE COURT:  Where specifically is T-Mobile?

25          MR. BUSCH:  Either Bellevue or Seattle is what Mr.

1    Guilford tells me.

2        **MR. KLAUS:**  He's got the other one, Moderati, which

3    is actually here in California, your Honor.

4        **THE COURT:**  Well, I know there's one in San Fran.

5    That's why I was asking.  I couldn't keep them all straight.

6        **MR. BUSCH:**  But that one's different and that would

7    be the weak -- that's not one that --

8        **THE COURT:**  Bellevue is closer to Vancouver than it

9    is to --

10        **MR. BUSCH:**  Yeah, T-Mobile is in Bellevue,

11    Washington.

12        **THE COURT:**  Okay.  Counsel, here's what I'm

13    contemplating doing.  And on the first category, I am -- which

14    is the five third parties -- I will hear from Mr. Klaus further

15    about whether he really wants a more particularized showing to

16    respond to or whether it's on further reflection a greater

17    expense to his client to fight about it more than it is to just

18    go ahead and do one.

19        I am -- hang on.  I'm contemplating -- I haven't

20    decided fully yet -- permitting three-hour depositions of

21    Ravine, Weinberg and Caraeff.  Where is he based?  Is he in LA?

22        **MR. KLAUS:**  I think Mr. Caraeff is in Los Angeles.

23        **THE COURT:**  All to be taken in LA.  Not more than

24    three hours, not including breaks.  And I am inclined to

25    permit, as everybody seems to agree may be necessary, a

1  30(b)(6) deposition on the new claim.  And I am inclined to

2  permit one mastertone deposition, which I suspect T-Mobile may

3  be easier, more cost effective.  Mr. Klaus, if there were going

4  to be one, as between Sprint and T-Mobile?  Got any thoughts?

5       **MR. KLAUS:**  It's easier to go to Seattle than to

6  Kansas City.

7       **THE COURT:**  That's what I think.

8       **MR. KLAUS:**  I do think it would be easier to go to

9  San Francisco to do Moderati, which is the one that he actually

10  served the subpoena for already.

11       **THE COURT:**  Yeah, but it's not one of the big

12  players, is it?  I would think it's less significant than T-

13  Mobile or Sprint.

14       **MR. KLAUS:**  I think it all depends on sort of what

15  you mean.  I think Moderati is a pretty major reseller of

16  mobile ringtones and mobile services to other mobile providers.

17  So, I don't think Moderati has the household name, because you

18  don't see it on your phone, but I actually think they are a

19  pretty major player in this market.

20       **THE COURT:**  Yeah, I think you're probably talking an

21  extra hour or two on the round trip, maybe three, difference

22  between going to Bellevue or San Francisco.  But again, here's

23  my thinking, just so we are clear.

24       I think there is some relevance to Mr. Ravine's

25  testimony.  It doesn't appear that there can be stipulated

1    facts in it.  I've tried to explore that and I do believe that

2    it was not unreasonable of Mr. Busch to think that he could

3    likely work that out.

4            With respect to Mr. Weinberg, if he's going to be the

5    witness at trial on 11 and 18, then I think three hours for him

6    in LA is not unreasonable.  The 30(b)(6) on a new topic,

7    everybody agrees, and Caraeff, since he appears to have been

8    someone who's been identified as the person who may be more

9    knowledgeable about the negotiation -- that's topic 18 -- it

10   seems to me that maybe three hours of him.

11           And frankly, with respect to Weinberg and Caraeff, I

12   really see this as kind of closing the door on the 30(b)(6)

13   even more than I see them as new additional.  You can look at

14   it either way, but I'm really talking about a total of nine

15   hours, which if you started early, you could possibly do in one

16   day and if you couldn't do that in one long day, you could

17   certainly do it in a day and a half.  So, I don't see if

18   they're all in LA, that it's a major cost or imposition and

19   they seem relevant and with these time limits, reasonable.

20           On the mastertone depositions, I am inclined to

21   permit one and if Mr. Busch, you want to say T-Mobile in

22   Bellevue, I'm inclined to permit that.  The plaintiffs proposed

23   30(b)(6) and two other depositions -- two other depositions if

24   he had the usual seven hours, would be 14 hours.  You know,

25   you're getting stuck with in many ways an extra day on the

 1    Bellevue.

 2              And that's my tentative thinking.  So, Mr. Klaus, do

 3    you really want to push the issue on the first category and say

 4    you want a more particularized showing?

 5         **MR. KLAUS:**  If I understand your Honor's ruling that

 6    the more particularized showing risks getting more than the

 7    one, I think we'll take the one.

 8         **THE COURT:**  Frankly, that's a tip I'm giving you,

 9    because if I had a lot more persuasive showing, who knows?  You

10    could do worse than one in Bellevue.

11         **MR. KLAUS:**  Okay.

12         **THE COURT:**  Anybody want to be heard further on the

13    Court's tentative?

14         **MR. BUSCH:**  No, I'm satisfied with your Honor's

15    ruling.  This is Richard Busch.

