KELLY M. KLAUS (State Bar No. 161091)
Kelly.Klaus@mto.com
MELINDA E. LeMOINE  (State Bar No. 235670)
Melinda.LeMoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:   (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| F.B.T. PRODUCTIONS, LLC, and Em2M, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>AFTERMATH RECORDS doing business as AFTERMATH ENTERTAINMENT; INTERSCOPE RECORDS; and UMG RECORDINGS, INC.,<br><br>Defendants. | CASE NO.  CV 07-03314-PSG (MANx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO MODIFY CASE MANAGEMENT ORDER OR, IN THE ALTERNATIVE, TO SET A CASE MANAGEMENT CONFERENCE**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Ctrm.:   880 |

"*Ex parte* applications are solely for extraordinary relief and should be used with discretion." Standing Order ¶ 10. Disregarding these commands,[1] Plaintiffs ask the Court to order unquestioningly the re-opening of discovery so Plaintiffs can serve *thirty-six* new interrogatories, *thirty-one* new document requests, and notice *five* new depositions. Plaintiffs describe this campaign generically; they say their discovery is "narrowly focused on the remaining issues in the case." Appl. at 1-2. In fact, the discovery is directed to issues the Court resolved on summary judgment, and specifically the applicability of the distribution fee that must be deducted in order to calculate "our [Aftermath's] net receipts." If Plaintiffs believed they needed discovery to contest the applicability of the distribution fee, Plaintiffs were obligated to make and support a motion under Rule 56(d). Plaintiffs' second thoughts about their summary judgment strategy do not justify a *carte blanche* re-opening of discovery on the subject—and it certainly does not justify the extraordinary remedy of an Order on an *ex parte* application.

To justify the entitlement even to proceed by *ex parte* application—which must be shown even before reaching the merits of the requested relief—Plaintiffs must establish both "(1) that [their] cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and (2) that [they are] without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Pate v. Wells Fargo Bank Home Mortg.*, No. CV 11-4151 PSG (MANx), 2011 WL 2682646, at *1 (C.D. Cal. July 7, 2011). Plaintiffs do not even mention—let alone attempt to satisfy—either of these requirements. This is no oversight, because Plaintiffs fail both tests.

*First*, Plaintiffs cannot show irreparable prejudice from having to proceed by

---

[1] Plaintiffs also disregard the Court's Standing Order requiring service of Ex Parte Applications. Standing Order ¶ 10. Plaintiffs failed to serve Defendants' counsel by facsimile contrary to the clear rules of this Court. LeMoine Decl. ¶ 9. Nor did Plaintiffs serve us personally, instead electing to rely on the electronic filing alone contrary to this Court's Orders governing *ex parte* applications.

- 1 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

1   way of a noticed motion.  Plaintiffs do not tell the Court that Defendants offered to
2   stipulate to a shortened-time briefing schedule on Plaintiffs' motion to re-open
3   discovery.  LeMoine Decl., ¶¶ 6-7 & Ex. 3.  Defendants only asked in return that
4   Plaintiffs stipulate to brief and submit Defendants' pending motion for partial
5   reconsideration—presently noticed for decision on February 6, 2012 (the first
6   available motion date)—on the same schedule as Plaintiffs' motion.  *Id*.  That
7   would only make sense, because both motions concern the scope of the remaining
8   issues in the case.  The Court's summary judgment Order resolved all disputed
9   points about what goes into calculating "our [Aftermath's] net receipts."
10  Defendants' reconsideration motion contends that it was error for the Court to enter
11  summary judgment for Plaintiffs on the inapplicability of two of these deductions—
12  the colloquially called "New Medium" and "Container Charge" deductions—when
13  Plaintiffs did *not* move for summary judgment on these deductions.  Defendants
14  contend the applicability of those deductions should remain for trial.  The outcome
15  of Defendants' motion obviously may influence the scope and course of remaining
16  proceedings before trial—just as Plaintiffs' motion to re-open discovery could do.
17  Defendants told Plaintiffs that the Court should decide at one time—not seriatim—
18  what is and is not left for trial.  Opposing Defendants' motion would not be
19  burdensome: the motion is four pages long and poses a narrow question.  If
20  Plaintiffs had stipulated to have the two motions briefed in parallel, there would
21  have been no need to proceed *ex parte*.  The motions could have been fully briefed
22  and ready for decision promptly.  Plaintiffs instead opted to try to secure a tactical
23  and one-sided advantage by proceeding *ex parte*.
24       *Second*, Plaintiffs' claimed exigency is a situation of their own making.  As
25  noted, Plaintiffs could and should have agreed with Defendants to a stipulated
26  briefing schedule on the two sides' motions affecting the remaining scope of the
27  case.  Further proof that Plaintiffs' claimed wounds are entirely self-inflicted goes
28  back to the trial-setting conference and summary judgment briefing.  Plaintiffs

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX
PARTE APPLICATION

agreed to the current schedule after the June 13, 2011 conference—when all the issues that would be raised on summary judgment were placed on the table. Dkt. No. 671. Plaintiffs knew there was a possibility the Court would rule for Defendants on the applicability of some deductions. If Plaintiffs believed they needed to build in time to re-open discovery on the amount of those deductions, Plaintiffs could and should have requested a longer time to trial. They did no such thing. And, as discussed, if Plaintiffs believed they needed additional discovery to oppose the applicability of one or more deductions in the first instance, Plaintiffs could and should have requested such relief by way of a properly noticed motion under Rule 56(d). What is more, the Court entered its summary judgment Order on November 1. Plaintiffs waited more than five weeks to seek an order re-opening discovery. In fact, Plaintiffs did not file the instant request seeking to re-open discovery until three weeks after serving their new discovery requests (even though discovery in this case closed years ago). LeMoine Decl., ¶ 1 & Exs. 1-2.[2] In short, the claimed crisis is entirely of Plaintiffs' own making.

