# EXHIBIT 9

F.B.T. Productions, LLC and Em2M, LLC
Plaintiffs

v.

Aftermath Records doing business as Aftermath Entertainment;
Interscope Records; UMG Recordings, Inc.; and ARY, Inc.
Defendants

United States District Court
Central District of California
Western Division
CV 07-03114 PSG (MANx)
Action Filed: May 21, 2007


Plaintiff's Expert Report

By

Gary Cohen, CPA
Gary Cohen Corporation

January 4, 2012

I. **Description of Services**

I was retained to review certain relevant documents and form an opinion regarding the amount of damages due Plaintiffs related to Defendants' understatement of royalties from sales of the recordings of Marshal Mathers III pka "Eminem" ("Artist") in Permanent Digital Download and Mobiletone formats for the period inception through June 30, 2011.

II. **Qualifications**

I am a Certified Public Accountant and founder and President of Gary Cohen Corporation.  I have over twenty-seven years experience in the entertainment industry as a forensic accountant and business manager.  Gary Cohen Corporation conducted over 1,000 "royalty audits" on behalf of recording artists, songwriters, producers and other music entertainment companies.  I have testified as an expert witness in Federal Court and the courts in the states of New York, New Jersey and California.  My vitae and a partial list of audit engagements was provided earlier in these proceedings.

III. **Compensation**

My hourly rate is $300.

IV. **Documents Reviewed**

In formulating my calculation hereunder, I reviewed the following documents.

    A. Royalty statements in Excel format rendered by Defendants to Plaintiffs for the period July 1, 2005 through June 30, 2011.

    B. Royalty statements in Excel format rendered by Defendants to Artist for the period January 1, 2002 through June 30, 2005.

V. **Prior Reports**

This report revises my damages reports dated November 5, 2008 and January 16, 2009 (collectively, "Prior Reports").  The Prior Reports computed damages based on revenue reports provided by Plaintiffs (AFT 0059496 – AFT 0059515) and covered the period 2004 through December 11, 2008.  As noted in the Prior Reports, there were certain scope limitations which to date have not been resolved.

    A.    The revised digital revenue report provided by Aftermath does not correspond with revenue data on FBT royalty statements.

    B.    Aftermath did not provide digital revenue data for 2003 and only partial data for 2004.

    C.    The beginning date covered by the revised digital revenue report is not specified.

    D.    I am not able to determine whether foreign revenue is included in the revised digital revenue report.

In preparing this report, I requested updated revenue reports similar to the ones I used to prepare the Prior Reports.  I am advised by Plaintiffs' attorneys that UMG will not make these reports available.  Accordingly, I based this report on the royalty statements detailed in the above paragraph IV.

I reconciled the damages calculation appearing in my report dated January 16, 2009 with the amount calculated herein.  The damages hereunder are significantly higher when calculated using the royalty statements for the time period inception through December 2008.  However, the difference is within 3% if foreign sales are removed from the calculation using the royalty statements.  Accordingly, it appears that the revenue reports provided to me by Defendants only contain revenue related to sales in the USA.

### VI. Notes to Damages Calculation

A. Distribution Fees.
No evidence was provided to me that Defendants incurred any actual costs related to the distribution of FBT's Masters as Permanent Digital Downloads or Mastertones, except $80 per Master for transmitting the Digital file to the Digital Service Providers.  It is unclear whether UMG should be allowed to charge Distribution Fees in determining Net Receipts, and if so, the amount of Distribution Fees to be charged.  Accordingly, I computed damages in two ways: (1) Version 1, no Distribution Fee; and (2) Version 2, a 10% Distribution Fee. It is my position that Version 1 is correct. Defendants do not incur any manufacturing or inventory related costs.  Further, when Defendants account to Plaintiffs for royalties on other licensed income, Defendants do not deduct any amounts, other than producer royalties.

B. Mechanical Royalties.
Defendants did not provide me with the actual amount of Mechanical Royalties paid by Defendants to third parties with respect to sales of Plaintiffs Masters on Permanent Digital Downloads and Mastertones.  In order to estimate Mechanical Royalties into my computation of Net Receipts in the USA, I determined the ratio of Mechanical Royalties paid by Defendants to the wholesale price of a Permanent Digital Download sold by iTunes.  For ease of calculation, I used the per unit Mechanical Royalty Rate of $.085 for periods through June 30, 2005 and $.091 thereafter.  These per unit rates are conservative.  The actual date that the per unit Mechanical Royalty Rate increased from $.085 to $.091 is January 1, 2006.  The resulting percentage deduction is 12.14% for periods through June 30, 2005 (-1 + (.70-.085)/.70) and 13% from July 1, 2005.  I am advised that in foreign territories, the Digital Service Providers (e.g. iTunes UK) pay mechanical royalties directly to the mechanical rights societies.  Defendants do not incur any out of pocket expense.

C. Wholesale to Retail Uplifts.
Defendants paid royalties to Plaintiffs on Permanent Digital Downloads and Mobiletones based on a percentage of a constructed retail price.  In order to adjust the royalty rates paid from retail to wholesale, I divided the retail rate paid by an uplift factor.  In the USA, I used a wholesale to retail uplift factor of 130%.  In foreign territories I used a wholesale to retail factor of 126%, the average uplift factor typically used by Defendants when converting a retail agreement to a wholesale agreement.

D. Damages calculation through June 30, 2005.
In preparing this report, I requested Excel formatted copies of the royalty statements rendered to Plaintiffs for the period 2002 through June 30, 2005. I am advised by Plaintiffs' attorneys that UMG will not make these reports available. Accordingly, to compute damages for this period, I used Excel copies of royalty statements rendered to Artist for the same period.

E. "Lose Yourself".
The recording "Lose Yourself" originally appears on the soundtrack album "8 Mile" which was released in 2002. "Lose Yourself" also appears on the album "Curtain Call" released in 2005. I am advised by Plaintiffs' attorney that the "Lose Yourself" should be included in my damages calculation only as it relates to its inclusion on the album "Curtain Call". Accordingly, I included in my calculation Permanent Digital Downloads and Mastertone royalties reported after June 30, 2005.

F. Interest.
I computed interest on damages at the rate of 10% from the date the additional royalties should have been paid through December 31, 2011.

VII. **Summary of Damages**

A. Version 1, No Distribution Fee - $6,418,758 plus interest of $1,211,024 through December 31, 2011. Of this amount, $441,517 plus interest of $120,710 through December 31, 2011 relates to the recording "Lose Yourself".

B. Version 2, 10% Distribution Fee - $4,866,602 plus interest of $921,264 through December 31, 2011. Of this amount, $368,655 plus interest of $100,790 through December 31, 2011 relates to the recording "Lose Yourself".

Schedules underlying my computations are attached.

Respectfully submitted,

_Gary Cohen_ (signature)
Gary Cohen

# EXHIBITS INTENTIONALLY OMITTED