# EXHIBIT 18

Page 1

```
            UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
        -----------------------------------x
        F.B.T. PRODUCTIONS, LLC,
        and EM2M, LLC,

                        Plaintiffs,

             v.                        Case No. CV
                                       07-03314
        AFTERMATH RECORDS doing        PSG (MANx)
        business as AFTERMATH
        ENTERTAINMENT; INTERSCOPE
        RECORDS; UMG RECORDINGS, INC.,
        and ARY, INC.,

                        Defendants.
        -----------------------------------x
        UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF MICHIGAN
        SOUTHERN DIVISION
        -----------------------------------x
        EIGHT MILE STYLE, LLC and
        MARTIN AFFILIATED, LLC,

                        Plaintiffs,    Case No.
                                       2:07-cv-13164
        APPLE COMPUTER, INC. and        Hon. Anna
        AFTERMATH RECORDS d/b/a         Diggs Taylor
        AFTERMATH ENTERTAINMENT,

                        Defendants.
        -----------------------------------x

                          December 17, 2008

                          11:34 a.m.

             Videotaped deposition of GARY W. COHEN,
        taken via videoconference, pursuant to
        subpoena, held at the offices of Jenner &
        Block, 919 Third Avenue, New York, New York,
        before GAIL F. SCHORR, a Certified Shorthand
        Reporter, Certified Realtime Reporter, and
        Notary Public within and for the State of
        New York.
```

Page 94

```
13:24:09    1    incurred by the company in connection with
13:24:10    2    the licensing of the master should be
13:24:12    3    deducted from gross receipts in order to
13:24:15    4    determine net receipts?
13:24:18    5              MR. BUSCH:  Objection; vague,
13:24:20    6         ambiguous and overbroad.
13:24:22    7         A.   It goes down to the specific
13:24:23    8    agreement.  It is something that would be
13:24:26    9    defined and I don't want to speculate.
13:24:32   10         Q.   Did you look into what
13:24:40   11    deductions Aftermath had made from gross
13:24:45   12    receipts to determine net receipts in
13:24:48   13    connection with the agreements between
13:24:51   14    Aftermath, F.B.T. and Eminem?
13:24:54   15         A.   I'm sorry, I don't understand
13:24:55   16    your question.
13:24:56   17              MR. BUSCH:  Yes, I don't
13:24:57   18         understand the question either and
13:24:58   19         it's vague and ambiguous and
13:24:59   20         overbroad.
13:25:01   21         Q.   You understand that section
13:25:06   22    5(c)(v) of the recording agreement at
13:25:09   23    issue here refers to masters license
13:25:12   24    transactions, correct?
13:25:13   25         A.   Yes.
```

Page 95

```
13:25:14   1         Q.    And you understand that that
13:25:18   2    could include a transaction where an
13:25:21   3    Eminem recording is licensed for use in a
13:25:25   4    movie or a television commercial, correct?
13:25:27   5         A.    You're talking about a
13:25:29   6    synchronization license?
13:25:30   7         Q.    Or a master use license.
13:25:32   8         A.    Yes.
13:25:36   9         Q.    And you understand that that
13:25:38   10   provision will also apply where Aftermath
13:25:39   11   licenses an Eminem recording to be
13:25:41   12   included in a third party's compilation
13:25:44   13   record, correct?
13:25:45   14        A.    Correct.
13:25:45   15        Q.    Did you do anything to
13:25:47   16   determine whether in any prior master use
13:25:52   17   license or license for a compilation
13:25:55   18   record, Aftermath made any deductions from
13:25:58   19   gross receipts in order to determine net
13:26:01   20   receipts?
13:26:03   21        A.    I believe with respect to
13:26:06   22   foreign licensing, third-party licensing
13:26:10   23   of F.B.T. masters, or Eminem masters,
13:26:18   24   Aftermath's foreign licensees take 25
13:26:22   25   percent off the top and leave it with the
```

Page 96

```
13:26:25   1    foreign licensee, and then share the 50
13:26:30   2    percent it receives with the artist, and I
13:26:35   3    object to that practice because they're
13:26:40   4    letting their affiliated company keep
13:26:43   5    money to the detriment of the artist.
13:26:47   6         Q.   Have you -- did you do
13:26:53   7    anything to look into whether with respect
13:26:56   8    to any domestic licenses for either use of
13:27:02   9    an Eminem recording in a movie or
13:27:04   10   television commercial or use of an Eminem
13:27:07   11   recording in a third party's compilation
13:27:10   12   record, there were any deductions from
13:27:12   13   gross receipts in order to determine net
13:27:14   14   receipts?
13:27:14   15        A.   For the licenses I reviewed in
13:27:17   16   connection with the audit I did, any
13:27:20   17   amount -- there's a license agreement for,
13:27:24   18   let's say, a synchronization license,
13:27:27   19   those I reviewed, I determined that Eminem
13:27:34   20   and F.B.T. in total received 50 percent of
13:27:38   21   the amount that Aftermath received from
13:27:42   22   the source, from the third-party source,
13:27:45   23   and if they did not, I made a claim for
13:27:48   24   that additional amount.
13:27:52   25        Q.   Do you recall making any claim
```

Page 158

```
15:02:20   1    more time, I know you did this, but I'm
15:02:22   2    not sure I followed it.
15:02:23   3         A.    Okay.
15:02:23   4         Q.    Why multiplying the factor by
15:02:25   5    the amounts in the column paid F.B.T.
15:02:27   6    gross total leads you to what you think is
15:02:30   7    the damages that F.B.T.'s entitled to in
15:02:35   8    -- for 2003 for digital downloads?
15:02:37   9         A.    Let's take a hypothetical case
15:02:39  10    and say there was a hundred dollars due,
15:02:41  11    okay.  A hundred dollars paid.  And it was
15:02:44  12    paid at 10.4 percent, okay.  And we want
15:02:49  13    to -- we believe that F.B.T.'s due 20
15:02:53  14    percent.  You have to take the hundred
15:02:55  15    dollars, divide it by the 10.4 percent and
15:02:58  16    multiply it by the 20 percent to get the
15:03:01  17    total amount due.  That would give you a
15:03:06  18    gross amount due.  Then subtract out by
15:03:08  19    subtracting one to create a factor the
15:03:12  20    amount that was already paid.
15:03:14  21         Q.    All right.  Let's go to the
15:03:23  22    schedule for foreign.
15:03:24  23         A.    We're talking about $840 here
15:03:28  24    in total.
15:03:37  25         Q.    Where did you get these
```

```
15:03:39   1    numbers from?
15:03:39   2         A.    This is exactly the same
15:03:41   3    place.  They came from the royalty
15:03:42   4    statements.  The same methodology was
15:03:44   5    used.
15:03:44   6         Q.    And are you saying that in
15:03:46   7    those royalty statements the only
15:03:47   8    territory that you found information for
15:03:49   9    was the territory of Germany?
15:03:50   10        A.    That's correct.  That's the
15:03:51   11   only territory that reported digital
15:03:53   12   downloads on the December '03 statements.
15:03:59   13   No foreign territory reported digital
15:04:02   14   downloads on the June '03 statement.
15:04:04   15        Q.    And did you follow the same
15:04:06   16   methodology for determining the amount due
15:04:09   17   for sales of downloads in Germany as you
15:04:12   18   followed for sales of downloads in the US?
15:04:15   19        A.    Yes.  Except the amount of the
15:04:18   20   markup is different.  In the US it was 130
15:04:21   21   percent.  In Germany the markup happens to
15:04:23   22   be 1.092.
15:04:30   23        Q.    And so that's how you got to
15:04:31   24   the 6.55 percent figure?
15:04:33   25        A.    Yes, as the rate paid.
```

```
15:04:38    1        Q.    All right.
15:04:38    2        A.    And that's why the factors are
15:04:40    3    substantially different.  I would note
15:04:44    4    that there's probably a substantial amount
15:04:46    5    of money due on foreign digital downloads
15:04:48    6    and foreign ringtones if I was supplied
15:04:52    7    with the appropriate information.
15:04:57    8        Q.    Why do you say that?
15:04:57    9        A.    Because I don't believe what I
15:04:59   10    saw as revenue included foreign royalties
15:05:02   11    and so I could not do a calculation for
15:05:05   12    foreign royalties.
15:05:06   13        Q.    Well, if the amount that
15:05:09   14    F.B.T. is entitled to is a share of what
15:05:17   15    Aftermath actually receives from those
15:05:19   16    foreign territories, then if you applied
15:05:22   17    the same methodology as you've been
15:05:24   18    applying throughout your report to that
15:05:28   19    revenue, do you know whether F.B.T. would
15:05:31   20    receive more or less money from those
15:05:35   21    foreign sales than what it has been paid
15:05:38   22    historically by Aftermath for sales in
15:05:42   23    foreign territories of downloads?
15:05:43   24        A.    Well, I don't accept your
15:05:47   25    assumption, first of all, of your
```

Page 161

```
15:05:49   1    hypothetical because I believe that F.B.T.
15:05:52   2    is entitled to 50 percent of the income
15:05:57   3    received by the licensee, not 50 percent
15:06:02   4    received by Aftermath from the licensee,
15:06:06   5    because there's probably a haircut there
15:06:07   6    of some sort or a reduction that's
15:06:10   7    retained in the -- in the source
15:06:13   8    territory.
15:06:13   9             And yes, I do believe that
15:06:15  10    additional amounts and substantial
15:06:20  11    additional amounts would be due F.B.T.
15:06:22  12    more than they've been paid.
15:06:23  13         Q.   What I want to do is stay with
15:06:25  14    -- I'm asking you to assume that your
15:06:27  15    methodology is applied to the receipts
15:06:29  16    that are actually received by Aftermath.
15:06:31  17         A.   Right.
15:06:32  18         Q.   If you -- if you apply it to
15:06:34  19    those receipts, do you believe that your
15:06:37  20    methodology would result in money due
15:06:42  21    F.B.T., or do you believe that in fact the
15:06:46  22    methodology that Universal has employed
15:06:49  23    historically to sales of downloads in
15:06:52  24    foreign territories results in more money
15:06:54  25    going to F.B.T.?
```