KING & BALLOW
RICHARD S. BUSCH (TN No. 014594) (*Pro Hac Vice*)
rbusch@kingballow.com
315 Union Street, Suite 1100
Nashville, Tennessee  37201
Telephone:  615.259.3456
Facsimile:   615.726.5417

ARNOLD & PORTER LLP
JEROME B. FALK, JR. (No. 39087)
jerome.falk@aporter.com
DANIEL B. ASIMOW (No. 165661)
daniel.asimow@aporter.com
SARA J. EISENBERG (No. 269303)
sara.eisenberg@aporter.com
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:  +1 415.471.3100
Facsimile:   +1 415.471.3400

Attorneys for Plaintiffs
F.B.T. PRODUCTIONS, LLC, and Em2M, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| F.B.T. PRODUCTIONS, LLC, and Em2M, LLC,<br><br>           Plaintiffs,<br><br>     v.<br><br>AFTERMATH RECORDS doing business as AFTERMATH ENTERTAINMENT; INTERSCOPE RECORDS; UMG RECORDINGS, INC., and ARY, INC.,<br><br>           Defendants. | No. CV 07-03314 PSG (MANx)<br><br>Action Filed: May 21, 2007<br><br>**PLAINTIFFS' EX PARTE APPLICATION TO ADVANCE THE HEARING DATE ON PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT TO APRIL 23, 2012**<br><br>Dep't:    880<br>Judge:    Hon. Philip S. Gutierrez<br><br>Trial Date: April 24, 2012 |

PLAINTIFFS' EX PARTE APP. TO ADVANCE HEARING DATE TO 4/23/12          CV 07-03314 PSG (MANX)

## INTRODUCTION

Pursuant to Local Rule 7-19, Plaintiffs F.B.T. Productions, LLC and Em2M, LLC respectfully request that the Court advance the hearing date on Plaintiffs' Motion for Leave to File Supplemental Complaint ("Motion") from May 14, 2012, to April 23, 2012. Plaintiffs filed their Motion on March 26, 2012. Pursuant to Local Rule 6-1, Plaintiffs' motion could therefore be calendared for April 23, 2012 (28 days later). However, the Court's calendar was "closed" for civil motions on April 23. Accordingly, Plaintiffs noticed their motion for the first available date—May 14, 2012. Because trial in this action is scheduled to begin on April 24, 2012, Plaintiffs request that the hearing date be advanced to April 23 so that the Motion may be heard and decided prior to the start of trial.

## BACKGROUND

As set forth in more detail in the Motion, Defendants did not set forth how they intended to calculate royalties under the Masters Licensed provision for permanent downloads until serving their expert report on February 7, 2012. Defendants took the position, based on an unproduced Intercompany License Agreement ("ICLA") that royalties were actually *lower* under the Masters Licensed provision (which is based on net receipts) than under the Records Sold provision (which is based on a percentage of retail price) for foreign permanent downloads and mastertones. Plaintiffs have raised objections to this calculation and argued that it should not be presented to the jury, including that the calculation is inconsistent with the Ninth Circuit's mandate. *See generally* Plaintiffs' Motions *in Limine* Nos. 1-3. If Defendants are allowed to present their calculation in the trial, Plaintiffs have a number of responses, including that the newly asserted position by Defendants about how foreign royalties should be calculated would violate the parties' agreements, the implied covenant of good faith and fair dealing and a settlement agreement that Defendants entered into in another case.

1   Plaintiffs maintain that these challenges to Defendants' newly asserted
2   argument concerning foreign royalties are already at issue in the case insofar as they
3   directly impact the amount of compensatory damages Plaintiffs are entitled to recover
4   for Defendants' established breach of contract. On March 20, 2012, however,
5   Defendants served objections to Plaintiffs' proposed jury instructions in which they
6   objected to Plaintiffs' proposed instruction on the duty of good faith and fair dealing.
7   *See* Declaration of Daniel B. Asimow in Support of Plaintiffs' Ex Parte Application to
8   Advance the Hearing Date on Plaintiffs' Motion for Leave to File Supplemental
9   Complaint to April 23, 2012 ("Asimow Decl.") Ex. 2, at 58-59 ("Defendants object to
10  the inclusion of this instruction on the ground that Plaintiffs have not asserted a
11  breach of implied covenant of good faith and fair dealing claim in this case. . . . To
12  instruct a jury on a claim that Plaintiffs have not asserted would not only be an error
13  of law, but mislead and confuse the jury").

14  Accordingly, in an abundance of caution, on March 26, 2012 (less than one
15  week after receiving Defendants' objections), Plaintiffs filed a motion seeking leave
16  pursuant to Federal Rule of Civil Procedure 15(d) to file a supplemental complaint
17  that: (1) sets forth the facts concerning Defendants' newly asserted positions about
18  how foreign royalties should be calculated under the Masters Licensed provision
19  (Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Leave to
20  File Supplemental Complaint, Ex. A (proposed complaint) ¶¶12, 38-41),
21  (2) supplements Plaintiffs' First Cause of Action (for breach of contract) with
22  allegations about Defendants' intent to calculate royalties under the Masters Licensed
23  provision in a fashion that breaches the implied covenant of good faith and fair
24  dealing (*id.* ¶46), and (3) expands Plaintiffs' Third Cause of Action (for declaratory
25  relief) to seek a declaration that Defendants' "(a) must pay Plaintiffs 50% of the total
26  amount that they and their affiliates received from foreign Music Download Providers
27  and Mastertone Providers, without regard to how they may internally allocate revenue
28  among affiliates, or at a minimum to allocate to their foreign affiliates no more than

1  the percentage of revenue allocated for other forms of licensing (with the balance
2  allocated to Aftermath and divided with Plaintiffs)" and (b) must pay Plaintiffs at
3  least those royalties for foreign permanent downloads and mastertones that
4  Defendants are obligated to pay pursuant to the settlement agreement in the separate
5  case. *Id.* ¶65; *see also id.* ¶¶62-63.

6  Plaintiffs intended to notice their Motion for April 23, 2012 (the first Monday
7  on or after the 28-day period required by Local Rule 6-1) so that it could be heard
8  prior to the scheduled trial date of April 24, 2012. However, the Court's calendar for
9  civil motions on April 23 was closed. Accordingly, Plaintiffs noticed their motion for
10 the first available date—May 14, 2012. Asimow Decl. ¶4.

## ARGUMENT

12  Importantly, Plaintiffs are not seeking to have their Motion heard on
13 shortened time. If the hearing date is advanced to April 23, the hearing will still be
14 set 28 days after the Motion was filed (as provided in Local Rule 6-1) and Defendants
15 will still have the full amount of time to prepare opposing papers provided in Local
16 Rule 7-9. Plaintiffs are simply seeking to have the hearing date advanced from the
17 first open date on the Court's calendar (May 14, 2012) to the first date permissible in
18 accordance with the local rules.

19  This relief is necessary so that the Motion—the resolution of which may impact
20 the evidence, argument and jury instructions at trial—can be heard prior to the start of
21 the trial on April 24, 2012. Hearing a motion for leave to file a supplemental
22 complaint after the trial, which is expected to last only a few days, has concluded
23 would be futile—like closing the barn door long after the horse has escaped.

24  *Ex parte* relief to advance the hearing date is necessary because there is
25 insufficient time for Plaintiffs to seek advancement of the hearing date through
26 regular noticed motion procedures. (Indeed, Plaintiffs would not be able to notice a
27 motion to advance the hearing date from May 14 to April 23 *until May 14*.)
28 Accordingly, Plaintiffs will be "irreparably prejudiced if the underlying motion is

heard according to regular noticed motion procedures." *Pate v. Wells Fargo Bank Home Mortgage, Inc.,* No. CV 11-4151 PSG (MANx), 2011 WL 2682646, at *1 (C.D. Cal. July 7, 2011).

Moreover, Plaintiffs are "without fault in creating the crisis that requires ex parte relief." *Id.* As noted above, Plaintiffs did not learn Defendants' positions on how foreign royalties should be calculated under the Masters Licensed provision until Defendants served their expert report last month.[1] And not until March 5—just three weeks ago—did Defendants make clear that they believed they could allocate revenue from foreign licensing however they wished among their affiliates and that F.B.T. was only entitled to 50% of whatever amount Defendants happened to allocate to Aftermath.[2] Finally, it was only last week that Defendants asserted their position that Plaintiffs could not make an argument under the implied covenant because it was not in the pleadings. *See* p.2, *supra*. Plaintiffs then proceeded as quickly as possible to file a motion that could be heard (according to regular noticed motion procedures) in

---

[1] Defendants contend that Plaintiffs have known for some time that Aftermath would share only a small percentage of foreign revenue under the Masters Licensed provision. *See, e.g.*, Defendants' Motion *in Limine* No. 1 at 13; Defendants' Motion *in Limine* No. 2, at 3-5. As explained in Plaintiffs' Motion, this argument is disingenuous. *See* Motion at 7. Plaintiffs knew that Defendants shared revenue with foreign affiliates for conditional downloads, streams, and other forms of licensing that Defendants had always accounted for under the Masters Licensed provision. Plaintiffs did not know that Defendants would contend such a deduction would apply to permanent downloads, much less that Defendants would assert the deduction was significantly larger than it was for any other form of licensing. Regardless, the proper time for the Court to resolve this question is when considering Plaintiffs' Motion, which under the current schedule the Court will not have the opportunity to do until *after* the trial has concluded.

[2] During a status conference before this Court, Defendants counsel stated:

> There is nothing in the masters license provision that says what Aftermath has to receive. There is no qualitative formula that says [you have] to receive X, Y, or Z. It doesn't say that when you authorize conditional downloads, that the amount has to be any different or the same as permanent downloads. (Asimow Decl. Ex. 1 at 10:23-11:4)

Under this theory, if Aftermath agreed tomorrow to receive *zero percent* of foreign revenue on permanent downloads and mastertones from its foreign affiliates, F.B.T./Eminem would be entitled to nothing, while another Universal-owned entity would keep 100% of the revenue.

1 advance of the April 24 trial date. That the Court's docket was closed for the April 23
2 date is beyond Plaintiffs' control.
3   Accordingly, in order to allow Plaintiffs' Motion to be considered prior to the
4 trial in the case, Plaintiffs request that the hearing date for their Motion be advanced
5 to April 23, 2012.

7 Dated: March 28, 2012                    Respectfully,

8                                           ARNOLD & PORTER LLP

10                                          By:   /s/Daniel B. Asimow
                                                  DANIEL B. ASIMOW

12                                          KING & BALLOW

14                                          By:   /s/Richard S. Busch
                                                  RICHARD S. BUSCH

16                                          Attorneys for Plaintiffs F.B.T.
                                            PRODUCTIONS, LLC, and Em2M, LLC

18 31564883F