UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present                              Not Present

**Proceedings:**     **(In Chambers) Order GRANTING Leave to File the Supplemental Complaint**

   Before the Court is Plaintiffs' motion for leave to file a supplemental complaint. Dkt. # 850. The Court heard oral argument on the matter on June 26, 2012. After considering the supporting and opposing papers, as well as the arguments made at the hearing, the Court GRANTS leave to file a supplemental complaint.

I.     Background

   This contract dispute has a long history, well-known to both the parties and the Court, and only part of that history need be recounted here.[1] Plaintiffs F.B.T. Productions, LLC and Em2M, LLC ("Plaintiffs" or "FBT") filed this action in 2007 against Defendants Aftermath Records ("Aftermath"), Interscope Records, Ary, Inc., and UMG Recordings, Inc. (collectively as "Defendants"). The contracts at issue relate to the recording contracts of Marshall B. Mathers III, better known as the rapper Eminem. FBT stands to receive royalties under those contracts, and the gravamen of this case concerns the proper calculation of royalties for the sale of permanent downloads and mastertones.[2] More specifically, before this lawsuit began Defendants paid FBT royalties for sales of permanent downloads and mastertones under the royalty provisions for "Records Sold." FBT contended these royalties should be calculated

---

[1] The Court draws this background from its previous summary judgment orders. Dkts. # 349, 737.

[2] A mastertone, popularly known as a "ringtone," is a short clip of a song that plays on a cellular phone to signal an incoming call.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

under the royalty provisions for "Masters Licensed."  Because the royalty rate for Masters Licensed is higher, FBT argued Defendants were in breach of the contracts and owed FBT a substantial amount in unpaid royalties.  Litigation ensued.

The first trial was held in March 2009.  A jury considered the contracts and found FBT was not entitled to additional royalties.  FBT then appealed to the Ninth Circuit on the interpretation of the contracts.  The Ninth Circuit ruled for FBT, holding that permanent downloads and mastertones were sold as licenses and, therefore, the Masters Licensed provisions unambiguously applied to these sales.  With that issue determined, the Ninth Circuit remanded the case to this Court.

Following remand, the parties filed motions for summary judgment on various issues.  FBT's motion for summary judgment was denied in its entirety.  Defendants' motion for summary judgment was denied in part and granted in part.  In deciding the summary judgment motions, the Court ruled on various issues bearing on the ultimate damages Defendants would owe FBT.

After summary judgment, the case was heading towards a second trial scheduled for April 24, 2012.  However, on March 26, FBT moved for leave to file a supplemental complaint.  The hearing date for the motion was set for the earliest open date on the Court's motion calendar, which at that time was approximately three weeks after the second trial was scheduled to begin.  At a final pretrial conference held on April 10, the Court decided to continue the trial date in order to consider FBT's motion.

FBT seeks to supplement its complaint to assert facts and claims concerning what FBT alleges is a position first advanced by Defendants in an expert report served on February 7.  *Mot.* 1:1-22.  Defendants' position concerns the manner in which Defendants would pay royalties to FBT under the Masters Licensed provisions for permanent downloads and mastertones sold abroad.  In more detail, Defendants assert that not all of the revenue generated by foreign sales of these products returns to Aftermath.  Rather, 71% of the revenue is paid to Defendants' foreign affiliates who make the sales, while under an inter-company agreement, Aftermath receives 29% of the revenue.  Because Defendants are now required to pay royalties to FBT for these sales based on revenue, Defendants contend it is the 29% of revenue that Aftermath receives that has to be split with FBT.  FBT objects to this practice and argues 100% of the revenue (or, at least, a much higher percentage than 29%) generated abroad should be split with FBT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

The supplemental complaint would add claims on this dispute over foreign sales. *Mot.* 3:1-18. Specifically, it would add a claim of breach of the implied covenant of good faith and fair dealing to the First Cause of Action for breach of contract; expand the Third Cause of Action for declaratory relief to seek a declaration regarding how much of the revenue Defendants must split with FBT; and add claims that paying FBT less would violate a settlement agreement reached in another action. *See Mot.*, Ex. A. (*Proposed Supplemental Complaint*).

II.     Legal Standard

The parties' skirmish over this motion extends to the correct legal standard to be applied. FBT filed its motion under Federal Rule of Civil Procedure 15(d).³ *Not.*, Dkt. # 850, at 2:2-8. Defendants contend, however, that FBT can only move to amend its complaint under Rule 15(a), and that because the Court-ordered cut-off for amendments has passed, FBT must first show "good cause" under Rule 16(b) to alter the Court's Scheduling Order. *Opp.* 10:17-12:14.⁴

This dispute over which Rule to apply largely turns on each parties' view of the new claims. FBT argues its new claims only arose in February 2012 and thus Rule 15(d)'s provisions permitting "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" apply here. On the other side, Defendants argue the new claims are not new at all, and have been known to FBT for years. Thus, in Defendants' view, the transaction, occurrence, or event did not "happen[ ] after the date of the pleading to be supplemented" and Rule 15(d) is unavailable to FBT. As explained below, the Court finds the new claims are in fact new. Because the claims arose after the date the operative complaint was filed, FBT can properly move under Rule 15(d) to supplement the operative complaint.

Defendants also argue Rule 15(d) is inapplicable here because 15(d) cannot be used to add a "separate, distinct and new cause of action." *Opp.* 10:19-27. Defendants quote *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400 (9th Cir. 1997) (per curiam) for this proposition. The Court finds the Ninth Circuit's statement in *Neely* must be read in the context of that case, which involved an attempt to "supplement" a complaint four years after final judgment had been rendered. *Id.* at 402. The supplemental claim also attacked a different

---

³ All references to "Rules" are to the Federal Rules of Civil Procedure.
⁴ Ultimately, the parties' disagreement has little import, since the Court finds either standard would be met in this instance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

statute than the original suit. *Id.* This is what the Ninth Circuit meant by a "separate, distinct and new cause of action." Other district courts have also read *Neely* as being limited to its particular circumstances. *See, e.g., Aten Int'l Co. v. Emine Tech. Co.*, No. SACV 09-0843 AG (MLGx), 2010 WL 1462110, at *3 (C.D. Cal. Apr. 12, 2010) ("The Ninth Circuit in *Neely* undertook a more specialized 15(d) analysis because four years had passed since final judgment, and Plaintiffs sought to reopen the case by adding a 15(d) supplemental complaint."). In the more usual Rule 15(d) case, the Ninth Circuit has explained that supplemental claims must only "have some relation to the claim set forth in the original pleading." *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988). There can be no argument that FBT's new claims do not have "some relation" to the claims in the operative complaint.

Accordingly, the Court looks to the standards of Rule 15(d) to assess Plaintiffs' motion. In general, a district court has "broad discretion in allowing supplemental pleadings." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). The same principles that apply to a Rule 15(a) motion to amend apply to Rule 15(d) motions. Therefore, leave to supplement should be freely given "in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The use of Rule 15(d) is favored, and courts may use the rule as a "tool of judicial economy and convenience." *Keith*, 858 F.2d at 473. Finally, Rule 15(d) should be interpreted to "minimize technical obstacles to a determination of the controversy on its merits." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998).

III.  Discussion

Defendants muster several lines of argument against the supplemental complaint. First, Defendants argue that FBT has known about these claims for years and should not be allowed to raise them now, just before the second trial. Second, Defendants argue that even under FBT's version of when the new claims arose, FBT still unduly delayed in bringing its motion. Third, Defendants contend the issues FBT seeks to raise were resolved on summary judgment in October 2011. Lastly, Defendants assert the new claims are futile and will cause Defendants prejudice. The Court will evaluate each point of contention in turn.

a.  When the Claims Arose

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

Defendants main objection to the new claims is that FBT allegedly could have raised these claims years ago. *Opp.* 13:19-15:16. Defendants contend FBT knew the facts essential to the new claims as far back as 2006, when FBT's accountant first audited Defendants' financial statements. In addition, Defendants argue FBT has actually raised these same claims before, but then dropped them from the case. This latter argument refers to the second lawsuit FBT filed in March 2008. The Court consolidated the two cases and directed FBT to file one consolidated complaint. Defendants argue that the consolidated complaint dropped the very claims it is seeking to assert now.

The Court considers Defendants' narrative to be inaccurate. Although the claims FBT seeks to add are similar to the claims FBT made in the second lawsuit, the new claims are in fact distinct and did not exist until earlier this year. The claims FBT raised in the second lawsuit, and then dropped from the consolidated complaint, concerned Defendants' accounting for conditional downloads and streams. At that time, Defendants were accounting for conditional downloads and streams under the Masters Licensed provisions of the contracts, not the Records Sold provisions. As such, Defendants were required to pay FBT royalties equal to 50% of revenue. However, for foreign sales of conditional downloads and streams, Aftermath had an agreement with its foreign affiliates to pay approximately 25% of the revenue from these licenses to the foreign affiliates, while Aftermath received the remaining 75%. Defendants considered the revenue that was required to be split with FBT to be the revenue that Aftermath received, not the revenue that went to the foreign affiliates. In the second lawsuit, FBT objected to this practice, and argued that 100% of the revenue should be split with FBT. This is the claim that was then dropped when the Court ordered the cases consolidated. FBT explains it chose not to pursue this claim further, because the sum at stake was too small relative to its other claims. *See Opp. to Defs. Mot. in Limine No. 2*, Dkt. # 870, at 9:11-22.

In contrast to the earlier claims, which involved conditional downloads and streams, FBT's new claims concern permanent downloads and mastertones. Now that the Ninth Circuit has ordered Defendants to account for permanent downloads and mastertones under the Masters Licensed royalty provisions, Defendants have had to reevaluate what royalties it owes to FBT. Defendants assert that, as with conditional downloads and streams, part of the revenue from foreign sales stays with the foreign affiliates and the remainder of the revenue returns to Aftermath. The revenue split in this instance is almost the inverse of what it is for conditional downloads and streams: for permanent downloads and mastertones, the foreign affiliates keep 71% of the revenue, while only 29% of the revenue flows back to Aftermath. Defendants read the contracts as only requiring them to split this 29% with FBT.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

While Defendants' accounting practice may be the same with permanent downloads and mastertones as it was with conditional downloads and streams, this accounting practice only affected FBT after the Ninth Circuit's decision. It is true that even when Defendants accounted for permanent downloads and mastertones under the Records Sold provision, Defendants split the revenue generated between the foreign affiliates and Aftermath. But, critically, this revenue split did not affect the percentage of the adjusted retail price paid to FBT as royalties. Under the Records Sold provision, royalties are based on an adjusted retail price. This adjusted retail price does not depend on the revenues received by Aftermath, but rather on the retail price of the "records." Thus, FBT had no occasion, and indeed could have had no standing, to object to what was essentially an internal accounting practice of Defendants and their affiliated companies.

Defendants used to agree with this analysis. Before Defendants filed their opposition to the supplemental complaint and took the position that FBT could have raised its "new" claims as far back as 2006, Defendants conceded the internal division of revenues on permanent downloads and mastertones did not matter to Plaintiffs previously. Defendants wrote in opposition to one of Plaintiffs' motions in limine: "As Plaintiffs themselves acknowledge, Aftermath's accounting practices with its foreign affiliates never mattered to Plaintiffs when they were paid according to the 'Records Sold' provision, because Plaintiffs were paid based on a percentage of retail price defined in the Agreements." *Defs. Opp. to Plts. Mot. in Limine No. 1*, Dkt. # 868, at 17:18-22.

In sum, the Court finds FBT's new claims did not arise until Defendants informed FBT that royalties on foreign sales of permanent downloads and mastertones under the Masters Licensed provisions would be based on the 29% of revenue Aftermath received from those sales, not the 100% of revenue received by the foreign affiliates. While the Court expresses no opinion on the merits of FBT's supplemental claims, the Court does find the claims are new.

    b.    <u>Whether FBT Delayed in Filing the Motion</u>

As a fallback, Defendants propose that even if the claims are new, FBT still delayed seven weeks from when FBT first learned of Defendants' new accounting to when FBT sought leave to file the supplemental complaint. *Opp.* 15:17-16:22. The expert report that FBT claims first revealed Defendants' accounting of permanent downloads and mastertones was served on February 7, while FBT's motion to add the new claims was filed March 26. Defendants argue there was no good cause for this delay, and that the Court should deny the supplemental complaint on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

      FBT responds that its counsel raised the accounting issue at a status conference with defense counsel on March 5.  *Reply* 1:2-17.  And subsequent to March 5, FBT drafted jury instructions to argue Defendants' accounting for royalties from the foreign permanent download and mastertone sales was in breach of the contract.  Defendants objected to the jury instructions on March 20, because FBT did not have a claim on this issue in the operative complaint.  Six days later FBT moved to file the supplemental complaint.

      While FBT could have moved to file the supplemental complaint sooner after receiving Defendants' expert report on February 7, the Court finds this delay does not bar FBT's motion.  FBT did not sleep on its rights.  During the seven weeks after the expert report was served, FBT made clear its objection to Defendants' accounting method and prepared to argue the issue at trial.

      Additionally, one of the purposes of Rule 15(d) is to allow the resolution of all disputes between parties in one efficient proceeding.  *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) ("[Rule 15(d)] is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted" (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963))).  It would be more efficient to resolve the issue of accounting for foreign permanent downloads and mastertones in this action than in a separate action.

      c.      <u>Summary Judgment Ruling</u>

      Defendants also contend the Court's summary judgment order issued in October 2011 resolved the issues FBT is now trying to raise.  *Opp.* 8:15-9:5.  In relevant part, Defendants moved for summary judgment on the meaning of the phrase "our net receipts" in the agreements.  *Mem. ISO Defs. Mot. for Summ. J.*, Dkt. # 677, at 19:23-23:3.  The Court ruled that "our" in the agreements refers to Aftermath.  *Order on Mots. for Summ. J.*, Dkt. # 737, at 14.  Defendants argue this ruling determines that only Aftermath's revenues, and not the revenues of the foreign affiliates, should be considered when applying the 50% royalty rate of the Masters Licensed provisions.

      The Court disagrees.  The section of Defendants' summary judgment brief that requested a ruling that "our" refers to Aftermath, is mostly devoted to a determination of the meaning of "net receipts."  Defendants asked the Court to decide whether the phrase net receipts means Defendants can deduct distribution costs.  *See Mem. ISO Defs. Mot. for Summ. J.*, 19:24-20:5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

Defendants only raised the issue of what "our" means in the context of this larger discussion of deductions and costs. *See id.* at 20:13-26. In congruence with the motion, the Court discussed the meaning of "our" in a section devoted to "Net Receipts." *See Order on Mots. for Summ. J.* at 14-15. In the order, the Court did not discuss revenue sharing between Aftermath and its foreign affiliates.

Defendants largely rely on a single sentence from their summary judgment brief for the proposition that the issue they wanted determined was clear: "In audits conducted post-dating the trial, F.B.T. has contended it is entitled to 50% of what is received by any company affiliated with Universal Music Group, anywhere – including 50% of the 'receipts' of foreign distribution companies." *Mem. ISO Defs. Mot. for Summ. J.*, 20:21-25. In light of Defendants' current position on revenue sharing with foreign affiliates, the import of this sentence now seems clear. However, at the time, FBT did not seem to understand the reference. In opposition, FBT stated in a footnote that the "significance of this sentence is not clear." *Opp. to Defs. Mot. for Summ. J.*, Dkt. # 710, at 17:24-28 n.11. Defendants contend FBT was being "coy," and actually knew precisely the issue Defendants were raising. *Opp.* 8:24-28. The Court finds it hard to swallow the assertion that in this hotly contested case FBT would have played possum on Defendants' summary judgment motion, just so FBT could attempt to raise this issue later in a supplemental complaint.[5] The Court fails to see what FBT could have achieved with such a strategy. In any event, it was not at all clear to the Court that Defendants were asking the Court to rule that the contracts allowed Aftermath to agree that its foreign affiliates would keep 71% of the revenue from foreign sales of permanent downloads and mastertones, while Aftermath would only split the remaining 29% of the revenue with FBT. If Defendants wished to have summary judgment granted on this issue, they had a duty to clearly explain the issue. Defendants did not do so.

Furthermore, the Court is deeply troubled by Defendants' argument. While it is hard to see what FBT could gain by feigning ignorance, it is now quite apparent what Defendants could hope to gain by bamboozling the Court and Plaintiffs on this issue. Defendants' current stance makes it appear as though Defendants carefully inserted the issue into the motion for summary judgment before they had notified FBT or the Court of what percentage of the revenues from foreign sales of permanent downloads and mastertones would be paid to FBT. An attempt to dupe the Court into a premature ruling will not serve as the basis to deny FBT an opportunity to

---

[5] This is especially true for an issue that could determine whether FBT owes Defendants $800,000 or Defendants owe FBT $1.4 million. *See Pls. Mot. in Limine No. 3*, Dkt. # 796, at 8:13-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3314 PSG (MANx) | Date | June 27, 2012 |
|---|---|---|---|
| Title | F.B.T. Productions, LLC, et al. v. Aftermath Records, et al. | | |

challenge Defendants' accounting practices.

    d.    <u>Futility and Prejudice</u>

Finally, Defendants argue the supplemental complaint should be rejected because FBT's new claims are futile and Defendants would be prejudiced if the Court grants leave to supplement. As to futility, Defendants contend the new claims are time barred and meritless. *Opp.* 17:16-21:3. The Court declines to fully address the merits of the new claims at this time. The Court would benefit from full briefing, rather than the limited argument the parties have appended to their main contentions over whether the supplemental complaint's claims are new. It suffices for now that the Court does not find the new claims to be obviously deficient.

As to prejudice, Defendants contend that granting leave to file the supplemental complaint will delay resolution of this case and thus prejudice Defendants. *Opp.* 23:8-25:7. In the Court's view, any prejudice to Defendants from delayed resolution of this matter is outweighed by the potential for resolving this entire contract dispute without a separate action. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (noting Rule 15(d), like the rest of the Rules, should be read to "minimize technical obstacles to a determination of the controversy on its merits").

IV.    <u>Conclusion</u>

For the foregoing reasons, the motion for leave to file a supplemental complaint is GRANTED. FBT is directed to file its amended complaint by **July 6, 2012**. The parties are to meet and confer on a schedule for discovery and motion practice limited to the new claims. The parties shall also propose a new trial date. The parties shall submit a joint proposed schedule, or competing schedules, by **July 13, 2012**. Finally, in light of this order, the pending motions in limine are now MOOT.

**IT IS SO ORDERED.**