16         **THE COURT:**  Well, it's not a ruling yet.  Mr. Klaus?

17         **MR. BUSCH:**  I'm satisfied on the tentative, your

18    Honor.  I can accept it.

19         **THE COURT:**  Mr. Klaus?

20         **MR. KLAUS:**  With the objections that we've raised,

21    I've nothing further to add.

22         **THE COURT:**  I'm giving you your shot if you want.

23    I've cut these down to three hours, three hours, three hours in

24    LA and the one.  If you really want to argue that what the

25    Court is proposing to do is unreasonable and unwarranted, make

1    your record.

2           **MR. KLAUS:**  This is with respect to Ravine, Weinberg

3    and Caraeff?

4           **THE COURT:**  Correct.

5           **MR. KLAUS:**  I would just say the one issue that I

6    would raise, your Honor, is with respect to Mr. Caraeff.  I

7    really don't think that there's been a showing.  I think that

8    Mr. Weinberg himself was involved in negotiating mastertone

9    agreements.  The reason that he's been identified as somebody

10   who would be a witness on those topics is that because he also

11   had information on the same topics.

12          I would think that in terms of preparing him to

13   testify on that subject, to the extent he doesn't have it,

14   could gather the information about the mastertone agreement and

15   it really does seem to me it would save -- that not having Mr.

16   Caraeff's deposition that requiring Mr. Weinberg to be prepared

17   on mastertone agreements would be plenty reasonable compromise

18   here.

19          **THE COURT:**  Mr. Busch?

20          **MR. BUSCH:**  Your Honor, if Mr. Caraeff was involved

21   in those negotiations and we're only talking about a couple of

22   hours of depositions and he has the first hand knowledge of it

23   and it was in Mr. Kinswell's department where Mr. Weinberg

24   works, it would seem to me that we should be entitled, given

25   the fact that we'll be in Los Angeles and we're only talking

```
 1   about a few hours, that I should be able to get the person who

 2   was involved, whose department he ran, comes to this

 3   negotiation.

 4           THE COURT:  Well -- go ahead.

 5           MR. KLAUS:  I would just say I think what Mr.

 6   Kinswell said at his deposition was that the lawyers who work

 7   for me are the ones who did the work on the deals, although

 8   they reported to somebody else and I think that was a

 9   reference, if not to Mr. Weinberg, then to people Mr. Weinberg

10   works, but it may have been Mr. Weinberg.

11           THE COURT:  All right.  What I'm going to do,

12   counsel, is I'm going to enter an order permitting the

13   plaintiff to take three-hour depositions each in Los Angeles of

14   Mr. Ravine, Mr. Weinberg, Mr. Caraeff and also to permit the

15   taking of a 30(b)(6) on the new topic.

16           How long do you think that's going to take?

17           MR. BUSCH:  A few hours.  And on that issue, your

18   Honor --

19           THE COURT:  Can we limit that to four?

20           MR. BUSCH:  Absolutely.  We can limit it to four

21   hours.  This is Richard Busch.  And I have asked Mr. Klaus to

22   make that person available next week when we're together in Los

23   Angeles on another deposition and I would just reiterate that

24   request to Mr. Klaus to please do that to conserve my client's

25   cost when he's out there.
```

1           **THE COURT:**  All right.  The 30(b)(6) witness on the

2     new topic, who's referred to I think as item 4 -- you all know

3     what you're talking about at the top of page 3 -- for no more

4     than four hours.  Again, these are exclusive of breaks.  And

5     permit the deposition of T-Mobile, which is with respect to

6     mastertone agreements in Bellevue, Washington.

7           I am -- so I've got Ravine, Weinberg, Caraeff, the

8     30(b)(6) -- those are each three -- the 30(b)(6) four, and then

9     the mastertone depo of T-Mobile in Bellevue.

10          With respect to the Caraeff, Mr. Busch, I'm going to

11    suggest to you very strongly that you confer with Mr.

12    Pomerantz, Klaus, Lemoine, whomever you deal with on these

13    things day to day, and really determine whether Caraeff has

14    something of real significance to add or whether you might wish

15    to trade the three hours of Mr. Caraeff for an extra hour of

16    Mr. Weinberg.

17          Frankly, I think anybody who's litigated for any

18    period of time has seen a 30(b)(6) witness point to somebody

19    else as perhaps being more knowledgeable on a particular topic,

20    who, when a little investigation is done isn't all that

21    knowledgeable on the topic.  And if what Mr. Klaus has

22    indicated is correct, you may be better off passing on Caraeff

23    and taking an extra hour or hour and a half of Mr. Weinberg, if

24    you all can agree to do that by agreement.  You can put a

25    stipulation in saying in lieu of following precisely what the

53

1    Court has ordered, we've agreed to do this.

2          All I'm going to say to you is use your time wisely,

3    because as you can see, I have given you some leeway, but I'm

4    giving you hours limitations and I'm trying to cut this down,

5    frankly, as I see it, you've got two days in the T-Mobile and

6    you were offered the 30(b)(6) and two witnesses, which would be

7    two days, if you took all day with them.  So, functionally,

8    you've got more people but no more time than was proposed by

9    the defense.

10         **MR. BUSCH:**  Your Honor, this is Richard Busch.  I

11   just want to make -- since that offer was made, the position of

12   the defendants has changed and I was told -- we've been --

13   since the court hearing when we came to your Honor to raise

14   this issue and your Honor said your Honor wanted us to meet and

15   confer on it, I was told by Mr. Klaus that they would actually

16   not agree to any additional depositions and I was told

17   yesterday by Mr. Klaus that they wouldn't even agree to the

18   deposition on the new claim -- not even that would they agree

19   to.  So, we're here --

20         **THE COURT:**  All right.  Well, on September 17th, Mr.

21   Pomerantz had indicated that they would agree -- it's item

22   number 1 on page 80 -- to the new claim deponent plus two of

23   your choice.  What I'm emphasizing is you're getting

24   functionally two days plus one, which is the T-Mobile.  So, in

25   terms of time and cost, I've tried to limit it and to keep it

54

1   reasonable and it is my intent to continue to do that, because

2   you're over the ten and I do have some issue as to whether you

3   used your time wisely on the ones you had.

4           Of the original set of depositions, a number of them

5   went less than seven hours; is that correct?

6           MR. BUSCH:  Yes, your Honor.

7           THE COURT:  Certainly, Iovine and Jobs did.

8           MR. BUSCH:  Iovine went less.  Jobs went less and I

9   think several of them -- I think Ostroff went less.  We had

10  several half days in there.  So, I may have gone close to the

11  full seven hours --

12          MR. KLAUS:  A number went more than seven hours.

13          MR. BUSCH:  I'm not sure which went more than seven

14  hours.

15          MR. KLAUS:  Kinswell went for 10 or 11 hours.

16          MR. BUSCH:  Oh, Kinswell?  Actual deposition time?  I

17  don't know that there was actual deposition time.  I don't

18  think any of the depositions went more than seven hours of

19  actual deposition time.

20          THE COURT:  All right.

21          MR. KLAUS:  I don't think that's right, but I think

22  Mr. Kinswell's deposition according to the time started at

23  10:30 in the morning and I think that it ended close to 7:00

24  o'clock at night.  I think Mr. Hoffman's was also longer.

25          THE COURT:  My only point, Mr. Busch, is if Mr.

1   Caraeff's is really fairly pointless and you run short on

2   Weinberg, don't come back to the Court and say, "Oh, we need

3   him for a couple more hours."

4           **MR. BUSCH:**  I understand.

5           **THE COURT:**  Because I'm not going to give you a

6   couple more hours.

7           **MR. BUSCH:**  I understand.

8           **THE COURT:**  All right?  Anything further at this

9   time, counsel?

10          **MR. BUSCH:**  No, thank you, your Honor.

11          Oh, your Honor, there is one more thing.  I

12   apologize.

13          **THE COURT:**  Yes, Mr. Busch?

14          **MR. BUSCH:**  We are going to be filing the joint

15   stipulation on those foreign agreements tomorrow.  The

16   defendants have it and have one day under the local rules to

17   give us permission to file it and so we'll be filing it on

18   Monday.  Given the fact that we're a month away from the close

19   of discovery, is it possible to have an expedited hearing on

20   that?

21          **THE COURT:**  I'm going to have to kick it to my clerk

22   on that.  I've got a very busy schedule and, frankly, sometimes

23   when things get left to the last minute, there's a consequence

24   to that, too.

25          **MR. BUSCH:**  Okay.

1          **MR. KLAUS:**  I would just say, your Honor, on the

2    joint stipulation, we gave them our --

3          **THE COURT:**  I saw on your papers it was given to them

4    a while ago.

5          **MR. BUSCH:**  That's correct.  It was and it was our

6    mistake it was not filed.  It fell through the cracks here and

7    it was absolutely our mistake, so I apologize.  But it's ready

8    to be filed on Monday and if it's possible, we'd like to have

9    an expedited hearing on it.

10          **THE COURT:**  Again, I know my schedule over the next

11    couple of weeks on hearings and other things is very tight, so

12    I'm going to make absolutely no guarantees on that.

13          **MR. BUSCH:**  Okay, thank you, your Honor.

14          **THE COURT:**  Mr. Klaus, anything more from your end?

15          **MR. KLAUS:**  No, your Honor, thank you.

16          **THE COURT:**  All right.  Have a nice afternoon and

17    evening, everyone.

18          **MR. KLAUS:**  Thank you.

19          **THE COURT:**  Court is in recess.

20        **(Proceeding was adjourned at 2:57 p.m.)**

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                        August 19, 2009

         Signed                                              Dated



                    TONI HUDSON, TRANSCRIBER