For the foregoing reasons, Plaintiffs' application fails to meet the high requirements for *ex parte* relief. The Court can and should deny it on that basis alone. The request also fails on the merits. Plaintiffs claim they need to reopen discovery to, among other reasons, possibly challenge the amount of mechanical royalty and distribution fees taken by Defendants as inappropriate "because [Defendants] did not actually incur the claimed expenses or because the expenses involve self-dealing and are unreasonably high." Appl. at 2. But the Court has *already ruled* that Defendants may take deductions for mechanical royalties and

---

[2] The discovery is not only unauthorized because discovery has long since closed, but the thirty-six interrogatories that Plaintiffs now want Defendants to answer are on top of the twenty-five that Plaintiffs already served before the first trial—and thus are improper absent a Court Order, which Plaintiffs did not seek or obtain. Fed. R. Civ. P. 33(a)(1).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION

distribution fees incurred. Dkt. No. 737 at 14-15. Whether such deductions are "too high" or a result of "self-dealing" are not issues in the case. Plaintiffs' time to challenge the taking of these deductions was in their opposition to Defendants' summary judgment motion, or in a Rule 56(d) request.

Moreover, the discovery that Plaintiffs seek is not "narrowly focused," as Plaintiffs claim. The written requests run far afield of any issue that could conceivably remain open. LeMoine Decl., Exs. 1-2. For example, the Interrogatories ask Defendants to (1) identify every person who holds a job title with any of the Defendants, and to identify whether those people also hold a job title with any of the other defendants or any other Universal company (Rog. No. 49); (2) identify everyone who has a job title with Universal Music Group Distribution, Corp. ("UMGD"), and whether those people also hold titles with any other Universal company (Rog. No. 50); and (3) identify any person involved in any negotiations with distributors regarding distribution fees for permanent downloads and mastertones (Rog. No. 30). These are only three of the thirty-six Interrogatories Plaintiffs claim are "narrowly focused." Plaintiffs' document requests demand, among other things, that Defendants produce: "All documents reflecting any revenue any foreign UNIVERSAL COMPANY received from any other foreign UNIVERSAL COMPANY, in both local currencies and U.S. Dollars, in connection with the permanent downloads and mastertones at issue in this lawsuit for the period 2002 to June 30, 2011." LeMoine Decl., Ex. 1 at RFP No. 7. This despite the Court's ruling on summary judgment that it is *Aftermath's* receipts that matter here—not those of any other Universal company. Dkt. No. 737 at 14.

But that is not all of the discovery Plaintiffs seek. Plaintiffs also say they want four individual depositions *and* a 30(b)(6) deposition on distribution fees and mechanicals. Among those Plaintiffs say they must depose are Zach Horowitz, the President and COO of Universal Music Group; Jim Urie, the CEO of UMGD; and Rand Hoffman, the head of Business Affairs for Interscope (who has already been

deposed by Plaintiffs' counsel twice). LeMoine Decl., ¶¶ 4-5.  Plaintiffs have not provided any reason why they need any depositions from these individual, high-ranking executives, when the only questions that remain involve computing damages according to the contracts as the Court has construed them.  The request for these depositions is a barely disguised attempt to harass Defendants and drive up the cost and inconvenience of this litigation.

Finally, Plaintiffs cannot demonstrate any "good cause" to reopen discovery at this point.  The Court's Order on summary judgment did not hold that such discovery was warranted.  In fact, just the opposite:  the Court noted that "[i]n the fifth year of litigating this case, all of the potential evidence at issue is well known to the parties."  Dkt. No. 737 at 9.  Although Plaintiffs do not tell the Court as much, that is certainly true with regard to the two areas on which they claim to require discovery.  Defendants have already informed Plaintiffs of the amount of the distribution fee, which Plaintiffs know is far less than their hyperbolic arguments suggest.  LeMoine Decl., ¶ 8.  And Plaintiffs themselves are well aware of the amount of mechanical royalties because they are determined by statute and, for the most part, were paid to Plaintiffs' related entities.  *Id*.

In short, there is no emergency here.  This is simply a belated and untimely effort to re-open broad discovery regarding issues the Court already has resolved.  The Court should deny the *ex parte* application.

DATED:   December 8, 2011	MUNGER, TOLLES & OLSON LLP


By:   */s/ Melinda E. LeMoine*
	Melinda E. LeMoine
	Attorneys for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION